# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Z GALLERIE, LLC, *et al.*,[1] | ) | Case No. 19-10488 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## DEBTORS' MOTION SEEKING ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING THE BID DEADLINES AND THE AUCTION, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (this "Motion"):[2]

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Bidding Procedures Order"):  (a) authorizing and approving the proposed

bidding procedures annexed to the Bidding Procedures Order as **Exhibit 1** (the "Bidding

Procedures"); (b) establishing certain dates and deadlines including, the Indication of Interest

Deadline, the Bid Deadline, and the Auction Date, if any; (c) approving the manner of notice of

the Auction, if any; and (d) granting related relief.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Z Gallerie, LLC (3816) and Z Gallerie Holding Company, LLC (5949).  The location of the Debtors' service address is: 1855 West 139th Street, Gardena, CA 90249.

[2]     A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mark Weinsten, Interim President and Chief Executive Officer of Z Gallerie, LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 11, 2019 (the "Petition Date"). Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the First Day Declaration or the Bidding Procedures, as applicable.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 363, 365, and 1146(a) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1, 6004-1, and 9006-1.

## The Bidding Procedures

5.      By this Motion, the Debtors seek to establish Bidding Procedures for the Auction of their Assets.  The Sale will ultimately be consummated as part of the Plan filed contemporaneously herewith, with sale proceeds being used as a source of recovery for creditors and the Plan providing finality to all stakeholders in these chapter 11 cases.  The Debtors believe that the Bidding Procedures will best facilitate an orderly, value-maximizing Auction, thereby maximizing recoveries under the Plan for all creditors. Significantly, the Auction is supported by the Prepetition Secured Lenders and incremental financing under the DIP Financing is

2

conditioned on progress made in the Auction process. The Bidding Procedures and Plan provide for substantial flexibility with respect to the structure of any Transaction—*e.g.*, the sale of all or only some of the Debtors' assets—and allow the Debtors to select a Stalking Horse Bidder and provide Bid Protections on the terms described in the Bidding Procedures if the Debtors believe, in an exercise of their business judgement, that doing so will maximize the value of the estate.

6.       Consistent with this goal, the Debtors' investment banker, Lazard Middle Market, LLC ("Lazard"), began a marketing process related to the Assets in early March 2019. In consultation with Lazard, the Debtors have developed a list of parties whom they believe may be interested in, and whom the Debtors reasonably believe would have the financial resources to consummate, a Transaction.  The list of parties includes both strategic and financial investors (collectively, the "Contact Parties").  As of the date hereof, several Contact Parties are negotiating confidentiality agreements with the Debtors and expect to begin conducting the diligence necessary to analyze the opportunity in short order. Lazard and the Company will work with these interested parties and all Contact Parties to provide all diligence and will continue to actively seek potential interested purchasers.

7.       Significantly, maximizing the value of the Debtors' estates requires that the Debtors proceed swiftly to confirmation of the Plan, minimizing the incremental costs associated with the Debtors' chapter 11 cases and preserving the value of the Debtors' "brand"—a critical component of the value of the Debtors' businesses.  The Bidding Procedures are designed to— and the Debtors believe the Bidding Procedures will operate to—maximize the likelihood of a competitive bidding process.

8.       To maximize the competitiveness of any bidding process, the Debtors also seek authority, but not direction, to (a) select one or more party to act as a stalking horse bidder

(a) "Stalking Horse Bidder") and (b) in connection with any Stalking Horse Bidder and related agreement, provide a Breakup Fee, Expense Reimbursement, or Work Fee, each as defined and described in the Bidding Procedures, in an amount not to exceed, in the aggregate, 3 percent of the proposed purchase price.

## The Bidding Procedures Order

**I.     The Bidding Procedures.**

9.     The Debtors have developed and proposed the Bidding Procedures, attached as **Exhibit 1** to the Bidding Procedures Order, to govern the Auction process.   The Debtors designed the Bidding Procedures to encourage all entities to expeditiously put their best bids forward and to maximize the value of the Debtors' estates through a competitive Auction process.   The following describes the salient points of the Bidding Procedures and discloses certain information required pursuant to Local Rule 6004-1:[3]

      (a)     **Participation Requirements.**

          (i)     To receive due diligence information, including full access to the Debtors' electronic data room and to additional non-public information regarding the Debtors, a Potential Bidder must deliver to each of:   (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg (joshua.sussberg@kirkland.com) and 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Justin Bernbrock (justin.bernbrock@kirkland.com) and Joshua Altman (joshua.altman@kirkland.com); and (ii) Lazard Middle Market, LLC, 600 Fifth Avenue Suite 800, New York, New York 10020, Attn:     Jason Cohen (jason.cohen@lazard.com);   Dermott O'Flanagan (demott.oflanagan@lazard.com) and Bradley Kessel (bradley.kessel@lazard.com)   (the   "Debtors' Advisors"),   the following     documents     (collectively,     the "Preliminary Bid Documents"):

---

[3]   This summary is qualified in its entirety by the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

(A)      an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed; and

(B)      evidence by the Potential Bidder of its financial capacity to close a proposed Transaction, which may include financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (with the assistance of the Debtors' Advisors) in consultation with the Consultation Parties and the official committee of unsecured creditors (the "Committee"), if one has been appointed.

(ii)    Promptly after a Potential Bidder delivers Preliminary Bid Documents, the Debtors will determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents so that the Potential Bidder may proceed to conduct due diligence and ultimately submit a Bid as defined in the Bidding Procedures and participate in the Auction, as applicable, and will provide copies of any such notices to the Notice Parties and to counsel to the Committee, if one has been appointed.   Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents, as determined by the Debtors in consultation with the Consultation Parties and the Committee (each, an "Acceptable Bidder"), may submit Bids.

(iii)   Beginning on or as soon as is reasonably practicable after the Debtors determine that a Potential Bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room.  All due diligence requests must be directed to Lazard.  To the extent reasonably practicable, Lazard will also facilitate meetings between any interested Acceptable Bidder and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their discretion.  The due diligence period will end on the Bid Deadline, as defined below, and, subsequent to the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

(iv)    The Debtors and their advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; provided that the Debtors may, in consultation with the Consultation Parties and the Committee, decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Transaction.

(v)    For any Acceptable Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, or to delay providing, any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time. Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Acceptable Bidder and its contemplated Transaction.

(b)    **<u>Non-Binding Indications of Interest.</u>**

(i)    Any party interested in a Transaction (regardless of whether such party has been determined to be an Acceptable Bidder) shall submit a non-binding indication of interest (an "<u>Indication of Interest</u>") on or before April 19, 2019, at 5:00 p.m. (prevailing Eastern Time) (as may be extended without notice or hearing by the Debtors, the "<u>Indication of Interest Deadline</u>"). The Indication of Interest should (i) identify whether the party is interested in acquiring some or all of the Assets (and which Assets with reasonable specificity) or the Reorganized Debtors' equity interests, (ii) set forth a proposed purchase price for the proposed Transaction, including by identifying separately any cash and non-cash components of the proposed Transaction consideration, including, for example, certain liabilities to be assumed, and (iii) identify any proposed conditions to closing the Transaction.

(ii)    Indications of Interest should be submitted to the Debtors' Advisors by the Indication of Interest Deadline. The Debtors Advisors shall deliver any Indication of Interest received to the Notice Parties and the Committee within two business days of receipt, or as soon as reasonably practicable thereafter. Note that submitting an Indication of Interest by the Indication of Interest Deadline does not obligate the submitting party to submit a formal bid or to participate in the sale process and does not exempt the submitting party from also having to submit a Qualified Bid by the

6

Bid Deadline to participate in the Auction, each as defined below. For the avoidance of doubt, the submission of an Indication of Interest by the Indication of Interest Deadline is not a prerequisite for Potential Bidders to submit a Qualified Bid.

(c)     **Stalking Horse Bid Deadline and Bid Protections**. The Debtors may, at any time until two days prior to the Auction, as an exercise of their business judgment and in consultation with the Committee, select one or more party to be a Stalking Horse Bidder with respect to some or all of the Debtors' Assets and provide such stalking Horse Bidder with Bid Protections, as defined in the Bidding Procedures.

(d)     **Bid Deadline.**  An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "<u>Bid</u>") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be **actually received** on or before **May 16, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "<u>Bid Deadline</u>").

(e)     **Bid Requirements (Local Bankr. R. 6004-1(c)(i)(A), (B)).**  Each Bid by an Acceptable Bidder (a "<u>Bidder</u>") must be submitted in writing and satisfy the following requirements (collectively, the "<u>Bid Requirements</u>"):

(i)     <u>Purpose</u>.  Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to purchase  some or all of the Assets, and which Assets with reasonable specificity.

(ii)    <u>Purchase Price</u>:  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, including, for example, certain liabilities to be assumed by the Acceptable Bidder as part of the Plan (the "<u>Purchase Price</u>").

(iii)   <u>Deposit</u>:  Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate value of the cash and non-cash consideration of the Bid to be held in an escrow account to be identified and established by the Debtors (the "<u>Deposit</u>").

(iv)    <u>Marked Agreement</u>:  Each Bid must include, at a minimum, a draft asset purchase agreement (the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (the "<u>Asset Purchase Agreement</u>")) together with a redline version of the revised Asset Purchase Agreement to the form, including the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Acceptable Bidder proposes to effectuate the Transaction (collectively, the "<u>Transaction Documents</u>").

7

(v)     <u>Committed Financing</u>:  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, after consultation with the Consultation Parties and the Committee, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors.  For the avoidance of doubt, funding commitments for any Acceptable Bidder's Purchase Price may be provided by the DIP Lender.

(vi)    <u>Contingencies; No Financing or Diligence Outs</u>:  A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions.

(vii)   <u>Identity</u>:  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s) and counsel whom the Debtors' Advisors should contact regarding such Bid.

(viii)  <u>Authorization</u>:  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

(ix)    <u>As-Is, Where-Is</u>:  Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (2) has relied solely upon its own independent review, investigation, and/or inspection

8

of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

(x)    By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets or the Reorganized Debtors' equity interests reflected in such Bid.

(f)    **<u>Designation of Qualified Bidders.</u>**

(i)    A Bid will be considered a "<u>Qualified Bid</u>," and each Acceptable Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>," if the Debtors determine in their business judgment, and after consultation with the Consultation Parties and the Committee, that such Bid:

(A)    satisfies the Bid Requirements set forth above;

(B)    is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid, as defined below, within a time frame acceptable to the Debtors; and

(C)    Within two business days after the Bid Deadline, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties and counsel to the Committee a copy of each Qualified Bid.

(D)    If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three business days after the Bid Deadline, or as soon as is reasonably practicable thereafter.

(E)    Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any

9

Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in the Bidding Procedures; *provided that* any Qualified Bid may be improved at the Auction as set forth in the Bidding Procedures. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in the Bidding Procedures.

(F)     Notwithstanding anything herein to the contrary, the Debtors reserve the right to work with (a) Potential Bidders and Approved Bidders to aggregate two or more Indications of Interest or Bids into a single consolidated Bid prior to the Bid Deadline or (b) Qualified Bidders to aggregate two or more Qualified Bid into a single Qualifying Bid prior to the conclusion of the Auction. The Debtors reserve the right to cooperate with any Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid. The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders shall be treated as a single Qualified Bidder for purposes of the Auction). For the avoidance of doubt, the Prepetition Secured Lenders are deemed to be Qualified Bidders and may credit bid, as set forth below.

(g)     **Right to Credit Bid.**

(i)     Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

(ii)    Notwithstanding anything to the contrary contained herein, the Prepetition Secured Creditors shall have the right to credit bid all or any portion of the aggregate amount of its applicable outstanding secured obligations pursuant to section 363(k) of the

10

Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid is received by the Bid Deadline and complies with section 363(k) of the Bankruptcy Code; *provided* that a credit bid shall not constitute a Qualified Bid if the bid does not (a) include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment) or (b) comply with the terms of the priority scheme contained in the Prepetition Credit Agreement , defined in the Plan, the Bidding Procedures Order, Dip documents, and the DIP Order as defined in the Plan.

(h)    **The Auction.**

(i)    If the Debtors receive two or more Qualified Bids, the Debtors will conduct the Auction to determine the Winning Bidder with respect to all or substantially all of the Debtors' Assets.  The Auction shall take place at 9:00 a.m. (prevailing Eastern Time) on May 20, 2019, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time as selected by the Debtors in their sole discretion or such later date and time as selected by the Debtors in their sole discretion.

(ii)    No later than May 19, 2019, at 5:00 p.m. (prevailing Eastern Time), the Debtors, after consultation with the Consultation Parties and the Committee, will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, as determined in the Debtors' business judgment (the "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid to all Qualified Bidders. The determination of which Qualified Bid constitutes the Baseline Bid and which Qualified Bid constitutes the Winning Bid shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a)  the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; and (e) the tax consequences of such Qualified Bid (collectively, the "Bid Assessment Criteria").

(iii)    The Auction shall be conducted in a timely fashion according to the following procedures:

11

(A)    <u>The Debtors Shall Conduct the Auction</u>:

- The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. All incremental Bids made thereafter shall be Overbids, as defined in the Bidding Procedures, and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, and the Winning Bid.

- Only Qualified Bidders that have submitted Qualified Bids by the Bid Deadline are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures and in consultation with the Consultation Parties. Qualified Bidders participating in the Auction must appear in person at the Auction, or through a duly authorized representative. The Auction will be conducted openly and all creditors may be permitted to attend; provided that the Debtors may, in their sole and exclusive discretion, establish a reasonable limit to the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder or creditor at the Auction. In addition, professionals and/or representatives of the Consultation Parties will be permitted to attend and observe the Auction. Any creditor wishing to attend the Auction may do so by contacting, no later than three (3) business days prior to the start of the Auction, the Debtors' advisors.

(B)    <u>Terms of Overbids (Local Bankr. R. 6004-1(c)(i)(C))</u>: "<u>Overbid</u>" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

- <u>Minimum Initial Overbid</u>. Any Overbid following the Baseline Bid shall be no less than the value of

12

the Bid Protections, if any, plus a value equal to $250,000, as determined by the Debtors in an exercise of their business judgment, after consultation with the Consultation Parties and the Committee.

- <u>Minimum Overbid Increment</u>.  Any Overbid to a Prevailing Highest Bid, as defined below, shall be in increments of value (including revised treatment under the Plan) no less than the value of the Bid Protections, if any, plus a value equal to $250,000, as determined by the Debtors in an exercise of their business judgment, after consultation with the Consultation Parties and the Committee.

- <u>Conclusion of Each Overbid Round</u>.  Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, after consultation with the Consultation Parties and the Committee, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors.

- <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, after consultation with the Consultation Parties and the Committee, but shall otherwise comply with the terms of the Bidding Procedures.

- <u>Announcing Highest Bid</u>.  Subsequent to each Overbid Round Deadline, the Debtors shall announce whether the Debtors have identified, after consultation with the Consultation Parties and the Committee, an Overbid as being higher or otherwise better than the Baseline Bid, in the initial Overbid round, or, in subsequent rounds, the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value

13

attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

(C)     The Debtors reserve the right, in their business judgment to adjourn the Auction one or more times, after consultation with the Consultation Parties and the Committee to, among other things (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

(D)     <u>Closing the Auction</u>:  The Auction shall continue until there is only one Qualified Bid that the Debtors determine, in their business judgment, after consultation with the Consultation Parties and the Committee, to be the highest or otherwise best Qualified Bid for the Assets.  Such Qualified Bid shall be declared the "<u>Winning Bid</u>," and such Qualified Bidder, the "<u>Winning Bidder</u>," and at which point the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid.  Such acceptance by the Debtors of the Winning Bid is conditioned upon approval by the Court of the Winning Bid.  For the avoidance of doubt, nothing in the Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law.  As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, and, as applicable, cause such definitive documentation to be filed with the Court.

(E)     <u>No Collusion; Good-Faith *Bona Fide* Offer</u>:   Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide*

14

offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder.

**(i)**     **Expense Reimbursement, Work Fee, and Breakup Fee.**

(i)     Upon entry of the Bidding Procedures Order and up until 2 days prior to the Auction, the Debtors shall be authorized, but not obligated, in an exercise of their business judgment, to (a) select one or more Acceptable Bidder to act as a Stalking Horse Bidder in connection with the Auction and (b) in connection with any staking horse agreement with a Stalking Horse Bidder, (x) provide a breakup fee (the "Breakup Fee"), (y) agree to reimburse the reasonable and documented out-of-pocket fees and expenses and/or (z) agree to pay a "work fee" or other similar cash fee (the "Work Fee"). The aggregate amount that may be paid to any or all stalking horse bidders on account of (x) - (z) shall not exceed three percent of the proposed Purchase Price.

**(j)**     **Backup Bidder (Local Bankr. R. 6004-1(c)(i)(E)).**

(i)     Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction for the Assets or the Reorganized Debtors' equity interests, as determined by the Debtors in the exercise of their business judgment after consultation with the Consultation Parties and the Committee, shall be required to serve as a backup bidder (the "Backup Bidder") until such time that the Transaction is consummated through confirmation of the Plan, and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtors.

(ii)    The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors, after consultation with the Consultation Parties and the Committee, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated through confirmation of the Plan. The Backup Bidder's Deposit shall be held in escrow pending confirmation of the Plan.

(iii)    If a Successful Bidder fails to consummate the approved Transactions contemplated by its Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.  In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

(k)    **Notice and Consultation Parties.**

(i)    Information that must be provided to the "Notice Parties" under the Bidding Procedures must be provided to the following parties: (a) Buchanan Ingersoll & Rooney P.C., as counsel to the DIP Agent, and the Prepetition Credit Agreement Agent; and (b) counsel to the Committee.

(ii)    The term "Consultation Parties" as used in the Bidding Procedures shall mean: (a) Keybank National Association, as agent under that certain DIP Credit Agreement and that certain Prepetition Credit Agreement, and its advisors; (b) the Committee and its advisors; and (c) the Prepetition Term Loan Lenders and their advisors.

(l)    **Reservation of Rights (Local Bankr. R. 6004-1(c)(i)(D)).**  The Debtors reserve their rights to modify the Bidding Procedures in their business judgment, after consultation with the Consultation Parties and the Committee, but only with the prior written consent of the Required Lenders, as defined in the DIP Credit Agreement,in any manner that will best promote the goals of the Bidding Procedures, or impose, at or prior to the Auction, additional customary terms and conditions on a Transaction, including, without limitation:  (a) extending the deadlines set forth in the Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

(m)    **Confirmation Hearing.**  A hearing to consider confirmation of the Plan (the "Confirmation Hearing") pursuant to which the Debtors and the Winning Bidder will consummate the Transaction will be held on June 17, 2019, and otherwise in accordance with any scheduling order entered by the Court regarding confirmation of the Plan.  The Confirmation Hearing may be continued to a later date by the Debtors, but only with the prior

16

written consent of the Required Lenders, as defined in the DIP Credit Agreement, by sending notice prior to, or making an announcement at, the Confirmation Hearing.  No further notice of any such continuance will be required to be provided to any party.  At the Confirmation Hearing, the Debtors shall present the Plan, which shall incorporate the terms of the Winning Bid, to the Court for confirmation.

10.    Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and, as such, do not impair the Debtors' ability to consider all qualified bid proposals, and, as noted, preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

## II.    Form and Manner of Notice.

11.    The Auction, if any, shall take place at 9:00 a.m. (prevailing Eastern Time) on May 20, 2019, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

12.    The Debtors further submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 (the "Notice").  The Debtors propose that no other or further notice of the Auction shall be required.  Accordingly, the Debtors request that this Court approve the form and manner of the Notice.

### Basis for Relief

## I.    The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estates and Should be Approved.

13.    Adoption of the Bidding Procedures is a valid exercise of the Debtors' business judgment.  Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See,*

17

*e.g.*, *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound business purpose justifies such actions.' If the [Debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale." (*quoting In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (*quoting In re Schipper*); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656–7 (S.D.N.Y. 1992). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), at 12 (Bankr. D. Del. 2017) ("The relief requested in the Sale Motion….is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate, and its creditors."); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

14.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g.*, *In re Dura Auto. Sys.*, 379 B.R. 257, 263 (Bankr. D. Del. 2007); *Integrated Resources*, 147 B.R. at 659

18

(bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets").

15.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of the Assets for the benefit of the Debtors' estates.  The proposed Bidding Procedures will allow the Debtors to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who can demonstrate the ability to close a Transaction.  In particular, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

16.     Additionally, under the DIP Credit Agreement, the Debtors are required to achieve certain Milestones, as defined in the DIP Credit Agreement.  These Milestones were heavily negotiated between the Debtors and the DIP Lenders at arm's length.  One Milestone requires the Debtors to obtain the Court's approval of the Bidding Procedures in form and substance reasonably acceptable to the DIP Lenders by April 12, 2019.  Failure to satisfy the Milestone constitutes an Event of Default, as defined in the DIP Credit Agreement, which, would permit the DIP Lenders to exercise remedies that would imperil the Debtors' efforts to reorganize, possibly leading to a liquidation.  The failure to approve the Bidding Procedures will therefore imperil the Debtors' prospects of a successful reorganization, and the approval of the Bidding Procedures would maximize the estate's value.

17.     The Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with the controlling legal

standard.    Accordingly, the Court should approve the Debtors' adoption of the Bidding Procedures as a valid exercise of the Debtors' business judgment.

## II.    The Expense Reimbursement, Work Fee, and Breakup Fee Have a Sound Business Purpose and Should be Approved.

18.    The Debtors also seek authority, but not direction, pursuant to the Bidding Procedures to pay a Breakup Fee, Expense Reimbursement, and Work Fee in an aggregate amount not to exceed 3 percent of any proposed Purchase Price.  The Debtors seek to utilize such authority only in their discretion if the Debtors determine in their business judgment that any such Bid Protection will facilitate a competitive bidding and Auction process.  Payment of expense reimbursements and work fees, like those proposed here, in a bidding process for sales is appropriate under section 363(b) of the Bankruptcy Code so long as such payment is a valid exercise of the Debtors' business judgment.  Under section 363(b), the Debtors may use, sell, or lease estate property outside of the ordinary court of business so long as they articulate a sound business reason for doing so.  *See, e.g.*, *In re Culp*, 550 B.R. at 697; *In re Network Access Corp.*, 330 B.R. 67, 74-75 (Bankr. D. Del. 2005).

19.    The Debtors believe that granting authority to pay the Expense Reimbursement and Work Fee is in the best interests of their estates.  The Acceptable Bidders will expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the Auction, despite the fact that the bids will be subject not only to Court approval, but to overbidding by third parties.  Without the Expense Reimbursement or Work Fee, an Acceptable Bidder may elect not to participate in the process at all to the detriment of the Debtors' estates.  Further, the Bidding Procedures do not *require* the payment of the Expense Reimbursement or Work Fee, the Debtors simply have the *option* of paying or otherwise incurring such obligation in the event that they determine, in their business judgment, that offering an Acceptable Bidder

20

Expense Reimbursement or a Work Fee will result in a competitive bidding process that will maximize value of the Debtors' estates. In that instance, the value created for the Debtors' estates will likely greatly outweigh the cost of any Expense Reimbursement or Work Fee.

20.    The Debtors further seek authority, but not direction, to pay a Breakup Fee, in the event that the Debtors elect to enter into a stalking horse arrangement with a third-party bidder or with the DIP Lenders. "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . [i]n fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be *necessary* to discharge [such] duties to maximize value." *Integrated Resources*, 147 B.R. at 659–60 (emphasis added). Specifically, bid protections like the Breakup Fee "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted); *see also Integrated Resources*, 147 B.R. at 660–61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

21.    Courts in this jurisdiction regularly approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See, In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010); *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999). The Debtors believe that in instances when there is a Stalking Horse Bidder, the bid protections are necessary and together provide the Debtors' estates a floor for further bidding that may increase the consideration given in exchange for the Assets.

22.    Courts in other jurisdictions have considered three questions in connection with analyzing breakup fees: "(1) is the relationship of the parties who negotiated the break-up fee

21

tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?" *Integrated Res.*, 147 B.R. at 657. The answer to each of these questions in this instance is emphatically "no." ***First***, the Debtors propose to pay the Breakup Fee only in the event they determine it would be beneficial to enter into a stalking horse arrangement. ***Second***, the Breakup Fee would encourage, rather than hamper, bidding given it falls within the range considered reasonable by bankruptcy courts. Granting the Debtors authority to offer the Breakup Fee sends a strong signal to the market that the Debtors are serious about running a competitive auction process to maximize value. ***Third***, the aggregate amount of the Breakup Fee, if offered at all, and any Expense Reimbursement and/or Work Fee, will not exceed 3 percent of any proposed Purchase Price, an amount that is well within market for transactions of this type. *See In re Metaldyne Corp.*, 409 B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("The total amount of the proposed break-up fee and expense reimbursement is less than 3% of the total purchase price. This falls within the range of what courts in this jurisdiction have found to be [an] acceptable break-up fees."). The Debtors' submit the standard articulated in *Integrated Resources*, is consistent with caselaw in this jurisdiction, and probative of whether a breakup fee provides a benefit to the estate.

23.    Furthermore, the Debtors believe that the breakup fee is fair and reasonable in amount in light of the size and nature of the Assets, and the efforts that will be have been expended by any Stalking Horse Bidder in connection with their efforts to facilitate a sale of the Debtors' assets, which will serve as the baseline for other bids for the assets.

24.    Similar types of bid protections have been approved by this Court. *See, e.g., In re Things Remembered, Inc.*, Case No 19-10234 (KG) (Bankr. D. Del. Feb. 21, 2019) (authorizing stalking horse break-up fee and expense reimbursement); *In re Haggen Holdings, LLC*, No. 15-

11874 (KG) (Bankr. D. Del. Oct. 19, 2015) (same); *In re AgFeed USA, LLC*, No. 13-11761 (BLS) (Bankr. D. Del. Aug. 1, 2013) (authorizing breakup fee of 3% and expense reimbursement of 1%); *In re Solyndra LLC*, No. 11-12799 (MFW) (Bankr. D. Del. Sept. 28, 2012) (authorizing break-up fee of 2.6%); *In re AES Thames, L.L.C.*, No. 11-10334 (KJC) (Bankr. D. Del. Nov. 16, 2011) (authorizing a break-up fee of $300,000 in the event the debtor entered into a stalking horse purchase agreement with a purchase price of at least $10 million); *In re Magic Brands, LLC*, No. 10-11310 (BLS) (Bankr. D. Del. May 18, 2010) (authorizing stalking horse expense reimbursement).

25.    Accordingly, for the reasons set forth above, the Court should grant the Debtors the authority to incur and pay the Expense Reimbursement, Work Fee, and Breakup Fee obligations in their discretion as a valid exercise of the Debtors' business judgment and otherwise within the controlling legal standards in this district.

## III.    The Form and Manner of the Notice Should Be Approved.

26.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the relief requested herein.

27.    The Debtors submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the Notice of the Auction.

PHIL1 7689127v.1

**Reservation of Rights**

28.     Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**Notice**

29.     The Debtors will provide notice of this motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Agent for the Debtors' prepetition secured credit facility; (d) counsel to the Agent for the Debtors' prepetition secured credit facility; (e) counsel to the DIP Financing Agent; (f) the United States Attorney's Office for the District of Delaware;

(g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; (j) any party that asserts a lien on the Debtors' assets; and (k) any party that requests service pursuant to Bankruptcy Rule 2002.   The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

30.    No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

25

WHEREFORE, the Debtors respectfully request entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

Dated:  March 11, 2019
Wilmington, Delaware

*/s/ Michael W. Yurkewicz*

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:      (302) 426-1189
Facsimile:      (302) 426-9193

-and-

Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

Justin R. Bernbrock (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Co-Counsel for the Debtors and Debtors in Possession*