**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Z GALLERIE, LLC, *et al.*,[1] | ) | Case No. 19-10488 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES &
CO. LLC AND LAZARD MIDDLE MARKET LLC AS INVESTMENT BANKER TO
THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE *NUNC PRO TUNC*
TO THE PETITION DATE, (II) APPROVING THE TERMS OF THE LAZARD
AGREEMENT, (III) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS
PURSUANT TO LOCAL RULE 2016-2(H), AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application (this "Application")[2] for entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to employ and retain Lazard Frères & Co. LLC ("Lazard Frères") and Lazard Middle Market LLC ("LMM," and, together with Lazard Frères, "Lazard"), as their investment banker, *nunc pro tunc* to the Petition Date (as defined below), pursuant to (i) that certain engagement letter dated January 29, 2019, annexed as **Exhibit 1** to **Exhibit A** (the "Engagement Letter"), by and between LMM and Z Gallerie Holdings, LLC, Z Gallerie Holding Co., LLC, and Z Gallerie, LLC (ii) that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Z Gallerie, LLC (3816) and Z Gallerie Holding Company, LLC (5949). The location of the Debtors' service address is: 1855 West 139th Street, Gardena, CA 90249.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Mark Weinsten, Interim President and Chief Executive Officer of Z Gallerie, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 25] (the "First Day Declaration") filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 11, 2019 (the "Petition Date"). Capitalized terms used but not otherwise defined in this Application shall have the meanings given to them in the First Day Declaration. The First Day Declaration is incorporated herein by reference.

certain letter regarding indemnification and related matters, dated as of January 29, 2019, by and between LMM and the Debtors, annexed as **Exhibit 2** to **Exhibit A** (the "Indemnification Letter," and together with the Engagement Letter, the "Lazard Agreement"); (b) approving the terms of the Lazard Agreement; (c) waiving certain time-keeping requirements pursuant to Local Rule 2016-2(h); and (d) granting related relief. In support of this Application, the Debtors submit the Declaration of Jason A. Cohen, a Managing Director at LMM (the "Cohen Declaration"), which is attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), and Local Rules 2014-1 and 2016-2(h).

**Relief Requested**

4.     The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**: (a) authorizing the Debtors to employ and retain Lazard as their investment banker *nunc pro tunc* to the Petition Date; (b) approving the terms of the Lazard Agreement; (c) waiving certain time-keeping requirements pursuant to Local Rule 2016-2(h); and (d) granting related relief.

**Retention of Lazard**

5.     The Debtors require a qualified and experienced investment banker with the resources, capabilities, and experience of Lazard to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' cases. An investment banker, such as Lazard, fulfills a critical service that complements the services provided by the Debtors' other professionals.

6.     LMM is a wholly owned subsidiary of Lazard Frères, which is the primary U.S. operating subsidiary of a preeminent international financial advisory and asset management firm. Lazard Frères' principal office is located at 30 Rockefeller Plaza, New York, New York 10020. Together with its predecessors and affiliates, Lazard has been advising clients around the world for over 150 years.

7.     Lazard has dedicated professionals who provide restructuring services to its clients. Lazard's professionals have extensive experience in matters working with financially troubled companies in complex financial restructurings and have a reputation for creativity in complex situations. Lazard and/or its principals have been involved as advisor to debtor, creditor and equity constituencies and government agencies in many reorganization cases. Since 1990, Lazard's professionals have been involved in over 250 restructurings, representing over $1 trillion in debtor assets.

8.  Notably, Lazard has been retained as an investment banker and financial advisor in numerous large and complex chapter 11 cases, including, among others, *In re Sears Holdings Corporation,* No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 9, 2018); *In re FirstEnergy Solutions Corp.*, No. 18-50757 (Bankr. N.D. Ohio May 8, 2018); *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Apr. 4, 2018); *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D.Va. Oct. 25, 2017); *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Oct. 27, 2017); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015); *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015); *In re AWI Delaware, Inc.*, No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013); *In re Maxcom Telecomm., S.A.B. de C.V.*, No. 13-11839 (PJW) (Bankr. D. Del. Aug. 15, 2013); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013); *In re A123 Sys., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012); *In re Eastman Kodak Co.*, No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Nov. 3, 2011); *In re Great Atl. & Pac. Tea Co.*, No. 10-24549 (RDD) (Bankr. S.D.N.Y. Jan. 12, 2011).

9.  The Debtors have selected Lazard as their investment banker based upon, among other things, (a) the Debtors' need to retain an investment banking firm to provide advice with respect to the Debtors' restructuring activities, (b) Lazard's experience with the Debtors' assets and operations, and (c) Lazard's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.

10.  The resources, capabilities, and experience of Lazard in advising debtors are crucial to a debtor during its chapter 11 case. An experienced investment banker such as Lazard fulfills a critical need that complements the services offered by the Debtors' other restructuring

4

professionals. Lazard will concentrate its efforts on the restructuring, negotiating with the Debtors' creditor constituencies, and assisting the Debtors to consummate a sale of their assets or securing postpetition financing to fund a restructuring plan. For these reasons, the Debtors require the services of a capable and experienced investment banking firm such as Lazard.

## Services to be Provided

11. Per the terms of the Engagement Letter, Lazard will advise and assist the Debtors in connection with the following tasks:[3]

- reviewing and analyzing the Debtors' business, operations, and financial projections;

- assisting the Debtors in identifying and evaluating candidates for any potential Sale Transaction, advising the Debtors in connection with the negotiations, and aiding in the consummation of any Sale Transaction;

- assisting in the determination of a range of values for the Debtors on a going concern basis;

- evaluating the Debtors' potential debt capacity in light of their projected cash flows;

- assisting in the determination of a capital structure for the Debtors;

- advising the Debtors on tactics and strategies for negotiating with their Stakeholders and other contract and lease counterparties;

- rendering financial advice to the Debtors and participating in meetings or negotiations with the Debtors' Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

- advising the Debtors on the timing, nature, and terms of new securities, other consideration, or other inducements to be offered pursuant to any Sale Transaction or Restructuring;

- advising and assisting the Debtors in evaluating any potential Financing transaction by the Debtors, and, subject to Lazard's agreement so to act and, if

---

[3] The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects. In the event of any inconsistency between the summary of services as set forth herein and the Engagement Letter, the Engagement Letter will control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

5

requested by Lazard, to execution of appropriate agreements, on behalf of the Debtors, contacting potential sources of capital as the Debtors may designate and assisting the Debtors in implementing such Financing;

- assisting the Debtors in preparing documentation within Lazard's area of expertise that is required in connection with any Financing, Sale Transaction, or Restructuring;

- attending meetings of the Debtors' Board of Directors with respect to matters on which Lazard has been engaged to advise under the Engagement Letter;

- providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise under the Engagement Letter in any proceeding before the Court; and

- providing the Debtors with other financial restructuring advice.

12.     The Debtors believe that Lazard is well qualified and able to provide the foregoing services to the Debtors. Lazard has indicated a willingness to act on behalf of the Debtors, on the terms described herein.

**Professional Compensation**

13.     Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived), and consistent with the proposed compensation set forth in the Engagement Letter (the "Fee Structure"). Lazard's decision to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and to be compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

14.     Investment bankers such as Lazard do not typically charge for their services on an hourly basis. Instead, they customarily charge a monthly advisory fee plus an additional fee that

is contingent upon the occurrence of a specified type of transaction. The Engagement Letter follows this custom in the investment banking industry, and sets forth the monthly and transaction-based fees that are to be payable to Lazard.

15.  The compensation arrangements contained in the Lazard Agreement are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for Lazard to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Debtors are seeking to retain Lazard under section 328(a) of the Bankruptcy Code, the Debtors believe that Lazard's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and does not constitute a "bonus" or fee enhancement under applicable law.

16.  In summary, the Fee Structure provides that the Debtors shall pay Lazard the following fees:[4]

- **Monthly Fee**. A monthly fee of $75,000 (the "Monthly Fee"), payable on execution of the Engagement Letter and on the 1st day of each month thereafter until the earlier of the completion of the Restructuring, Sale Transaction or the termination of Lazard's engagement pursuant to Section 10 of the Engagement Letter. Fifty percent (50%) of Monthly Fees paid in respect of any months following the third month of Lazard's engagement shall be credited (without duplication) against any Restructuring Fee, Sale Transaction Fee, or Financing Fee payable; provided, that, in the event of a Chapter 11 filing, such credit shall only apply to the extent that such fees are approved in entirety by the Court, if applicable.[5]

- **Financing Fee**. A fee, payable upon consummation of a Financing (the "Financing Fee") calculated by multiplying the applicable fee percentage below by the total gross proceeds raised or committed (including, for the avoidance of doubt, amounts committed but undrawn) in each

---

[4] The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects. In the event of any inconsistency between the Fee Structure as set forth herein and the Engagement Letter, the Engagement Letter will control. Capitalized terms not otherwise defined in such summaries shall have the meanings ascribed to them in the Engagement Letter.

[5] The Debtors and Lazard have agreed, for the avoidance of doubt, that the crediting of the Monthly Fee shall begin with the Monthly Fee earned on May 1, 2019.

Financing:

| **Funds Raised** | **Fee %** |
|---|---|
| First Lien Debt | 1.50% |
| Second Lien Debt | 2.50% |
| Unsecured Debt | 3.50% |
| Equity | 5.00% |

- **Restructuring Fee** A fee equal to $1,250,000 (the "Restructuring Fee") upon the consummation of a Restructuring.

- **Sale Transaction Fee**. If, whether in connection with the consummation of a Restructuring or otherwise, the Debtors consummate a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors, Lazard shall be paid a fee (the "Sale Transaction Fee") equal to $1,250,000. For the avoidance of any doubt, more than one fee may be payable to Lazard; *provided*, *however*, in no event will Lazard be entitled to both the Restructuring Fee and the Sale Transaction Fee.

17. In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Debtors shall promptly reimburse Lazard for all reasonable expenses incurred by Lazard (including travel and lodging, data processing and communications charges, courier services, and other expenditures) and the reasonable fees and expenses of outside counsel, if any, retained by Lazard to negotiate or enforce the Engagement Letter or for services to Lazard necessary for Lazard to perform its obligations under the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (to the extent not waived). Lazard will maintain records in support of any expenses incurred in connection with the rendering of its services in these cases.

18. As it is not the general practice of investment banking firms, including Lazard, to keep detailed time records, and because Lazard's compensation will be calculated and paid based on certain transaction fees (in addition to Monthly Fees), Lazard requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-2, the United States Trustee Fee Guidelines, and any otherwise applicable orders or procedures of the Court.

Notwithstanding that Lazard does not charge for its services on an hourly basis, Lazard will nonetheless maintain records (in summary format) of its services rendered for the Debtors in one-half hour increments, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to the Court in its interim and final fee applications.

19. The Debtors believe the Fee Structure is consistent with and typical of compensation arrangements entered into by Lazard and other comparable firms in connection with the rendering of similar services under similar circumstances. Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement, were all important factors in determining the Fee Structure. The Debtors believe that the ultimate benefit of Lazard's services cannot be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services. Indeed, the Debtors and Lazard have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals in connection with these cases and in light of the fact that: (a) such commitment may foreclose other opportunities for Lazard; and (b) the actual time and commitment required of Lazard and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

20. In light of the foregoing and given the numerous issues that Lazard may be required to address in the performance of its services hereunder, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Lazard's services for engagements of this nature both in an out-of-court and chapter 11 context,

the Debtors believe that the Fee Structure is fair, reasonable, and market-based under the standard set forth in section 328(a) of the Bankruptcy Code.

## **Indemnification**

21. The Debtors have agreed to indemnify, to make certain contributions to, and to reimburse Lazard and the other Indemnified Persons (as defined in the Indemnification Letter) in accordance with the provisions set forth in the Indemnification Letter. The Indemnification Letter provides, among other things, that the Debtors will indemnify Lazard and other Indemnified Persons except to the extent that any loss, claim, damage, liability, or expense is found by a court of competent jurisdiction in a judgment which has become final in that it is no longer subject to appeal or review to have resulted from such Indemnified Person's bad faith or gross negligence.

22. The indemnification, contribution, and reimbursement provisions reflected in the Indemnification Letter are customary and reasonable terms of consideration for investment bankers such as Lazard for proceedings both out of court and in chapter 11. The terms of the Indemnification Letter were fully negotiated between the Debtors and Lazard at arm's-length and the Debtors respectfully submit that the Indemnification Letter is reasonable and in the best interests of the Debtors, their estates, and stakeholders. Accordingly, the Debtors request that the Court approve the Indemnification Letter, subject to customary modifications set forth in the Debtors' proposed order.

## **No Duplication of Services**

23. The Debtors intend that Lazard's services will complement, and not duplicate, the services to be rendered by any other professional retained by the Debtors in these chapter 11 cases. The Engagement Letter reflects Lazard's understanding that the Debtors may retain other professionals during the term of the engagement, and the Debtors believe that at their request

Lazard will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Lazard's Disinterestedness

24.  Lazard has informed the Debtors that, except as set forth in the Cohen Declaration, Lazard: (a) has no connection with the Debtors, their creditors, equity security holders or other parties in interest or their respective attorneys or accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee in any matter related to the Debtors and their estates; (b) does not hold any interest adverse to the Debtors' estates; and (c) believes that it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code.  If any new material facts or relationships are discovered or arise, Lazard will promptly inform the Court as required by Bankruptcy Rule 2014(a).

25.  During the 90 day period prior to the commencement of these cases, Lazard was paid in the ordinary course certain Monthly Fees and expense reimbursement.  Specifically, on March 7, 2019, Lazard was paid its February and March Monthly Fees and related expense reimbursements for a total of $155,394.47.[6]  Additionally, Lazard was provided a $75,000 expense retainer in connection with the payment of its March Monthly Fee on March 7, 2019.  Lazard will apply the $75,000 in retainer amounts received from the Debtors before the Petition Date first to any prepetition expenses incurred but not reimbursed prepetition, second to any postpetition expenses and third to Monthly Fees.  As of the Petition Date, no other amounts were due and payable to Lazard under the Lazard Agreement.  Accordingly, Lazard is not a prepetition creditor

---

[6]  Although the Lazard Agreement was effective January 29, 2019, Lazard did not charge the Debtors a Monthly fee for the three days worked in January 2019.

of the Debtors.

26.     Accordingly, to the best of the Debtors' knowledge, information, and belief that is based entirely in reliance on the representations made to the Debtors by Lazard, which are reflected in the Cohen Declaration, none of Lazard's past or current engagements would or do appear to create an interest materially adverse to the interests of the Debtors, creditors or equity security holders in these chapter 11 cases. As such, the Debtors believe that Lazard is disinterested and holds no materially adverse interest as to the matters upon which they are to be retained in these chapter 11 cases.

## Basis for Relief

27.     Section 327(a) of the Bankruptcy Code authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). As discussed above, Lazard satisfies the disinterestedness standard of section 327(a).

28.     In addition, the Debtors seek approval of the Lazard Agreement, including the Fee Structure set forth therein, pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

29.     Section 328 permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (internal citations omitted).

30. As set forth above, notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, Lazard intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court (to the extent compliance is not waived) and consistent with the Fee Structure set forth in the Engagement Letter.

31. The Debtors believe that the Fee Structure appropriately reflects the nature and scope of services to be provided by Lazard in these chapter 11 cases, Lazard's substantial experience with respect to investment banking services, and the fee structures typically utilized by Lazard and other leading investment banks that do not bill their client on an hourly basis. In agreeing to seek Lazard's retention under section 328(a) of the Bankruptcy Code, the Debtors acknowledge that: (a) they believe that Lazard's general restructuring experience and expertise, its knowledge of the capital markets, and its merger and acquisition capabilities will inure to the benefit of the Debtors in pursuing any Restructuring (as defined in the Engagement Letter); (b) that the value to the Debtors of Lazard's services under the Lazard Agreement derives in substantial part from that expertise and experience; (c) that, accordingly, the Fee Structure is reasonable regardless of the number of hours to be expended by Lazard's professionals in the performance of

the services to be provided under the Lazard Agreement, and (d) that any deferred fees earned by Lazard pursuant to the Engagement Letter should not be considered to be "bonuses" or fee enhancements under applicable law.

32. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit and elsewhere. *See, e.g.*, *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Apr. 4, 2018) (approving a fixed and contingency fee structure pursuant to section 328); *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D.Va. Oct. 25, 2017) (same); *In re GST AutoLeather*, *Inc.*, Case No. 17-12100 (LSS) (Bankr D. Del. Oct. 27, 2017) (same); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) (same); *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015) (same); *In re AWI Delaware, Inc.*, No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) (same); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013) (same); *In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. July 10, 2013) (same); *In re A123 Sys., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012) (same).[7]

33. Moreover, the Debtors and Lazard believe that the indemnification provisions set forth in the Indemnification Letter are customary and reasonable for investment banking engagements, both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions in this District, and others. *See, e.g.*, *In re Claire's Stores, Inc.*, No. 18-10584 (MFW) (Bankr. D. Del. Apr. 4, 2018) (approving similar indemnification provisions as set forth in the Indemnification Letter); *In re Toys "R" Us, Inc.*,

---

[7] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

Case No. 17-34665 (KLP) (Bankr. E.D.Va. Oct. 25, 2017) (same); *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr D. Del. Oct. 27, 2017) (same); *In re Sabine Oil & Gas Corp.*, No. 15-11835 (SCC) (Bankr. S.D.N.Y. Sept. 10, 2015) (same); *In re Standard Register Co.*, No. 15-10541 (BLS) (Bankr. D. Del. Apr. 13, 2015) (same); *In re AWI Delaware, Inc.*, No. 14-12092 (KJC) (Bankr. D. Del. Sep. 17, 2014) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) (same); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. July 24, 2013) (same); *In re Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. July 10, 2013) (same); *In re A123 Sys., Inc.*, No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012) (same); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del Nov. 3, 2011) (same).

34. The Debtors also believe that employment of Lazard *nunc pro tunc* to the Petition Date is warranted by the circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. *See In re Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986). The complexity, compressed timing, and intense activity relating to the preparation and filing of these chapter 11 cases necessitated that the Debtors and Lazard, as well as the Debtors' other professionals, focus their immediate attention on time-sensitive matters, and promptly devote substantial resources to the affairs of the Debtors to comply with the pending submission and approval of this Application.

35. In light of the foregoing, and given the numerous issues that Lazard may be required to address in the performance of its services under the Engagement Letter, Lazard's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Lazard's services for engagement of this nature, the Debtors believe that the terms and conditions of the Lazard Agreement are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

**Notice**

36. The Debtors will provide notice of this Application to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Agent for the Debtors' prepetition secured credit facility and the DIP Agent; (d) counsel to the Agent for the Debtors' prepetition secured credit facility and the DIP Agent; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtors conduct business; and (i) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

37. No prior request for the relief sought in this Application has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  March 20, 2019
Wilmington, Delaware

*/s/ Mark Weinsten*

Mark Weinsten
Chief Executive Officer
Z Gallerie, LLC