## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Z GALLERIE, LLC, *et al.*,[1] | ) Case No. 19-10488 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### DEBTORS' MOTION SEEKING ENTRY
### OF AN ORDER (I) AUTHORIZING AND APPROVING
### PROCEDURES TO REJECT OR ASSUME EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES, (II) AUTHORIZING AND APPROVING PROCEDURES
### TO PROVIDE NOTICE OF ADDITIONAL CLOSING STORES, IF REQUIRED, AND
### PROCEDURES RELATED THERETO, AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion (the "Motion"):[2]

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):[3]  (a) authorizing and approving procedures for rejecting or assuming

executory contracts and unexpired leases (collectively, the "Contracts"); (b) authorizing and

approving procedures to provide notice of additional closing stores, if required, and procedures

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Z Gallerie, LLC (3816) and Z Gallerie Holding Company, LLC (5949).  The location of the Debtors' service address is:  1855 West 139th Street, Gardena, CA 90249.

[2]    A detailed description of the Debtors, and their business, including the facts and circumstances supporting the Debtors' chapter 11 cases, is set forth in greater detail in the *Declaration of Mark Weinsten, Interim President and Chief Executive Officer of Z Gallerie, LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 25] the "First Day Declaration") filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on March 11, 2019 (the "Petition Date").

[3]    Capitalized terms used but not otherwise defined in this Motion shall have the meanings given to them in the *Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC, Pursuant to Chapter 11 of the Bankruptcy Code*, which is appended as Exhibit A to the Disclosure Statement filed at Docket No. 105 (as may be amended, modified, or supplemented the "Plan").

related thereto (such notice procedures, the "Additional Store Closing Notice Procedures"); and (c) granting related relief.

2.      The Debtors also request authority, but not direction, to remove or abandon personal property of the Debtors, including, without limitation, equipment, fixtures, furniture, and other personal property that may be located on, or have been installed in, leased premises that are subject to a rejected Contract after the effective date of any proposed rejection.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a), 363, 365, and 554 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 6007 and Local Rules 2002-1 and 9013-1.

## Background

6.      On March 11, 2019, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing

their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. On March 12, 2019, the Court entered an order [Docket No. 50] authorizing the joint administration and procedural consolidation of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No entity has requested the appointment of a trustee or examiner in these chapter 11 cases. On March 20, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 87].

### The Debtors' Executory Contracts and Unexpired Leases

7.      The Debtors are party to approximately 200 Contracts, which include, among other agreements, contracts with vendors for the supply of goods and services, contracts related to the Debtors' businesses, and leases with respect to real and personal property. Approximately 79 of these Contracts may be considered leases of non-residential real property subject to section 365(d)(4) of the Bankruptcy Code. During the pendency of these chapter 11 cases, the Debtors may, on a consensual or non-consensual basis, seek to assume, assume and assign, or reject the Contracts.

8.      The Debtors are in the process of evaluating all of their Contracts to determine whether such Contracts should be (a) rejected, as they are unfavorable to the Debtors or no longer beneficial for business operations, or (b) assumed or assumed and assigned as they are favorable or otherwise valuable to the Debtors' estates (including those Contracts that the Debtors may assume as amended following consensual negotiations with the applicable contract counterparties). This analysis is well underway, as discussed in the First Day Declaration.

### The Additional Store Closing Notice Procedures

9.      On March 11, 2019, the Debtors filed the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Reject Certain Unexpired Leases of*

*Nonresidential Real Property, (II) Approving Procedures for Store Closing Sales, and (III) Authorizing Customary Bonuses to Employees of Closing Stores, and (IV) Granting Related Relief* [Docket No. 13], seeking authorization to, among other things, close up to 17 of the Debtors' retail store locations and reject the applicable leases (the "Store Closing Motion"). On March 12, 2019, the Court entered the *Interim Order (I) Approving Procedures for Store Closing Sales (II) Authorizing Customary Bonuses to Employees of Closing Stores, and (III) Granting Related Relief* [Docket No. 74] (the "Interim Store Closing Order"). As discussed in the First Day Declaration and Store Closing Motion, the Debtors continue to analyze their real estate footprint and may determine to close additional stores in the future (any such stores, the "Additional Closing Stores"). Pursuant to this Motion, the Debtors seek approval of the Additional Store Closing Notice Procedures as the means by which the Debtors can provide notice of such additional closing stores to applicable landlords and interested parties without the filing of additional motions.

10.     The Interim Store Closing Order authorizes the Debtors to close up to 17 stores (the "Initial Closing Stores") and approves procedures related thereto (the "Store Closing Procedures"). At the final hearing on the Store Closing Motion, the Debtors expect to obtain the above relief on a final basis and seek approval of rejection of the leases underlying the Initial Closing Stores, as set forth in the Store Closing Motion.[4]  As stated in the Store Closing Motion, the Debtors propose that the Store Closing Procedures applicable to the Initial Closing Stores (as approved on a final basis) will be applicable to the Additional Closing Stores. *See Store Closing Motion* at ¶ 11.  In conjunction with any Additional Store Closings, only to the extent necessary, the Debtors also seek approval to use the Dispute Resolution Procedures (as defined in the Store Closing Motion), a waiver of compliance with applicable Fast Pay Laws or liquidation sale laws (as discussed in the

---

[4]     As of the date hereof, the Debtors have only initiated store closings at 15 of the Initial Closing Stores.

Store Closing Motion), and approval of the Store Closing Bonus Plan (as discussed in the Store Closing Motion).[5] Significantly, the Debtors propose that any such Additional Store Closings will be made in consultation with the DIP Lender, the Committee, and, as applicable, a Successful Bidder in the Auction process.

11.    While the Debtors do not propose that the Rejection Procedures contemplated herein will apply to the Initial Closing Stores (as notice has already been provided pursuant to the Store Closing Motion), if the Debtors do determine to close any Additional Closing Stores, the Debtors will follow the procedures set forth herein to effectuate the lease rejection.

12.    Absent the relief requested in this Motion, the Debtors would be required to file separate motions to reject or assume the Contracts and close the Additional Closing Stores, resulting in substantial costs to, and administrative burdens on, the Debtors' estates—in addition to burdening the Court's docket.

13.    For the reasons discussed above and as further set forth herein, the Debtors request approval of the Contract Procedures and the Additional Store Closing Notice Procedures.

**<u>The Proposed Rejection Procedures</u>**

14.    The Debtors seek entry of the Order authorizing and approving the following rejection procedures with respect to the Contracts (the "<u>Rejection Procedures</u>"):

      a.    ***Rejection Notice***.  The Debtors shall file a notice substantially in the form attached to the Order as <u>Exhibit 1</u> (the "<u>Rejection Notice</u>") indicating the Debtors' intent to reject a Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which Rejection Notice shall set forth, among other things:  (i) the Contract or Contracts to be rejected; (ii) the Debtor or Debtors party to such Contract(s); (iii) the names and addresses of the counterparties to such Contract(s) (each a "<u>Rejection Counterparty</u>"); (iv) the proposed effective date of rejection for such Contract(s) (the "<u>Rejection Date</u>"); (v) if any such Contract is a lease, the personal

---

[5]    The description of all such relief and the basis for relief related to these programs is included in the Store Closing Motion and incorporated herein by reference.

property to be abandoned (the "<u>Abandoned Property</u>"), if any, and an estimate of the book value of such property, if practicable; and (vi) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).   The Rejection Notice may list multiple Contracts; *provided* that the number of counterparties to Contracts listed on each Rejection Notice shall be limited to no more than 100.

b.     ***Service of the Rejection Notice***.  The Debtors will cause the Rejection Notice to be served: (i) by overnight delivery service upon the Rejection Counterparties affected by the Rejection Notice at the notice address provided in the applicable Contract (and upon such Rejection Counterparty's counsel, if known); and (ii) by first class mail, email, or fax, upon (A) the Office of the U.S. Trustee for the District of Delaware; (B) the Committee; (C) the Secured Credit  Agreement Agent; (D) counsel to the Secured Credit  Agreement Agent; (E) counsel to the DIP Agent; (F) the United States Attorney's Office for the District of Delaware; (G) the Internal Revenue Service; (H) the United States Securities and Exchange Commission; (I) the state attorneys general for all states in which the Debtors conduct business; (J) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Master Notice Parties</u>").

c.     ***Objection Procedures***.  Parties objecting to a proposed rejection must file and serve a written objection[6] so that such objection is filed with this Court on the docket of the Debtors' chapter 11 cases  no later than seven (7) days after the date the Debtors file and serve the relevant Rejection Notice (the "<u>Rejection Objection Deadline</u>") and promptly serve such objection on the following parties (collectively,  the "<u>Objection Service Parties</u>"): (i) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Joshua A. Sussberg, P.C., and Emily Kehoe and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Justin Ryan Bernbrock, and Joshua Altman; (ii) proposed co-counsel to the Debtors, Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801, Attn; Domenic E. Pacitti; (iii) the Office of The United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn:  Jaclyn Weissgerber; (iv) counsel to the Committee, Cooley LLP, 55 Hudson Yards, New York, New York 10001, Attn: Seth Van Aalten and Michael Klein; (v) co-counsel to the Committee, Whiteford, Taylor & Preston LLC, The Renaissance Center, 405 North King Street, Suite 500, Wilmington, Delaware 19801, Attn: Christopher M. Samis; and (vi) counsel to the DIP Agent, Buchanan Ingersoll & Rooney PC, 919 North Market Street, Suite 1500, Wilmington, Delaware 19801, Attn: Mary F. Caloway.

---

[6]   An objection to the rejection of any particular Contract listed on a Rejection Notice shall not constitute an objection to the rejection of any other Contract listed on such Rejection Notice.

d.    ***No Objection Timely Filed***.  If no objection to the rejection of any Contract is timely filed, each Contract listed in the applicable Rejection Notice shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the applicable Rejection Counterparty agrees; *provided*, *however*, that the Rejection Date for a rejection of a lease of non-residential real property shall not occur until the later of (i) the Rejection Date set forth in the Rejection Notice and (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and (A) turning over keys, key codes, and security codes, if any, to the affected landlord or (B) notifying the affected landlord in writing that the keys, key codes, and security codes, if any, are not available, but the landlord may rekey the leased premises; *provided*, *further*, that the Rejection Date for a lease of non-residential real property rejected pursuant to these Rejection Procedures shall not occur earlier than the date the Debtors filed and served the applicable Rejection Notice.

e.    ***Unresolved Timely Objection***.  If an objection to a Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven (7) days' notice of such hearing to the applicable Rejection Counterparty and the other Objection Service Parties.  If such objection is overruled or withdrawn, such Contract shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty agree, or as ordered by the Court.

a.    ***Removal from Schedule***.  The Debtors reserve the right to remove any Contract from the schedule to a Rejection Notice at any time prior to the Rejection Date.

b.    ***Deposits***.  If the Debtors have deposited monies with a Rejection Counterparty as a security deposit or other arrangement, such Rejection Counterparty may not set off or recoup or otherwise use such deposit without the prior approval of the Court, unless the Debtors and the applicable Rejection Counterparty otherwise agree.

c.    ***Abandoned Property***.  The Debtors are authorized, but not directed, at any time on or before the applicable Rejection Date, to remove or abandon any of the Debtors' personal property that may be located on the Debtors' leased premises that are subject to a rejected Contract. The Debtors shall generally describe the property in the Rejection Notice and their intent to abandon such property.  Absent a timely objection, any and all property located on the Debtors' leased premises on the Rejection Date of the applicable lease of nonresidential real property shall be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date. Landlords may, in their sole discretion and without further notice or order

7

of this Court, utilize and/or dispose of such property without liability to the Debtors or third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

d.    ***Proofs of Claim***.  Claims arising out of the rejection of Contracts, if any, must be filed in accordance with the Plan or on or before the later of (i) the deadline for filing proofs of claim established in these chapter 11 cases, if any, and (ii) 30 days after the later of (A) if no objection is timely filed, the Rejection Objection Deadline, and (B) if an objection is timely filed, the date that all such filed objections have either been overruled or withdrawn. If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on such a claim that may be made in connection with these chapter 11 cases.

## The Proposed Assumption Procedures

15.    The Debtors seek the entry of the Order authorizing and approving the following assumption procedures with respect to the Contracts (the "Assumption Procedures" and together with the Rejection Procedures, collectively, the "Contract Procedures"):

a.    ***Assumption Notice***.  The Debtors shall file a notice substantially in the form attached to the Order as Exhibit 2 (the "Assumption Notice") indicating the Debtors' intent to assume a Contract or Contracts pursuant to section 365 of the Bankruptcy Code, which shall set forth, among other things:  (i) the Contract or Contracts to be assumed; (ii) the Debtor or Debtors party to such Contract; (iii) the names and addresses of the counterparties to such Contracts (each an "Assumption Counterparty"); (iv) the identity of the proposed assignee of such Contracts (the "Assignee"), if applicable; (v) the effective date of the assumption for each such Contract (the "Assumption Date"); (vi) the proposed cure amount, if any for each such Contract; (vii) a description of any material amendments to the Contract made outside of the ordinary course of business; and (viii) the deadlines and procedures for filing objections to the Assumption Notice (as set forth below).   The Assumption Notice may list multiple Contracts; *provided* that the number of counterparties to Contracts listed on each Assumption Notice shall be limited to no more than 100.

b.    ***Service of the Assumption Notice and Evidence of Adequate Assurance***.  The Debtors will cause the Assumption Notice to be served (i) by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice and each Assignee, if applicable, at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known) and (ii) by first class mail, email, or fax

upon the Master Notice Parties.[7]  To the extent the Debtors seek to assume and assign a lease of non-residential real property, the Debtors will cause evidence of adequate assurance of future performance to be served with the Assumption Notice by overnight delivery upon the Assumption Counterparties affected by the Assumption Notice at the address set forth in the notice provision of the applicable Contract (and upon the Assumption Counterparties' counsel, if known, by electronic mail).

c.    ***Objection Procedures***.   Parties objecting to a proposed assumption or assumption and assignment (including as to the cure amount), as applicable, of a Contract must file and serve a written objection[8] so that such objection is filed with this Court no later than seven (7) days after the date the Debtors file and serve the relevant Assumption Notice and promptly serve such objection on the Objection Service Parties.

d.    ***No Objection***.   If no objection to the assumption of any Contract is timely filed, each Contract shall be assumed as of the Assumption Date set forth in the applicable Assumption Notice or such other date as the Debtors and the applicable Assumption Counterparties agree and the proposed cure amount shall be binding on all counterparties to such Contract and no amount in excess thereof shall be paid for cure purposes; *provided*, *however*, that the Assumption Date for a lease of nonresidential real property shall not occur earlier than the date the Debtors filed and served the applicable Assumption Notice.

e.    ***Unresolved Timely Objection***.   If an objection to an Assumption Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall schedule a hearing on such objection and shall provide at least seven (7) days' notice of such hearing to the applicable Assumption Counterparty and the other Objection Service Parties.  If such objection is overruled or withdrawn, such Contract shall be assumed as of the Assumption Date set forth in the Assumption Notice or such other date to which the Debtors and the counterparty to such Contract have agreed, or as ordered by the Court.

f.    ***Removal from Schedule***.   The Debtors reserve the right to remove any Contract from the schedule to an Assumption Notice at any time prior to the Assumption Date (including, without limitation, upon the failure of any proposed assumption and assignment to close).

---

[7]   The Debtors shall serve (by electronic mail, if requested) a counterparty to a Contract other than a lease of non-residential real property to be assumed under the Contract Procedures with evidence of adequate assurance as soon as reasonably practicable upon such counterparty's written request to the Debtors' proposed counsel.

[8]   An objection to the assumption of any particular Contract listed on an Assumption Notice shall not constitute an objection to the assumption of any other Contract listed on such Assumption Notice.

16.     In addition, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors request that the assignment of any Contract pursuant to the Assumption Procedures (a) be free and clear of (i) all liens (and any liens shall attach to the proceeds in the same order and priority subject to all existing defenses, claims, setoffs, and rights) and (ii) any and all claims (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties of or by the Debtors, debts, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, claims and encumbrances that purport to give to any party a right or option to effect any forfeiture, modification, or termination of the interest of any Debtor or Assignee, as the case may be, in the Contract(s) (but only in connection with the assignment by the Debtor to the Assignee)), *provided*, *however*, that any such assignment shall not be free and clear of any accrued but unbilled or not due rent and charges under a lease of non-residential real property including adjustments, reconciliations and indemnity obligations, liability for which shall be assumed by the Debtors or the applicable Assignee, as agreed by and among the Debtors and the Applicable Assignee; and (b) constitutes a legal, valid, and effective transfer of such Contracts and vests the applicable Assignee with all rights, titles, and interests to the applicable Contracts.[9] For the avoidance of doubt, all provisions of the applicable assigned Contract, including any provision limiting assignment, shall be binding on the applicable Assignee.

---

[9]     Certain of the Contracts may contain provisions that restrict, prohibit, condition, or limit the assumption and/or assignment of such Contract.  The Debtors reserve all rights with respect to the enforceability of such provisions.

**The Proposed Additional Store Closing Notice Procedures**

17.     As discussed in the First Day Declaration, the Debtors continue to analyze their store footprint and negotiate modifications to lease terms with landlords.  Although the Debtors have no immediate plans to close any additional stores, such actions may be necessary to align with the Debtors' go-forward business plan and maximize the value of the estates for all stakeholders.  In order to reduce the cost associated with seeking approval of closing such stores, the Debtors seek entry of the Order authorizing and approving the following Additional Store Closing Notice Procedures with respect to Additional Closing Stores, if any, and allowing the Debtors to use the Store Closing Procedures already approved by this Court in connection with such Additional Closing Stores.

    a.    ***Additional Store Closing Notice***.  The Debtors shall file a notice substantially in the form attached to the Order as <u>Exhibit 3</u> (the "<u>Additional Store Closing Notice</u>") indicating the Debtors' intent to close any Additional Closing Stores and, if applicable, reject the underlying lease, and serve such notice on the applicable landlords (the "<u>Additional Closing Store Landlords</u>") and any other interested parties by email (to the extent available to the Debtors) or overnight mail.  With respect to Additional Closing Store Landlords, the Debtors will mail such notice to the notice address set forth in the lease for such Additional Closing Store (or, if none, at the last known address available to the Debtors).

    b.    ***Objection Procedures***.  Additional Closing Store Landlords and any interested parties who object to the Additional Store Closing (as applicable) must file and serve a written objection[10] so that such objection is filed with this Court no later than seven (7) days after service of the applicable Additional Store Closing Notice and promptly serve such objection on the Objection Service Parties.

    c.    ***No Objection***.  If no objection to the Additional Store Closing Notice is timely filed, the Debtors should be authorized, pursuant to sections 105(a), and 363(b) and (f) of the Bankruptcy Code, to proceed with the closings of the Additional Closing Stores in accordance with the Order.

---

[10]   An objection to the rejection of any particular Contract listed on an Additional Store Closing Notice shall not constitute an objection to the any other store closing listed on such Additional Store Closing Notice.

      d.     ***Unresolved Timely Objection***.  If any objections are filed with respect to the Additional Store Closings, and such objections are not resolved, the objections will be considered by the Court at the next regularly scheduled hearing, subject to the rights of any party to seek relief on an emergency basis on shortened notice, to the extent necessary so that the Debtors can move promptly to maximize value and minimize expenses for the benefit of their creditors and stakeholders.

      e.     ***Store Closing Procedures***. The Store Closing Procedures approved by this Court shall be applicable to the Additional Store Closings. A copy of the Store Closing Procedures shall be sent to Landlords along with the Additional Store Closing Notice.

      f.     ***Authority to Reject the Unexpired Leases.***  The Debtors shall be authorized to reject the leases in connection with the Additional Closing Store by following the Rejection Procedures set forth in this Motion or by including a proposed rejection date and general description of abandoned property on the Additional Store Closing Notice and otherwise following the Rejection Procedures.

      g.     ***Authority to Assume the Unexpired Leases.*** The Debtors shall be authorized to assume and assign the leases in connection with the Additional Closing Store only by following the Assumption Procedures set forth in this Motion.

18.    In addition, as more fully set forth in the Store Closing Motion, the Debtors also seek approval to use the Dispute Resolution Procedures, a waiver of compliance with applicable Fast Pay Laws or liquidation sale laws, and approval of the Store Closing Bonus Plan (each as defined and discussed in the Store Closing Motion).  For all the reasons set forth in the Store Closing Motion, the Debtors believe that, if a determination to close any Additional Closing Stores is made in consultation with the DIP Lender, the Committee, and, as applicable, a Successful Bidder in the Auction process, such relief is appropriate to most efficiently and effectively maximize the value of the Debtors' estates.

**Basis for Relief**

I.    **The Contract Procedures are in the Best Interests of the Debtors' Estates.**

19.    Given the large number of Contracts to which the Debtors are a party, establishing the Contract Procedures will streamline the administration of these chapter 11 cases and enhance the efficiency of the reorganization process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Contract that the Debtors seek to assume or reject.  The Contract Procedures are reasonable and fair to Contract counterparties because they afford parties in interest the opportunity to be heard with respect to the rejection, assumption, or assumption and assignment of the Contracts (and any amendments to Contracts or abandonment of property related thereto).

20.    Courts in this district often enter orders approving similar relief.  *See, e.g.*, *Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (entering an order for procedures to reject executory contracts and unexpired leases); *In re VER Technologies Holdco LLC*, No. 18-10834 (KG) (Bankr. D. Del. May 4, 2018) (entering an order for procedures to reject and assume executory contracts and unexpired leases)*; In re Charming Charlie Holdings Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018 (entering an order for procedures to reject executory contracts); *In re American Apparel, LLC,* No. 16-12551 (BLS) (Dec. 13, 2016) (same); *In re Quicksilver, Inc.*, No. 15-11880 (BLS) (Bankr. D. Del. Oct. 7, 2015) (same); *In re RadioShack Corp.*, No. 15-10197 (KJC) (Bankr. D. Del. Feb. 20, 2015) (same); *In re In re Energy Future Holdings Corp.*, No. 14-10979 (CJS) (Bankr. D. Del. Sep. 15, 2014) (same); *In re Overseas Shipholding Grp., Inc.*, No. 12-20000 (Bankr. D. Del. May 28, 2014) (same).[11]

---

[11]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

## II.    Rejection, Assumption, Assignment, and Amendment of the Contracts is an Exercise of the Debtors' Business Judgment.

21.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.  *See Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Nat'l Labor Relations Bd. v. Bildisco and Bildisco* (*In re Bildisco*), 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)).  The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice.  *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

22.    Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  Further, the business judgment standard is satisfied when a debtor determines that assumption or rejection will benefit the estate.  *See In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722, at *7–8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires consideration of the benefit of the rejection to the debtor's estate); *see also In re TS Indus., Inc.*, 117 B.R. 682, 685 (Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

23.    Further, as with the assumption or rejection of an executory contract or an unexpired lease under section 365, any amendment to an executory contract or unexpired lease that may be deemed outside the ordinary course of business is authorized under section 363 of the Bankruptcy Code when there is a "sound business purpose" that justifies such action.

*See Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *see also In re Delaware and Hudson Ry. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" standard for transactions under section 363 of the Bankruptcy Code).

24.　　The Debtors have determined, in their sound business judgment, that the rejection, assumption, or assumption and assignment (and any amendments thereto) of Contracts in accordance with the Contract Procedures proposed herein is and will be in the best interest of the Debtors' estates.  Further, the Contract Procedures will avoid substantial legal expense and the use of Court time that would result if a motion were filed and a hearing held for every motion seeking the rejection, assumption, or assumption and assignment of Contracts.  The Debtors submit that the information provided on the Rejection Notices and Assumption Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such a rejection, assumption, or assumption and assignment (and any amendments thereto) in their sound business judgment.  Accordingly, the Court should approve the Contract Procedures.

**III.　Assignment of Contracts Free and Clear of Interests.**

25.　　Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in such property if:  (a) applicable nonbankruptcy law permits a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  11 U.S.C. § 363(f).

26.　　Executory contracts and unexpired leases are property of a debtor's estate.  To the extent the Debtors assume and assign a Contract pursuant to the Assumption Procedures, such assignment is tantamount to a sale of estate property, and may be transferred free and clear of the

interests in such property held by an entity other than the estate, so long as one of the criteria under section 363(f) of the Bankruptcy Code is satisfied. The Debtors propose that if a party in interest fails to timely object to an assumption and assignment consistent with the Assumption Procedures, such party shall be deemed to "consent" to such assumption and assignment within the meaning of section 363(f)(2) of the Bankruptcy Code. If a party in interest timely objects to an assumption and assignment consistent with the Assumption Procedures, and such objection is not withdrawn or resolved, the Debtors shall file a notice of hearing to consider the objection; if such objection is overruled or withdrawn, the Contract(s) in question shall be assumed. The requirements of section 363(f) of the Bankruptcy Code would thus be satisfied for any proposed "transfer" of a Contract free and clear of liens, claims, encumbrances, and other interests.

27.    Courts in this district and others have granted similar authority. *See, e.g., In re Bon Ton Stores, Inc.*, No. 18-10248 (Bankr. D. Del. Aug. 30, 2018) (authorizing the assignment of contracts and leases free and clear of liens and claims); *In re Magnum Hunter Resources Corporation*, No. 15-12533 (Bankr. D. Del. Jan. 7, 2016) (same); *In re Specialty Retail Shops Holding Corp.*, No. 19-80064 (Bankr. D. Neb. Jan. 16, 2019) (same); *In re Eastman Kodak Co.*, No. 12-10202 (Bankr. S.D.N.Y. April 4, 2012) (same).

**IV.    Abandonment of Personal Property.**

28.    With respect to the Debtors' request for authority to abandon property, the Debtors submit that the standard set forth in section 554(a) of the Bankruptcy Code is satisfied. Section 554(a) provides that a debtor in possession may abandon, subject to court approval, "property of the estate that . . . is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Before authorizing abandonment of property, a Bankruptcy Court must find either: (a) the property is burdensome to the estate or (b) the property is both of inconsequential value and inconsequential benefit to the estate. *See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,

474 U.S. 494, 497 (1986; *Matter of Boogaard*, 89 B.R. 397, 397 (Bankr. D. Del. 1988); *In re Pilz Compact Disc, Inc.*, 229 B.R. 630 (Bankr. E.D. Pa. 1999). The personal property proposed to be abandoned in connection with any future rejections of Contracts that are real property leases would primarily consist of fixtures, furniture, advertising displays, and other office and store equipment that could not be liquidated in the store closing sales and is (x) of minimal or no material value or benefit to the Debtors' estates and/or (y) burdensome insofar as the costs and expenses of removal and storage of such property are likely to exceed the net proceeds realizable from their sale.

**V.      The Contract Procedures Satisfy Due Process.**

29.      The counterparties to the Contracts will not be prejudiced by the Contracts Procedures because, upon receipt of an Assumption Notice or a Rejection Notice, such counterparties will have received advance notice of the Debtors' intent to reject, assume, or assume and assign their respective Contract and of the effective date of such assumption or rejection. *See, e.g., In re Thane Int'l, Inc.,* 586 B.R. 540, 548 (Bankr. D. Del. 2018) (finding that the requirements of the Bankruptcy Code are meant to protect the interests of the non-debtor parties to executory contracts, so they may avoid having to deal with an assumption of which they had no notice and which they had no opportunity to contest)*; In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding debtor may reject executory contract by clearly communicating intention to reject).  Additionally, in the case of unexpired leases of nonresidential real property, the Debtors will likely vacate the premises before or upon serving the Rejection Notice, thereby allowing the counterparties to take possession of and relet the property promptly.  *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 608-09 (2d Cir. 2007) (holding bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a

nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re New Valley Corp*, No. 98-982, 2000 U.S. Dist. LEXIS 12663, at *44-46 (D.N.J. Aug. 31, 2000) (holding bankruptcy court properly exercised its discretion in adjusting the effective date of rejection from the date the court signed the order authorizing rejection to the date on which the debtor vacated and the landlord exercised control over the property); *In re Amber's Stores*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that lease at issue should be deemed rejected as of the petition date due to equities of the case where debtor turned over keys and vacated premises and served motion to reject lease as soon as possible).

30.     As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014."     Fed. R. Bankr. P. 6006(a). Bankruptcy Rule 9014 provides that:  "In a contested matter . . . , not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 9014(a).  The notice and hearing requirements for contested matters under Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given *in light of the particular circumstances*. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

31.     Under Bankruptcy Rule 6006(f), a debtor may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(e).  *See* Fed. R. Bankr. P. 6006(f).  Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject multiple executory contracts or unexpired leases must satisfy.

These requirements are procedural in nature.  A motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

i.      state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

ii.     list parties alphabetically and identify the corresponding contract or lease;

iii.    specify the terms, including the curing of defaults, for each requested assumption or assignment;

iv.    specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

v.     be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

vi.    be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f).

32.     The clear purpose of Bankruptcy Rule 6006(f), as amended, is to protect the due process rights of counterparties to the Contracts while conserving estate resources.  Counterparties must be able to locate their Contracts and readily determine whether their Contracts are being assumed or rejected.

33.     The Contract Procedures satisfy Bankruptcy Rule 6006(f), including the 100-contract or lease limit set forth in subsection (vi) thereof.  Further, given the number of Contracts the Debtors will be seeking to assume or reject, obtaining Court approval of each assumption or rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in costs to the Debtors' estates that may decrease the economic benefits of rejection or assumption.

34.     In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the U.S. Trustee and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

35.     As a result, the Contract Procedures afford Contract counterparties and all other parties in interest their due process rights by providing notice and the opportunity to be heard. Moreover, Court oversight is maintained in the event of an objection.  For the foregoing reasons, the Contract Procedures should be approved, and the Debtors should be authorized to reject, assume, and assume and assign the Contracts consistent with the terms of such procedures.

36.     In sum, the Contract Procedures will minimize costs to the Debtors' estates and reduce the burden on this Court's docket while protecting parties in interest by providing notice and the opportunity to object and obtain a hearing.  Moreover, the Debtors have determined that the Contract Procedures are an appropriate means to protect and maximize the value of the Debtors' estates.

**VI.     The Additional Store Closing Notice Procedures, Including Using the Store Closing Procedures, Are in the Best Interests of the Debtors' Estates, Satisfy Due Process Requirements, and Should be Approved as an Exercise of the Debtors' Business Judgment.**

37.     In a retail case with over 70 stores and financing milestones requiring a speedy exit from chapter 11, it is imperative that the Debtors are able to implement efficiently any go-forward business plan without undue burden.  The Debtors respectfully submit that any determination to close any additional stores will follow the same process as discussed in the First Day Declaration that led to the entry of the Interim Store Closing Order (and will be made in consultation with the DIP Lender, the Committee, and, as applicable, a Successful Bidder in the Auction process).  The Debtors therefore believe that the determination to close any additional closing stores will be a

valid exercise of the Debtors' business judgement and will maximize the value of the Debtors' estate.

38.    With respect to the elements of relief already authorized by the Store Closing Motion, the Debtors incorporate the basis for relief of the Store Closing Motion herein by reference. The Debtors believe the Store Closing Procedures, Dispute Resolution Procedures, waiver of Applicable State Laws, and Store Closing Bonus Program are all fair and appropriately applied to any Additional Closing Stores. In addition, the Store Closing Motion itself indicated the intent to apply the Store Closing Procedures to all store closings in these chapter 11 cases. *See Store Closing Motion* at ¶ 11.

39.    In addition, the Debtors believe that establishing the Additional Store Closing Notice Procedures will streamline the administration of these chapter 11 cases and enhance the efficiency of the reorganization process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were required with respect to every store closing.  The Additional Store Closing Notice Procedures are reasonable and fair to landlords and allow such landlords to be heard with respect to any objection.

40.    Similar relief has been granted in recent retail bankruptcy cases. *See In re rue21, Inc.*, No. 17-22045 (Bankr. W.D. Pa. July 11, 2017) (approving similar procedures for supplemental stores); I*n re APP Winddown, LLC (f/k/a American Apparel, LLC)*, No. 16-12551 (Bankr. D. Del. Dec. 19, 2016) (same); *In re Golfsmith Int'l Holdings, Inc.,* No. 16-12033 (LSS) (Bankr. D. Del. Oct. 13, 2016) (same); *In re Orchard Supply Hardware Stores Corp.*, No. 13-11565 (CSS) (Bankr. D. Del. June 28, 2013) (same). *In re the Gymboree Corp.,* No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (same).

**Reservation of Rights**

41.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**Waiver of Bankruptcy Rule 6004(a), 6004(h), and 6006(d)**

42.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).  The Debtors also seek to waive the 14-day stay required of any assignment of Contract under Bankruptcy Rule 6006(d).

## **Notice**

43.    The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Agent for the Debtors' prepetition secured credit facility and the DIP Agent; (d) counsel to the Agent for the Debtors' prepetition secured credit facility and the DIP Agent; (e) counsel to the Committee; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; and (j) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

44.    No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated:  March 27, 2019
Wilmington, Delaware

*/s/ Domenic E. Pacitti*

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193

-and-

Joshua A. Sussberg, P.C. (admitted *hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Justin R. Bernbrock (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Co-Counsel for the Debtors and Debtors in Possession*