**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Z GALLERIE, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>19-10488 (LSS)<br><br>Jointly Administered<br><br>Hearing Date: 4/10/19 at 10 a.m.<br>Objection Deadline: 4/3/19 at 4 p.m.<br><br>Re: D.I. 26 |

**COMENITY BANK'S LIMITED OBJECTION AND RESERVATION OF RIGHTS
WITH RESPECT TO DEBTORS' MOTION SEEKING ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION
FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION LENDERS, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING
FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Comenity Bank ("Comenity"), by and through its undersigned counsel, submits its limited objection and reservation of rights with respect to the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling Final Hearing, and (VII) Granting Related Relief* (Docket No. 17) (the "DIP Motion").

1. Comenity does not oppose the Debtors' efforts to obtain post-petition financing; however, Comenity requests clarification to ensure that the relief granted in the final DIP order (the "DIP Order"), which has not yet been filed, conforms with applicable law, avoids prejudice

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Z Gallerie, LLC (3816) and Z Gallerie Holding Company, LLC (5949). The location of the Debtors' service address is: 1855 West 139th Street, Gardena, CA 90249.

to Comenity, and preserves Comenity's rights under the Program Agreement and the Customer Program Order (as defined below) and applicable law. As detailed more below, Comenity finances the purchases of the Debtor's goods by the Debtor's customers. The customers use a Private Label Credit Card issued directly by Comenity to the customer. When a purchase is made, the Debtor is paid immediately by Comenity and Comenity then collects the amount owed by the customer over time.

**RELEVANT FACTS**

2. Comenity (formerly World Financial Network National Bank) and Z Gallerie, LLC (formerly Z Gallerie, Inc.)(the "Debtor") are parties to a Private Label Credit Card Program Agreement dated October 15, 2003, as amended (the "Program Agreement").[2]

3. Under the Program Agreement, Comenity operates a private label credit card program with the Debtor (the "Card Program"). Comenity issues private label credit cards ("Private Label Cards") to qualified customers of the Debtor, and Comenity extends credit to those cardholders for purchases from the Debtor's stores or website. Comenity has sole discretion to make cardholder credit decisions, including whether to approve various types of special credit programs. Comenity advances payment to the Debtor for cardholder purchases, net of various amounts owed to Comenity, including chargebacks, refunds, returns, cardholder disputes, fees, in-store payments, and other amounts. Comenity is granted the right to use the Debtor's trademarks, service marks, and other rights pertaining to the Debtor's names (collectively, the "Marks") in

---

[2] The Program Agreement (with all related information) is confidential by its terms. Further, the Program Agreement (with all related information) contains Comenity's confidential commercial information subject to protection under Bankruptcy Code § 107(b). Comenity operates in a competitive market and the disclosure of Comenity's confidential commercial information would harm Comenity and would also provide Comenity's competitors and others with an unfair commercial advantage. Accordingly, this limited objection only generally describes certain non-economic terms of the Program Agreement. Comenity is not waiving confidentiality and reserves all rights with respect thereto.

connection with the administration and collection of the cardholder accounts. In turn, the Debtor must maintain its business operations, including compliance with the Card Program's operating procedures and resolution of customer disputes. The Debtor is also required to market, promote, participate in, and support the Card Program. Comenity owns the cardholder accounts and cardholder payments.

4. The Debtor identified the Card Program as one of the Customer Programs to be continued. *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* [Docket No. 8] (the "Customer Program Motion"), ¶ 10. The Debtor stated that the Customer Programs are critical to the Debtor's customer base. In fact, Comenity has financed a significant percentage of the Debtor's sales, and accordingly, has a substantial indebtedness owed to it. The Customer Program Motion also generally describes the settlement procedures with the Debtor for cardholder purchases, net of amounts due Comenity. The Debtor's continued use of the Private Label Cards requires that Comenity continue to process those transactions, which creates obligations between Comenity and the Debtor.

5. The Court approved the Customer Program Motion on an interim basis. *Interim Order (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Customer Obligations Related Thereto, and (II) Granting Related Relief* [Docket No. 57] (the "Customer Program Order"). The Customer Program Order authorizes the Debtor to continue to administer the Customer Programs currently in effect, including the Card Program. Comenity proceeded in accordance with the Customer Program Order and the Program Agreement. Comenity continues to finance cardholder purchases and to make payments to the

Debtor net of amounts due Comenity under the Program Agreement. Comenity also continues to use the Marks to administer and collect cardholder accounts associated with those cardholder purchases.

6. The Program Agreement expires by its own terms on June 1, 2019, and the Debtor is transitioning to a different private label credit card issuer.

7. Comenity seeks confirmation that nothing in the DIP Order will impair or prejudice certain rights it has. The DIP Motion appropriately excepts "Permitted Liens" from any of the DIP priming liens, and the DIP agreement (§ 5.1) appropriately defines "Permitted Liens" as including "rights of setoff against credit balances of Holdings or any of its Subsidiaries with credit card issuers or credit card processors to Holdings or any of its Subsidiaries in the Ordinary Course of Business." Section 5.1(l) also includes non-exclusive licenses granted in the ordinary course of business within the definition of "Permitted Liens." However, the DIP agreement (§ 5.1) also provides that the "Permitted Liens (other than the Carve-Out), while any portion of the Obligations or the Adequate Protection Obligations remain outstanding, shall at all times be junior and subordinate to the Liens under the Loan Documents and the DIP Orders, and to the Adequate Protection Liens." Comenity therefore objects to the extent that the DIP Order could be interpreted to permit the priming of Comenity's setoff and recoupment rights under the Program Agreement and/or applicable law. Comenity also objects to the extent that the DIP Order could be interpreted to permit the priming of Comenity's rights to use the Marks in connection with the administration and collection of the cardholder accounts.

## LIMITED OBJECTION

8. Section 364 of the Bankruptcy Code permits a debtor to obtain post-petition financing that is necessary to preserve the debtor's estate, provided that the debtor has exercised

its "basic business judgement consistent with [its] fiduciary duties" in negotiating and securing such financing. See 11 U.S.C. § 364; In re Ames Dep't Stores Inc., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990). The debtor bears the burden of proving that: (i) the proposed financing is an exercise of sound and reasonable business judgment; (ii) the financing is in the best interests of the estate and its creditors; (iii) the transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the debtor's business; (iv) the terms of the transaction are fair, reasonable, and adequate given the circumstances of the debtor-borrower and proposed lender; and (v) the financing was negotiated in good faith and at arm's length by the debtor and the lender. See In re Los Angeles Dodgers LLC, 457 B.R. 308, 312 (Bankr. D. Del 2011); In re St. Mary's Hosp., 86 B.R. 393, 401 (Bankr E.D. Pa. 1998); In re Tenney Vill. Co., Inc,. 104 B.R. 562, 569 (Bankr D.N.H. 1989) ("The [d]ebtor's pervading obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries."). "The Court 'may not approve any credit transaction under subsection (c) [of Section 364] unless the debtor demonstrates that it has attempted, but failed, to obtain unsecured credit under section 364(a) or (b).'" In re Los Angeles Dodgers LLC, 457 B.R. at 312 (quoting In re Ames Dep't Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990)). The financing's terms must not "pervert the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit" of a secured creditor. Tenney Vill., 104 B.R. at 568.

9.      Financing approved under section 364 should not allow secured creditors to undo the level "playing field" contemplated by the Bankruptcy Code. For this reason, courts have emphasized that they must guard against proposals that threaten to tilt a case in favor of one group over another and prejudice a party's rights at an early stage:

> Acknowledging that Congress, in Chapter 11 delicately balanced the hope of debtors to reorganize and the expectations of creditors for payment, the courts have focused their attention on proposed terms that would tilt the conduct of the bankruptcy case; prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors; or leverage the Chapter 11 process by preventing motions by parties-in-interest from being decided on their merits.

In re Ames Dept. Stores, Inc., 115 B.R. 34, 37; see also In re Tenney Vill. Co., Inc., 104 B.R. 562, 568 (Bankr. D.N.H. 1989).

10. The DIP Order should not tilt the playing field in the DIP Lenders' favor in a manner that is fundamentally unfair to Comenity. Comenity, as an executory contract holder, is continuing performance and has financed a substantial portion of customer sales. However, due to the language cited above, the DIP Motion could be interpreted to attempt to prime Comenity's setoff and recoupment rights and prime Comenity's right to use the Debtor's Marks in connection with issuing account statements to cardholders associated with those sales. Therefore, Comenity objects to the DIP Motion to the extent that the motion or the DIP Order might prime Comenity's rights of setoff and recoupment or prime Comenity's right to use the Marks.

11. The Debtors' rights to payment under the Program Agreement must continue to be subject to Comenity's rights and defenses to make such payments, including, but not limited to, Comenity's right of setoff and recoupment. Comenity's right to use the Marks to collect the monies due from cardholders must also continue. Therefore, Comenity requests that the DIP Order provide that Comenity's rights and defenses to make payments under the Program Agreement, including any rights of setoff and/or recoupment, are not primed and are expressly preserved. Comenity also requests clarification that its rights to use the Debtor's Marks are not subject to the DIP Lender's security interest.

12. The Debtors received authority to continue the Card Program pursuant to the Customer Program Order. The continuation of the Card Program requires that Comenity continue to process the transactions, including the settlement of obligations between the parties arising from those transactions by netting out those amounts from payments made to the Debtors for cardholder purchases. The Program Agreement and applicable law permit Comenity to setoff and/or recoup mutual obligations and the continued use of the Debtor's Marks in connection with the administration of the cardholder accounts which arise from the aforementioned transactions.

13. It is inherently unfair to require Comenity to finance post-petition sales of the DIP Lenders' collateral and then effectively preclude Comenity from continuing to setoff or recoup the amounts owed to it in the ordinary course of business. Likewise, it is inherently unfair to prime Comenity's right to use the Marks to administer the cardholder accounts. Comenity's rights under the Program Agreement arose in 2003 and the Lender's Prepetition Liens under the Prepetition Credit Agreement arose in 2014. The DIP Lender cannot attach or otherwise impair Comenity's rights or Comenity's property and any effort to do so in the DIP Order would be improper.

14. Furthermore, efforts to prime Comenity's setoff rights are contrary to the Bankruptcy Code. Section 364(d) authorizes the obtaining of credit secured by a senior lien on property already subject to a lien. Section 553, on the other hand, preserves a creditor's common law right to setoff: "[e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt…" In other words, a creditor's right to setoff is only subject to modification by § 362 (the automatic stay) or § 363 (the use, sale, or lease of debtor's property). Moreover, a right of setoff is distinguishable from a lien. Section 364(d) allows for the priming of an existing lien. A right of setoff, however, is not

a lien. Folger Adam Sec. Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 258 (3rd Cir. 2000) (citing Marley v. United States, 381 F. 2d 738, 742 (Ct. Cl. 1967)).

15. Although setoff is not a lien, a setoff, in effect, elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim against the creditor. Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984)(citing 11 U.S.C. § 506(a)). Therefore, if a creditor's right to setoff cannot be affected by § 364, that creditor must receive adequate protection. Here, there is no adequate protection provided to Comenity.

16. Further, any effort to prime Comenity's recoupment rights are likewise contrary to law. In the bankruptcy context, the application of recoupment is not codified in the Bankruptcy Code, but it has been developed through case law. See Anes v. Dehart (In re Anes), 195 F.3d 177, 182 (3d Cir. 1999). Recoupment is an equitable doctrine, and the application of recoupment is not subject to the automatic stay. In re Univ. Med. Ctr., 973 F.2d 1065, 1081 (3d Cir. 1992). It is essentially a defense to the debtor's claim, and the Third Circuit has found that the limitations on setoff in bankruptcy would be inequitable if applied to recoupment. Lee, 739 F.2d at 875.

17. Said another way, the DIP Lenders cannot receive greater rights than the Debtor has against Comenity.

18. An attempt to cutoff Comenity's setoff and/or recoupment rights is contrary to law and equity. Accordingly, Comenity requests that the DIP Order clarify that Comenity's rights to setoff and/or recoupment under the Program Agreement will not be subject to any liens and will continue in the ordinary course of business.

19. Likewise, the DIP Order should not permit the DIP Lender to prime Comenity's right to use the Marks. Comenity has thousands of cardholder accounts and the use of the Marks is necessary for Comenity to administer and collect cardholder purchases.

20. The proposed final DIP Order has not been filed. Comenity reserves all rights, including the right to raise additional objections with respect to the DIP Order and any related matters and any revisions thereto. Comenity reserves the right, if necessary, to offer testimony from the following witnesses in support of this limited objection:

      a.     A representative of Comenity;

      b.     Any witness identified by the Debtors or any other responding party; and

      c.     Any witness necessary to rebut the evidence offered by the Debtor or any other responding party.

WHEREFORE, Comenity requests that (a) Comenity's rights of setoff and recoupment not be subject to the DIP Order and that Comenity's right to use the Debtor's Marks in connection with cardholder accounts not be subject to any DIP liens, and (b) that the Court grant Comenity such other and further relief to which it may be entitled at law or in equity or the Court deems just and proper.

Dated: April 3, 2019
       Wilmington, Delaware

Respectfully submitted,

*/s/ Scott J. Leonhardt*
Frederick B. Rosner (DE # 3995)
Scott J. Leonhardt (DE #4885)
THE ROSNER LAW GROUP LLC
824 Market Street, Suite 810
Wilmington, DE 19801
rosner@teamrosner.com
leonhardt@teamrosner.com

-and-

Robert B. Berner (0020055)
(admitted pro hac vice)

BAILEY CAVALIERI LLC
1250 Kettering Tower
Dayton, OH 45423
(937) 223-4701 / Fax: (937) 223-0170
RBerner@baileycav.com

   -and-

Matthew T. Schaeffer (0066750)
(admitted pro hac vice)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, OH 43215
(614) 229-3252 / Fax: (614) 221-0479
MSchaeffer@baileycav.com

Attorneys for Comenity Bank