## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Z GALLERIE, LLC, *et al.*,[1] | ) Case No. 19-10488 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos. 13, 74** |

## FINAL ORDER (I) APPROVING PROCEDURES FOR STORE CLOSING SALES, (II) AUTHORIZING CUSTOMARY BONUSES TO EMPLOYEES OF CLOSING STORES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Final Order"): (a) authorizing and approving the conduct of store closing or similar themed sales at certain closing stores set forth on **Exhibit 1** (collectively, the "Closing Stores") in accordance with the terms of the store closing procedures (the "Store Closing Procedures") attached hereto as **Exhibit 2**, with such sales to be free and clear of all liens, claims and encumbrances; (b) authorizing the Debtors to conduct the Store Closings; (c) authorizing customary bonuses to non-insider Closing Store employees who remain employed for the duration of the store closing process (the "Store Closing Bonuses"); and (d) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Z Gallerie, LLC (3816) and Z Gallerie Holding Company, LLC (5949). The location of the Debtors' service address is: 1855 West 139th Street, Gardena, CA 90249.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion; and upon Certification of Counsel; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND THAT:

1.      The Debtors have advanced sound business reasons for seeking to adopt the Store Closing Procedures as set forth in the Motion, and adoption is in the best interests of the Debtors and their estates.

2.      The conduct of the Sales in accordance with the Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Store Closure Assets.

3.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

4.      The Store Closings and Sales are in the best interest of the Debtors' estates.

5.      The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Debtors will be authorized to distribute emails and promotional materials to the Debtors' customers.

6.      The entry of this Final Order is in the best interest of the Debtors and their estates,

creditors, and interest holders and all other parties in interest herein; and now therefore

IT IS HEREBY ORDERED THAT:

7.      The Motion is granted on a final basis as provided herein.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Final Order in accordance with the Motion.

9.      To the extent of any conflict between this Final Order and the Store Closing

Procedures, the terms of this Final Order shall control.

10.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final

Order are immediately effective and enforceable upon its entry.

**I.      Authority to Engage in Sales and Conduct Store Closings.**

11.      The Store Closing Procedures attached hereto as **Exhibit 2** are approved in their

entirety on a final basis.

12.      The Debtors are authorized, pursuant to sections 105(a) and 363(b)(1) of the

Bankruptcy Code, to continue and conduct Sales at the Closing Stores in accordance with the Store

Closing Procedures and to discontinue operations at the Closing Stores in accordance with this

Final Order, the Store Closing Procedures, and any Side Letter, if applicable.

13.      All entities that are presently in possession of some or all of the merchandise or

FF&E in which the Debtors hold an interest are hereby directed to surrender possession of such

merchandise or FF&E to the Debtors.

14.      Neither the Debtors nor any of their officers, employees, or agents shall be required

to obtain the approval of any third party, including, without limitation, any Governmental Unit (as

defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Sales and to take the

related actions authorized herein.

## II.   Conduct of the Sales.

15.   All landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors to conduct the Sales and the sale of merchandise, FF&E, and additional goods, including, without limitation, to conduct and advertise the sale of the merchandise, FF&E, and additional goods in the manner contemplated by and in accordance with this Final Order, the Store Closing Procedures, and any Side Letter.

16.   Except as modified herein or pursuant to any Side Letter, the Debtors are hereby authorized to take such actions as may be necessary and appropriate to conduct the Store Closings without necessity of further order of this Court as provided in this Final Order, or the Store Closing Procedures, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, and street signage; *provided, however*, that only Debtor-approved terminology will be used at each Closing Store in connection with the Sales.

17.   Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the merchandise, FF&E, and additional goods, to the extent that disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

18.    The sale of the merchandise, FF&E, and additional goods shall be conducted by the Debtors notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings or the Sales (including the sale of the merchandise, FF&E, and additional goods), abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Sales or the Store Closings.  Breach of any such provisions in these chapter 11 cases in conjunction with the Store Closings or the Sales shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings and Sales are conducted in accordance with the terms of this Final Order and the Store Closing Procedures.

19.    The Debtors and landlords of the Closing Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Store Closing Procedures without further order of the Court and such Side Letters shall be binding as among the Debtors and any such landlords. In the event of any conflict between the Store Closing Procedures, this Final Order, and any Side Letter, the terms of such Side Letter shall control.

20.    Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 28 and 29 shall apply) no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of merchandise, FF&E, or additional goods, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in

5

any way with, obstructing, or otherwise impeding the conduct of the Sales and/or Store Closings and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

21.     During the Sales, the Debtors shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date; *provided,* that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered.

22.     All sales of merchandise, FF&E, and additional goods shall be "as is" and final. Returns related to the purchase of Store Closure Assets shall not be accepted at stores that are not participating in the Store Closings. However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

23.     The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales

taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

24.    Pursuant to section 363(f) of the Bankruptcy Code, the Debtors are authorized to sell Store Closure Assets—and all sales of Store Closure Assets, shall be—free and clear of any and all of any liens, claims, encumbrances, and other interests; as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided, however*, that any such of any liens, claims, encumbrances, and other interests shall attach to the proceeds of the sale of the Store Closure Assets with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Store Closure Assets, subject to any claims and defenses that the Debtors may possess with respect thereto.

25.    To the extent that the Debtors propose to sell or abandon FF&E that may contain personal and/or confidential information about the Debtors' employees and/or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

26.    The Debtors are authorized and empowered to transfer merchandise, FF&E, and additional goods among, and into, the Closing Stores.

27.    The Debtors are authorized, but not directed to make payments under the Store Closing Bonus Plan not to exceed $500,000.

### III.    Dispute Resolution Procedures with Governmental Units.

28.    Nothing in this Final Order, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order or the Store Closing Procedures shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Final Order, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the bankruptcy Code or this Final Order. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

29.     To the extent that the sale of merchandise, FF&E, and additional goods is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the sale of the merchandise, FF&E, and additional goods, the Dispute Resolution Procedures in this section shall apply:

a.      Provided that the Sales are conducted in accordance with the terms of the Final Order or the Final Order, as applicable, and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of the Final Order or the Final Order, as applicable, and the Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

b.      Within five business days after entry of the Final Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Final Order, the proposed Final Order, and the Store Closing Procedures on the following: (i) the landlords for the Closing Stores; (ii) the Attorney General's office for each state in which the Sales are being held; (iii) the county consumer protection agency or similar agency for each county in which the Sales are being held; (iv) the division of consumer protection for each state in which the Sales are being held; (v) the chief legal counsel for each local jurisdiction in which the Sales are being held (collectively, the "Dispute Notice Parties").

c.      To the extent that there is a dispute arising from or relating to the Sales, the Final Order, and as applicable the Store Closing Procedures, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Final Order or service of an Additional Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute Notice") explaining the nature of the dispute to:

(i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn:  Joshua A. Sussberg, P.C., (joshua.sussberg@kirkland.com), Emily K. S. Kehoe (emily.kehoe@kirkland.com) and 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Justin Bernbrock (justin.bernbrock@kirkland.com) and Joshua Altman (josh.altman@kirkland.com); (ii) Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801, Attn. Domenic E. Pacitti (dpacitti@klehr.com), and Michael W. Yurkewicz (myurkewicz@klehr.com); and (iii) any affected landlord. If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion")

d.    In the event that a Dispute Resolution Motion is filed, nothing in the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Final Order nor the conduct of the Debtors pursuant to the Final Order violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Sales pursuant to the Final Order, absent further order of the Court. Upon the entry of the Final Order, as applicable, the Court grants authority for the Debtors to conduct the Sales pursuant to the terms of the Final Order, and/or the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.    If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (d) and (e) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

30.     Subject to paragraphs 28 and 29 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Sales, and all newspapers and other advertising media in which the Sales are advertised shall consider this Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors be required, to post any bond, to conduct the Sales.

**IV.     Other Provisions.**

31.     Within three business days of this Final Order, the Debtors shall serve copies of this Final Order, and the Store Closing Procedures via e-mail, facsimile, or regular mail, on: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the Agent for the Debtors' prepetition secured credit facility; (d) counsel to the Agent for the Debtors' prepetition secured credit facility; (e) counsel to the DIP Financing Agent; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtors conduct business; (j) all parties who are known by the Debtors to assert liens against the Store Closure Assets; (k) all state attorneys general in which the Store Closure Assets are located; (l) municipalities in which the Store Closure Assets are located; (m) all of the Debtors' landlords at the locations of the Closing Stores; (n) all applicable state and consumer protection agencies; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

32.     The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination; *provided, however*, that the Debtors shall pay any accrued wages to terminated employees as expeditiously as possible.

11

33.     In accordance with and subject in all respects to paragraph 24 of the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Incurrence by the Debtors of Postpetition Senior Secured Indebtedness, (II) Authorizing Use of Cash Collateral by the Debtors, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Modifying the Automatic Stay , and (V) Scheduling a Final Hearing* (the "DIP Order"), as adequate protection for the claims of the Local Texas Tax Authorities, which are asserted on a secured basis, the Debtors will fund a segregated account (the "Local Taxing Authority Adequate Protection Account") as follows: for each Texas store location closed (each, a "Texas Closing Location"), the Debtors shall within ten (10) business days after the commencement of the Sales in such Texas Closing Location, deposit into the Local Taxing Authority Adequate Protection Account, as and when received, proceeds of the sale of any of the Debtors' assets located in such Texas Closing Location that are subject to a lien held by the Local Texas Tax Authorities up to the "Adequate Protection Amount" corresponding to such Texas Closing Location as set forth on **Exhibit 3** attached hereto (collectively, the "Texas Deposits"), provided that in no event shall the aggregate amount of such deposits exceed the maximum amount permitted by paragraph 24 of the DIP Order. Any liens of the Local Texas Tax Authorities shall attach to the Local Taxing Authority Adequate Protection Account to the same extent and with the same priority as such liens currently attach to the applicable property of the Debtors. The claims and liens asserted by the Local Texas Tax Authorities shall remain subject to any objections any party (including the Debtors) would otherwise be entitled to raise as to the priority, validity, amount, or extent of such claims and liens. Funds in the Local Taxing Authority Adequate Protection Account may be distributed only (a) upon agreement between the applicable Local Texas Tax Authorities and the Debtors or

(b) pursuant to a final order of the Court. The DIP Lender (as defined in the DIP Order) shall retain automatically perfected and continuing security interests in the priorities set forth in the DIP Order in any residual interest in the Local Taxing Authority Adequate Protection Account available following satisfaction in full of any allowed secured claim of any Local Texas Taxing Authority for whose benefit funds were deposited into the Local Taxing Authority Adequate Protection Account pursuant to this Final Order.

34.    On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee, the DIP Financing Agent, or counsel for the committee of unsecured creditors, the Debtors shall provide such requesting party, if any, with copies of periodic reports concerning the Sales that are prepared by the Debtors, or their professionals, provided, however, that the foregoing shall not require the Debtors, or their professionals, to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, or their professionals, in connection with the Sales.

35.    Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; (g) diminish the Debtors' obligation to comply with Bankruptcy Code 365(d)(3) or (h) a concession by the Debtors or any other party-in-

interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Final Order are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Final Order should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

36.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

37.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

38.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

39.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

40.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords for protection from interference with the Store Closings or Sales, (c) any other disputes related to the Store Closings or Sales, and (d) protect the Debtors against any assertions of any liens, claims, encumbrances, and other interests. No such parties or person shall take any action against the Debtors, the landlords, the Store Closings, or the

14

Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties

or persons with respect to any such disputes on an expedited basis, as may be appropriate under

the circumstances.

15

**Dated: April 9th, 2019**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**