*Solicitation Version*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| Z GALLERIE, LLC, *et al.*,[1] | ) Case No. 19-10488 (LSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION OF
## Z GALLERIE, LLC AND Z GALLERIE HOLDING COMPANY, LLC
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE[2]

**NOTHING CONTAINED HEREIN SHALL
CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR
LEGALLY BINDING OBLIGATION OF THE DEBTORS, ANY OF THE SECURED
CREDIT AGREEMENT LENDERS, OR ANY OTHER PARTY IN INTEREST. THE TERMS
OF THIS PLAN ARE SUBJECT TO MATERIAL REVIEW AND REVISION IN ALL RESPECTS.**

**YOU SHOULD NOT RELY ON
THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY
PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

**THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER
CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

-and-

Justin R. Bernbrock (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200

*Co-Counsel for the Debtors and Debtors in Possession*

Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:       (302) 426-1189
Facsimile:       (302) 426-9193

Dated:  May 1, 2019

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Z Gallerie Holding Company, LLC (5949) and Z Gallerie, LLC (3816).  The location of the Debtors' service address is:  1855 West 139th Street, Gardena, CA 90249.

[2] The Debtors have filed this Plan with certain key provisions omitted.  The Debtors continue to negotiate the terms of the Plan with their stakeholders including the DIP Lender, the Secured Credit Agreement Lenders, and the Committee.  The Plan remains subject to material modification in all respects.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND
GOVERNING LAW ................................................................................................................... 1

    A.    Defined Terms .............................................................................................................. 1
    B.    Rules of Interpretation ............................................................................................... 11
    C.    Computation of Time ................................................................................................. 11
    D.    Governing Law ........................................................................................................... 11
    E.    Reference to Monetary Figures .................................................................................. 12
    F.    Reference to the Debtors or the Reorganized Debtors ............................................... 12
    G.    Non-consolidated Plan ............................................................................................... 12

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS AND PRIORITY TAX CLAIMS ............................ 12

    A.    Administrative Claims ............................................................................................... 12
    B.    Professional Fee Claims ............................................................................................. 13
    C.    DIP Claims ................................................................................................................. 14
    D.    Priority Tax Claims .................................................................................................... 14

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................... 14

    A.    Classification of Claims and Interests ....................................................................... 14
    B.    Treatment of Claims and Interests ............................................................................. 15
    C.    Special Provision Governing Unimpaired Claims ...................................................... 20
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................. 20
    E.    Subordinated Claims .................................................................................................. 20
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ............................. 20
    G.    Intercompany Interests. .............................................................................................. 20
    H.    Controversy Concerning Impairment ......................................................................... 21

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................................ 21

    A.    General Settlement of Claims and Interests ............................................................... 21
    B.    Restructuring Transactions ......................................................................................... 21
    C.    Reorganized Debtors .................................................................................................. 21
    D.    Sources of Consideration for Plan Distributions. ....................................................... 22
    E.    Sale Transaction ........................................................................................................ 23
    F.    Corporate Existence ................................................................................................... 23
    G.    Vesting of Assets in the Reorganized Debtors ........................................................... 23
    H.    Cancellation of Securities and Agreements ................................................................ 23
    I.    Corporate Action ....................................................................................................... 24
    J.    New Organizational Documents ................................................................................. 24
    K.    Directors, Managers, and Officers of the Reorganized Debtors ................................ 24
    L.    Effectuating Documents; Further Transactions .......................................................... 24
    M.    Section 1146 Exemption ............................................................................................ 24
    N.    Director and Officer Liability Insurance; Other Insurance ........................................ 25
    O.    Employee and Retiree Benefits. ................................................................................. 25
    P.    Preservation of Causes of Action ............................................................................... 25
    Q.    Section 1145 Exemption ............................................................................................ 26

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 26

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .................... 26
    B.    Indemnification Obligations. ...................................................................................... 27
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases .................. 27
    D.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ................... 27
    E.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases............ 28

F.    Insurance Policies. ..............................................................................................28
G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ..........29
H.    Reservation of Rights ...........................................................................................29
I.    Nonoccurrence of Effective Date ...........................................................................29
J.    Contracts and Leases Entered Into After the Petition Date. .........................................29

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .................................................29

A.    Timing and Calculation of Amounts to Be Distributed.................................................29
B.    Disbursing Agent .................................................................................................30
C.    Rights and Powers of Disbursing Agent ...................................................................30
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions........................30
E.    Compliance with Tax Requirements .........................................................................31
F.    Allocations .........................................................................................................31
G.    No Postpetition Interest on Claims...........................................................................31
H.    Foreign Currency Exchange Rate. ............................................................................31
I.    Setoffs and Recoupment .......................................................................................31
J.    Claims Paid or Payable by Third Parties....................................................................32

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS .......................................................................................................32

A.    Allowance of Claims.............................................................................................32
B.    Claims Administration Responsibilities.....................................................................32
C.    Estimation of Claims.............................................................................................33
D.    Adjustment to Claims Without Objection ..................................................................33
E.    Time to File Objections to Claims ...........................................................................33
F.    Disallowance of Claims .........................................................................................33
G.    Amendments to Claims ..........................................................................................34
H.    No Distributions Pending Allowance ........................................................................34
I.    Distributions After Allowance .................................................................................34

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ...............34

A.    Discharge of Claims and Termination of Interests.......................................................34
**B.    Release of Liens** ...................................................................................................34
**C.    Releases by the Debtors** ........................................................................................35
**D.    Releases by Holders of Claims and Interests.** ............................................................35
**E.    Exculpation** ........................................................................................................36
**F.    Injunction**..........................................................................................................37
G.    Protections Against Discriminatory Treatment. ...........................................................37
H.    Document Retention. .............................................................................................37
I.    Reimbursement or Contribution. ..............................................................................37
J.    Term of Injunctions or Stays...................................................................................38

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN............................................................................................................................38

A.    Conditions Precedent to the Confirmation of the Plan..................................................38
B.    Conditions Precedent to the Effective Date ................................................................38
C.    Waiver of Conditions ............................................................................................39
D.    Effect of Failure of Conditions ...............................................................................39

ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN .......................39

A.    Modification and Amendments.................................................................................39
B.    Effect of Confirmation on Modifications....................................................................40
C.    Revocation or Withdrawal of Plan ...........................................................................40

ARTICLE XI. RETENTION OF JURISDICTION ..................................................................................40

ARTICLE XII. MISCELLANEOUS PROVISIONS ..............................................................................42

    A.      Immediate Binding Effect .........................................................................................42
    B.      Additional Documents ...............................................................................................42
    C.      Payment of Statutory Fees. ........................................................................................42
    D.      Statutory Committee and Cessation of Fee and Expense Payment ...........................42
    E.      Reservation of Rights.................................................................................................42
    F.      Successors and Assigns..............................................................................................43
    G.      Notices ......................................................................................................................43
    H.      Entire Agreement ......................................................................................................44
    I.      Exhibits .....................................................................................................................44
    J.      Non-Severability of Plan Provisions .........................................................................44
    K.      Votes Solicited in Good Faith ...................................................................................44
    L.      Closing of Chapter 11 Cases .....................................................................................45
    M.      Conflicts....................................................................................................................45

## INTRODUCTION

Z Gallerie, LLC and Z Gallerie Holding Company, LLC, as debtors and debtors in possession, in the above-captioned Chapter 11 Cases propose this joint plan of reorganization pursuant to chapter 11 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    "***Administrative Claim Bar Date***" means the deadline for filing requests for payment of Administrative Claims, which shall be 30 days after notice of the Effective Date.

2.    "***Administrative Claim Objection Bar Date***" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the later of (1) 60 days after the Effective Date and (2) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

3.    "***Administrative Claim***" means a Claim for the costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

4.    "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.    "***Allowed***" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors

and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt: (x) a Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

6.      "***Auction***" means the auction, if any, for some or all of the Debtors' assets, conducted in accordance with the Bidding Procedures.

7.      "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

8.      "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

9.      "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

10.      "***Bar Date***" means May 17, 2019, at 11:59 p.m., prevailing Eastern Time, which is the date by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim, as established by the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner For Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 193].

11.      "***Bidding Procedures***" means the procedures governing the Auction and sale of all or substantially all of the Debtors' assets, as approved by the Bankruptcy Court and as may be amended from time to time in accordance with their terms.

12.      "***Business Day***" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

13.      "***Cash***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

14.      "***Causes of Action***" means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

15.    "**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

16.    "**Claim**" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

17.    "**Claims Register**" means the official register of Claims maintained by the Notice and Claims Agent.

18.    "**Class**" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

19.    "**Committee**" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on March 20, 2019, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 87].

20.    "**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

21.    "**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

22.    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

23.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24.    "**Confirmation Schedule**" means the dates and deadlines established in the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief.*

25.    "**Consummation**" means the occurrence of the Effective Date.

26.    "**Critical Trade Claim**" means any Claim held by an Entity that the Debtors determine (if any), in their business judgement and in consultation with the Winning Bidder and the Committee, is critical to the Debtors' contemplated post Effective-Date business plan, as described in Article IV.D of the Plan.

27.    "**Critical Trade Claims Recovery Pool**" means the amount of Cash, if any, to be negotiated by the Debtors, the Winning Bidder, and the Committee after the Auction but prior to the Confirmation Hearing allocated to payment of the Critical Trade Claims.

28.    "**Critical Vendors Order**" means the *Final Order (I) Authorizing (A) Debtors to Pay Certain Prepetition Claims of Trade Claimants and (B) Procedures Related Thereto, (II) Granting Administrative Priority for Outstanding Orders, and (III) Granting Related Relief* [Docket No. 171] entered by the Bankruptcy Court on April 9, 2019.

29.    "**Debtor**" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

30.    "**Debtors**" means, collectively: (a) Z Gallerie, LLC; and (b) Z Gallerie Holding Company, LLC.

31.    "**DIP Agent**" means KeyBank, in its capacity as administrative agent under the DIP Credit Agreement, with its respective successors and assigns in such capacities.

3

32.     "*DIP Claims*" means all Claims arising under, derived from, or based on the DIP Credit Agreement or otherwise secured pursuant to the DIP Credit Agreement Documents.

33.     "*DIP Credit Agreement Documents*" means the DIP Credit Agreement and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements

34.     "*DIP Credit Agreement*" means that certain senior secured debtor-in-possession credit agreement, dated as of March 11, 2019, as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms, by and among the Debtors, the DIP Lender, and the DIP Agent.

35.     "*DIP Lender*" means KeyBank.

36.     "*DIP Order*" means the *Final Order Pursuant to 11 U.S.C. §§ 1105, 361, 362, 363, and 364 and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Incurrence by the Debtors of Postpetition Senior Secured Indebtedness, (II) Authorizing Use of Cash Collateral by the Debtors, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* [Docket No. 190], as may be amended or modified pursuant to a Bankruptcy Court order.

37.     "*Disbursing Agent*" means the Debtors or the Reorganized Debtors (as applicable), or the Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions contemplated under the Plan.

38.     "*Disclosure Statement*" means the *Disclosure Statement to the First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of May 1, 2019, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

39.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

40.     "*Distribution Record Date*" means the the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the first day of the Confirmation Hearing, or such other date as is designated in a Final Order of the Bankruptcy Court.

41.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.C of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) the Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

42.     "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

43.     "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

44.     "*Excess Distributable Cash*" means, only in the event that the Winning Bidder is an Entity other than the Secured Credit Agreement Lenders, any Cash proceeds of a Sale Transaction in excess of amounts necessary to (a) satisfy all Claims senior in priority to General Unsecured Claims, including the DIP Claims, the Secured Revolving Loan Claims, and the Secured Term Loan Claims, in full, in Cash, as provided herein and (b) fund the Critical Trade Claims Recovery Pool.

45.     "*Exchange Term Sheet*" means a term sheet describing the amount of Reorganized Debtors Interests to be received by Holders of Claims in Class 4 and Class 5, if necessary in the event that the Debtors toggle from a sale process to a debt-for-equity exchange going-concern reorganization, to be filed prior to the Plan Supplement Filing Date.

46.     "*Exculpated Party*" means collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) any official committee appointed in the Chapter 11 Cases; and each of their respective members; (c) the Secured Credit Agreement Lenders; (d) the Secured Credit Agreement Agent; (e) the DIP Lender; (f) the DIP Agent; (g) the Secured Term Loan Participants; and (h) with respect to each of the foregoing entities in clauses (a) though (g), such Entity and its current and former Affiliates, and such Entities' and their current Affiliates' directors, managers, officers, equity Holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity Holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

47.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

48.     "*Exit Credit Agreement Agent*" means the administrative agent under the Exit Credit Agreement, its successors, assigns, or any replacement agent.

49.     "*Exit Credit Agreement*" means that certain loan agreement memorializing the Exit Credit Agreement Facility, which shall be entered into among one or more of the Debtors or the Reorganized Debtors (as applicable) the Exit Credit Agreement Agent, and the Exit Credit Agreement Lenders, which shall be in form and substance acceptable to the Debtors or Reorganized Debtors.

50.     "*Exit Credit Agreement Documents*" means the Exit Credit Agreement and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements.

51.     "*Exit Credit Agreement Lenders*" means the banks, financial institutions, and other lenders party to the Exit Credit Agreement from time to time, including, for the avoidance of doubt, the Participating Secured Revolving Loan Lenders and the Participating Secured Term Loan Lenders.

52.     "*Exit Credit Agreement Facility*" means the Exit Secured Term Loan Facility and Exit Secured Revolving Loan Facility to be arranged and provided by the Exit Credit Agreement Lenders on or before the Effective Date (if required), on terms acceptable to the Debtors or the Reorganized Debtors.

53.     "*Exit Secured Revolving Loan Facility*" means that new capital financing issued to the Reorganized Debtors on the Effective Date.

54.     "*Exit Secured Term Loan Facility*" means that new capital financing issued to the Reorganized Debtors on the Effective Date which may be in the form of a secured term loan, an exit credit facility, or an equity capital investment, to be made by the Participating Secured Term Loan Lenders, in accordance with IV.D of the Plan.

55.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

56.     "*File*" or "*Filed*" means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

57.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or

rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

58.    "*General Unsecured Claim*" means any Claim other than an Administrative Claim, a Professional Fee Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Term Loan Claim, a Secured Revolving Loan Claim, a DIP Claim, or a Critical Trade Claim.

59.    **"*Governmental Bar Date*"** means September 9, 2019, at 11:59 p.m., prevailing Eastern Time, which is the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 193].

60.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

61.    "*Holder*" means an Entity holding a Claim or an Interest in any Debtor.

62.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

63.    "*Initial Minimum Overbid*" has the meaning given to such term in the Bidding Procedures.

64.    "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor arising before the Petition Date.

65.    "*Intercompany Interest*" means an Interest in one Debtor held by another Debtor or non-Debtor subsidiary or Affiliate.

66.    "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

67.    "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 186], entered by the Bankruptcy Court on April 9, 2019, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

68.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

69.    "*KeyBank*" means KeyBank, National Association.

70.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

71.      "***Management Incentive Plan***" means that certain management incentive plan that may be adopted by the New Board after the Effective date on terms to be determined by and at the discretion of the New Board (including with respect to allocation, timing and structure of such issuance and the Management Incentive Plan).

72.      "***New Board***" means the initial board of directors, members, or managers, as applicable, of the Reorganized Debtors, to be appointed by the Winning Bidder, in consultation with the Reorganized Debtors' management.

73.      "***New Organizational Documents***" means the documents providing for corporate governance of the Reorganized Debtors, including charters, bylaws, operating agreements, or other organizational documents or shareholders' agreements, as applicable, which shall be included in the Plan Supplement and which shall be in form and substance acceptable to the Debtors and the Winning Bidder in their discretion.

74.      "***Notice and Claims Agent***" means Bankruptcy Management Solutions, Inc. d/b/a Stretto in its capacity as notice and claims agent for the Debtors and any successor.

75.      "***Other Priority Claim***" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

76.      "***Other Secured Claim***" means any Secured Claim that is not a DIP Claim, a Secured Revolving Loan Claim, a Secured Term Loan Claim, or a Secured Tax Claim.

77.      "***Participating Secured Term Loan Lenders***" means the Secured Term Loan Lenders that elect to participate in the funding of the Exit Secured Term Loan Facility.

78.      "***Participating Secured Revolving Loan Lenders***" means the Secured Revolving Loan Lenders that elect to participate in the funding of the Exit Secured Revolving Loan Facility.

79.      "***Person***" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

80.      "***Petition Date***" means March 11, 2019, the date on which each of the Debtors commenced the Chapter 11 Cases.

81.      "***Plan Supplement***" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors no later than the Plan Supplement Filing Date, including the following, as applicable: (a) New Organizational Documents; (b) Exit Credit Agreement Documents; (c) Schedule of Assumed Executory Contracts and Unexpired Leases; (d) Schedule of Retained Causes of Action; (e) any Management Incentive Plan; and (f) any necessary documentation related to the Sale Transaction.

82.      "***Plan Supplement Filing Date***" means, the date that is (a) the earlier of (i) seven days before the earlier of the Voting Deadline or the deadline to object to Confirmation of the Plan and (ii) fourteen days prior to Confirmation Hearing or (b) such later date as may be approved by the Bankruptcy Court.

83.      "***Plan***" means this *First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, as may be altered, amended, modified, or supplemented from time to time in accordance with Article X hereof, including the Plan Supplement (as modified, amended or supplemented from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

84.      "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

85. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

86. "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

87. "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

88. "*Professional Fee Escrow Amount*" means the total amount of Professional fees and expenses estimated pursuant to Article II.B.3 of the Plan.

89. "*Professional*" means an Entity retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code.

90. "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

91. "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtor in the Chapter 11 cases.

92. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

93. "*Released Party*" means collectively, and in each case in its capacity as such:  (a) the Secured Credit Agreement Lenders; (b) the Secured Credit Agreement Agent; (c) the DIP Lender; (d) the DIP Agent; (e) the Exit Credit Agreement Lenders; (f) the Exit Credit Agreement Agent; (g) the Secured Term Loan Participants; (h) the Winning Bidder; (i) Holders of General Unsecured Claims; (j) Holders of Critical Trade Claims; and (k) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing entities in clauses (a) through (j), such Entity and its current and former Affiliates, and such Entities' and their current Affiliates' directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, participants, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; *provided* that any Holder of a Claim or Interest that opts out of the releases shall not be a "Released Party."

94. "*Releasing Parties*" means, collectively, (a) the Secured Credit Agreement Lenders; (b) the Secured Credit Agreement Agent; (c) the DIP Agent; (d) the DIP Lender; (e) the Exit Credit Agreement Lenders; (f) the Exit Credit Agreement Agent; (g) the Secured Term Loan Participants; (h) the Winning Bidder; (i) all holders of Claims or Interests that vote to accept or are deemed to accept the Plan; (j) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; and (l) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing entities in clauses (a) through (k), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, affiliates, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such collectively.

95.      "***Reorganized Debtors***" means the Debtors, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

96.      "***Reorganized Debtors Interests***" means the equity interests in the Reorganized Debtors.

97.      "***Restructuring Transactions***" means the transactions described in 0 of the Plan.

98.      "***Sale Transaction Proceeds***" means, in the event that the Winning Bidder is an Entity other than the Secured Credit Agreement Lenders, any Cash proceeds of a Sale Transaction.

99.      "***Sale Transaction***" means and sale of all or substantially all of the Debtor's assets to the Winning Bidder consummated in accordance with the Bidding Procedures and the Plan.

100.      "***Schedule of Assumed Executory Contracts and Unexpired Leases***" means the schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors with the consent of the Winning Bidder.

101.      "***Schedule of Retained Causes of Action***" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors with the consent (such consent not to be unreasonably withheld) of the Winning Bidder.

102.      "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified, or supplemented from time to time.

103.      "***Secured***" means when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

104.      "***Secured Credit Agreement***" means that certain Credit Agreement dated as of October 8, 2014, by and among Z Gallerie, LLC as borrower, Z Gallerie Holding, LLC as guarantor, the lenders party thereto, the Secured Credit Agreement Agent, and Secured Credit Agreement Arranger as modified and amended on September 29, 2017, June 18, 2018, October 15, 2018, and as may be further amended, modified, restated, or supplemented from time to time.

105.      "***Secured Credit Agreement Agent***" means KeyBank National Association, in its capacity as administrative agent under the Secured Credit Agreement.

106.      "***Secured Credit Agreement Arranger***" means KKR Credit Advisors (US) LLC, in its capacity as joint lead arranger under the Secured Credit Agreement.

107.      "***Secured Credit Agreement Distributable Cash***" means, only in the event that the Winning Bidder is an Entity other than the Secured Credit Agreement Lenders, any Cash proceeds of a Sale Transaction in excess of amounts necessary to satisfy all Claims senior in priority to Secured Revolving Loan Claims, including the DIP Claims, in full, in Cash, as provided herein, plus Cash proceeds from the sale of the Debtors' other assets.

108.      "***Secured Credit Agreement Documents***" means the Secured Credit Agreement and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements.

109.    *"Secured Credit Agreement Lenders"* means, collectively, the Secured Revolving Loan Lenders and the Secured Revolving Term Loan Lenders.

110.    *"Secured Revolving Loan"* means the senior secured revolving loan and letter of credit obligations contemplated by (and as defined in) the Secured Credit Agreement.

111.    "*Secured Revolving Loan Claims*" means all Claims arising under, derived from, or based on the Secured Revolving Loan.

112.    *"Secured Revolving Loan Lenders"* means the lenders from time to time to the Secured Revolving Loan.

113.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including authority related Secured Claim for penalties.

114.    *"Secured Term Loan"* means the total Term Loan Commitments made pursuant to (and as defined in) the Secured Credit Agreement.

115.    *"Secured Term Loan Claims"* means all Claims arising under, derived from, or based on the Secured Term Loan.

116.    *"Secured Term Loan Lenders"* means the lenders from time to time to the Secured Term Loan.

117.    "*Secured Term Loan Participants*" means any Person holding a participation in any loan or other obligation, arising under the Secured Term Loan.

118.    "*Senior Unsecured Refinancing Note*" means one of a series of senior unsecured refinancing notes issued on November 20, 2018 by Z Gallerie, LLC to Brentwood Associates Private Equity V, L.P. Brentwood ZG, LLC, BAPE Executive Fund, L.P., and Brentwood Associates Private Equity V-A, L.P. , respectively, and contributed from Brentwood Associates Private Equity V-A, L.P. to BA V-A Blocker ZHG on December 3, 2018.

119.    *"Senior Unsecured Note"* means one of a series of senior unsecured notes issued on November 20, 2018 by Z Gallerie, LLC to Brentwood Associates Private Equity V, L.P. Brentwood ZG, LLC, BAPE Executive Fund, L.P., and Brentwood Associates Private Equity V-A, L.P., respectively, and contributed from Brentwood Associates Private Equity V-A, L.P. to BA V-A Blocker ZHG on December 3, 2018.

120.    *Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; provided that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

121.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

122.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

123.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

124.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

125.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

126.    "*Voting Deadline*" means 4:00 p.m. (prevailing Eastern Time) on June 4, 2019.

127.    "***Winning Bidder***" means the Entity whose bid for some or all of the Debtors' assets, which for the avoidance of doubt may include the transaction contemplated under the Plan, is selected by the Debtors and approved by the Bankruptcy Court as the highest or otherwise best bid pursuant to the Bidding Procedures.  For the avoidance of doubt, if there is no third-party purchaser of the assets, the Secured Credit Agreement Lenders shall be deemed to be the Winning Bidder.

B.    *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; and (13) any effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail (16) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as

applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formulation of the applicable Debtor or the Reorganized Debtors, as applicable.

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.    *Non-consolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of the Judicial Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than 30 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except for Professional Fee Claims and DIP Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Objections to such requests must be Filed and served on the Reorganized Debtors and the requesting party by the Administrative Claim Objection Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

B.    *Professional Fee Claims*

1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 60 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy rules, and prior Bankruptcy Court orders.  The Reorganized Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.    Professional Fee Escrow Account

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Reorganized Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

3.    Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, *provided* that the Reorganized Debtors shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.    Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Reorganized Debtors. The Debtors and Reorganized Debtors (as applicable) shall pay, within ten business days after submission of a detailed invoice to the Debtors or Reorganized Debtors (as applicable) such reasonable claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and Reorganized Debtors (as applicable). If the Debtors or Reorganized Debtors (as applicable) dispute the reasonableness of any such invoice, the Debtors or Reorganized Debtors (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *DIP Claims*

As of the Effective Date, the DIP Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Credit Agreement, including principal, interest, fees, and expenses. Except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each such Holder of an Allowed DIP Claim shall receive on the Effective Date payment in full in Cash of such Holder's Allowed DIP Claim or such other treatment as agreed by such Holder in such Holder's sole discretion. Upon the indefeasible payment or satisfaction in full in Cash of the Allowed DIP Claims in accordance with the terms of this Plan, or other such treatment as contemplated by this Article II.C of the Plan, on the Effective Date all Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

D.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein.

Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.F hereof.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors, except that: Class 11 (Interests in Z Gallerie Holding Company, LLC) shall be vacant for Z Gallerie, LLC.[3]  Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Secured Revolving Loan Claims | Impaired | Entitled to Vote |
| 5 | Secured Term Loan Claims | Impaired | Entitled to Vote |
| 6 | Critical Trade Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 9 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Interests in Z Gallerie Holding Company, LLC | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.    *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.    <u>Class 1 - Secured Tax Claims</u>

(a)    *Classification:*  Class 1 consists of all Secured Tax Claims.

(b)    *Treatment:*  Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Secured Tax Claim,

---

[3]    The Debtors reserve the right to separately classify Claims to the extent necessary to comply with any requirements under the Bankruptcy Code or applicable law.

each Holder of an Allowed Secured Tax Claim shall receive, at the option of the applicable Reorganized Debtor:

(i)        payment in full in Cash of such Holder's Allowed Secured Tax Claim; or

(ii)       equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the applicable Reorganized Debtor to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

(c)      *Voting:*  Class 1 is Unimpaired under the Plan.  Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.      <u>Class 2 - Other Secured Claims</u>

(a)      *Classification:*  Class 2 consists of all Other Secured Claims.

(b)      *Treatment:*  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Reorganized Debtor:

(i)        payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)       the collateral securing such Holder's Allowed Other Secured Claim;

(iii)      Reinstatement of such Holder's Allowed Other Secured Claim; or

(iv)      such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)      *Voting:*  Class 2 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.      <u>Class 3 - Other Priority Claims</u>

(a)      *Classification*:  Class 3 consists of all Other Priority Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash on account of such Holder's Allowed Other Priority Claim or such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)      *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.    Class 4 – Secured Revolving Loan Claims

(a)    *Classification*:  Class 4 consists of all Secured Revolving Loan Claims

(b)    *Allowance:* On the Effective Date, the Secured Revolving Loan Claims shall be deemed Allowed in the aggregate amount of letter of credit obligations equal to $750,000 plus accrued and unpaid interest as of the Petition Date.

(c)    *Treatment*:  To the extent any Allowed Secured Revolving Loan Claims are outstanding on the Effective Date, except to the extent that a Holder of an Allowed Secured Revolving Loan Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Secured Revolving Loan Claim, each Holder of an outstanding Allowed Secured Revolving Loan Claim shall receive either:

(i)    if an Entity other than the Secured Credit Agreement Lenders is the Winning Bidder, its Pro Rata share of payment from the Secured Credit Agreement Distributable Cash up to the full amount of the Allowed Secured Revolving Loan Claim or such other treatment rendering such Holder's Allowed Secured Revolving Loan Claim Unimpaired; or

(ii)    if the Secured Credit Agreement Lenders are the Winning Bidder, its Pro Rata share of the Reorganized Debtors Interests, as set forth in the Exchange Term Sheet, if applicable.

(d)    *Voting*:  Class 4 is Impaired under the Plan.  Holders of Secured Revolving Loan Claims are entitled to vote to accept or reject the Plan.

5.    Class 5 – Secured Term Loan Claims

(a)    *Classification*:  Class 5 consists of the Secured Term Loan Claims.

(b)    *Allowance*: On the Effective Date, the Secured Term Loan Claims shall be deemed Allowed in the aggregate amount of $91,798,979.00 in principle, plus accrued and unpaid interest as of the Petition Date.

(c)    *Treatment:*  To the extent any Allowed Secured Term Loan Claims are outstanding on the Effective Date, except to the extent that a Holder of an Allowed Secured Revolving Loan Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Secured Term Loan Claim, each Holder of an outstanding Allowed Secured Term Loan Claim shall receive either:

(i)    if an Entity other than the Secured Credit Agreement Lenders is the Winning Bidder, after payment in full to Holders of Allowed Secured Revolving Loan Claims in Class 4, its Pro Rata share of payment from the Secured Credit Agreement Distributable Cash up to the full amount of the Allowed Secured Term Loan Claim or such other treatment rendering such Holder's Allowed Secured Term Loan Claim Unimpaired; or

(ii)    if the Secured Credit Agreement Lenders are the Winning Bidder, its Pro Rata share of the Reorganized Debtors Interests, as set forth in the Exchange Term

Sheet, if applicable.

    (d)    *Voting:* Class 5 is Impaired under the Plan. Holders of Secured Term Loan Claims are entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – Critical Trade Claims</u>

    (a)    *Classification:* Class 6 consists of all Critical Trade Claims.

    (b)    *Treatment:* Except to the extent that a Holder of an Allowed Critical Trade Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Critical Trade Claim, each Holder of an Allowed Critical Trade Claim shall receive, after payment in full to Holders of Allowed Secured Revolving Loan Claims in Class 4 and Holders of Allowed Secured Term Loan Claims in Class 5, its Pro Rata share (not to exceed the amount of such Holder's Allowed Critical Trade Claim) of the Critical Trade Claims Recovery Pool.

    (c)    *Voting:* Class 6 is Impaired under the Plan. Holders of Critical Trade Claims are entitled to vote to accept or reject the Plan.

7.    <u>Class 7 – General Unsecured Claims</u>

    (a)    *Classification:* Class 7 consists of all General Unsecured Claims.

    (b)    *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive:

        (i)    after payment in full to Holders of Allowed Secured Revolving Loan Claims in Class 4 and Holders of Allowed Secured Term Loan Claims in Class 5, its Pro Rata share (not to exceed the amount of such Holder's Allowed General Unsecured Claim) of the Excess Distributable Cash; and

        (ii)    a complete waiver and release of any and all claims, Causes of Action, and other rights against the Holders of Allowed Class 7 Claims based on claims pursuant to chapter 5 of the Bankruptcy Code or under similar or related state or federal statutes and common law including fraudulent transfer laws from the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, subject to and in accordance with Article VIII of the Plan.

    (c)    *Voting:* Class 7 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

8.    <u>Class 8 - Intercompany Claims</u>

    (a)    *Classification*: Class 8 consists of all Intercompany Claims.

    (b)    *Treatment*: Holders of Intercompany Claims shall not receive any distribution on account of such Intercompany Claims. On or after the Effective Date, the Reorganized Debtors may reconcile such Intercompany Claims as may be advisable in order to avoid the

incurrence of any past, present, or future tax or similar liabilities by such Reorganized Debtors.

(c)    *Voting*:  Class 8 is Impaired under the Plan. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.    Class 9 - Intercompany Interests

(a)    *Classification:*  Class 9 consists of all Intercompany Interests.

(b)    *Treatment*:  Intercompany Interests shall be, at the option of the Debtors either:

(i)    Reinstated in accordance with Article III.G of the Plan; or

(ii)    Discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

(c)    *Voting*:  Class 9 is Impaired under the Plan.  Holders of Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

10.    Class 10 - Section 510(b) Claims

(a)    *Classification:*  Class 10 consists of all Section 510(b) Claims.

(b)    *Allowance:*  Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court. The Debtors are not aware of any valid Section 510(b) Claim and believe that no such Section 510(b) Claim exists.

(c)    *Treatment*: Allowed Section 510(b) Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(d)    *Voting:*  Class 10 is Impaired under the Plan.  Holders (if any) of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders (if any) are not entitled to vote to accept or reject the Plan.

11.   Class 11 – Interests in Z Gallerie Holding Company, LLC

(a)    *Classification:*  Class 11 consists of all Interests in Z Gallerie Holding Company, LLC.

(b)    *Treatment*:  Interests in Z Gallerie Holding Company, LLC shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in Z Gallerie Holding Company, LLC will not receive any distribution on account of such Interests.

(c)    *Voting:*  Class 11 is Impaired under the Plan.  Holders of Interests in Z Gallerie Holding Company, LLC are conclusively deemed to have rejected the Plan under section 1126(g)

of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.    *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Reorganized Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.    *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

G.    *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Holders of the Reorganized Debtors Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to provide management services to certain other Debtors and Reorganized Debtors, to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Reorganized Debtors to the Holders of certain Allowed Claims.

*H.*    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### ARTICLE IV.
### MEANS FOR IMPLEMENTATION OF THE PLAN

*A.*    *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

*B.*    *Restructuring Transactions*

On the Effective Date, the applicable Debtors or the Reorganized Debtors shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Debtors on the terms set forth in the Plan, including, as applicable, the Exit Credit Agreement Facility, consummation of the Sale Transaction, the issuance of all securities, notes, instruments, certificates, and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions"). The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan.

*C.*    *Reorganized Debtors*

On the Effective Date, the New Board shall be established, and the Reorganized Debtors shall adopt its New Organizational Documents. The Reorganized Debtors shall be authorized to implement the Restructuring Transactions and adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary or desirable to consummate the Plan, which actions, regardless of whether taken before, on, or after the Effective Date, shall be deemed to constitute a Restructuring Transaction.

*D.*      *Sources of Consideration for Plan Distributions.*

The Reorganized Debtors will fund distributions under the Plan with Cash held on the Effective Date by or for the benefit of the Debtors or Reorganized Debtors, including Cash from operations, as well as the following sources of consideration.

1.    Exit Credit Agreement Facility

On the Effective Date, the Reorganized Debtors shall execute and deliver the Exit Credit Agreement Documents to any applicable administrative agent for the Exit Credit Agreement Facility. The Reorganized Debtors shall use the Cash proceeds provided under the Exit Credit Agreement Facility to fund ongoing operations and distributions under the Plan, and satisfy certain other Cash obligations under the Plan.

The Exit Credit Agreement Facility shall consist of the Exit Secured Term Loan Facility and the Exit Secured Revolving Loan Facility. On the Effective Date, the Participating Secured Term Loan Lenders shall fund the Exit Secured Term Loan Facility, and the Participating Secured Revolving Loan Lenders shall fund the Exit Secured Revolving Loan Facility.

The terms for the Exit Credit Agreement Facility will be determined in accordance with the Reorganized Debtors' contemplated post-Effective Date business plan following and depending on the results of the Auction (with may contemplate the continued ownership or operation of all or only some of the Debtors' assets), and otherwise in form and substance acceptable to the Participating Secured Term Loan Lenders and the Participating Secured Revolving Loan Lenders in their discretion, and any documentation necessary to implement the Exit Credit Agreement Facility will be included in the Plan Supplement. Any Reorganized Debtors Interests issued to Participating Secured Term Loan Lenders or Participating Revolving Loan Lender on account of the Exit Credit Agreement Facility shall dilute any Reorganized Debtors Interest issued pursuant to Article III of the Plan equally. The Reorganized Debtors shall use proceeds of the Exit Credit Agreement Facility first to satisfy the DIP Claims and then, as applicable, to fund ongoing operations and distributions under the Plan, including Critical Trade Claims, Secured Term Loan Claims, and Secured Revolving Loan Claims and satisfy certain other Cash obligations under the Plan. For the avoidance of doubt, any distribution to Participating Secured Term Loan Lenders or Participating Secured Revolving Loan Lenders on account of the Exit Credit Agreement Facility shall be in addition to (a) such Participating Secured Term Loan Lenders' recoveries set forth in Article III of the Plan on account of their Secured Term Loan Claims; (b) such Participating Secured Revolving Loan Lenders' recoveries set forth in Article III of the Plan on account of their Secured Revolving Loan Claims; and (c) such DIP Lender's recoveries set forth in Article II of the Plan on account of their DIP Claims.

2.    Issuance of the Reorganized Debtors Interests

All existing Interests in the Debtors shall be automatically cancelled on the Effective Date and the Reorganized Debtors shall issue the Reorganized Debtors Interests to Entities entitled to receive the Reorganized Debtors Interests pursuant to the Plan and the Exchange Term Sheet, if applicable. The issuance of the Reorganized Debtors Interests, is authorized without the need for any further corporate action and without any further action by the Holders of Claims or Interests or the Debtors or the Reorganized Debtors, as applicable. The New Organizational Documents, as applicable, shall authorize the issuance and distribution on the Effective Date of the Reorganized Debtors Interests to the Disbursing Agent for the benefit of Entities entitled to receive the Reorganized Debtors Interests pursuant to the Plan and the Exchange Term Sheet, if applicable. All of the Reorganized Debtors Interests issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the Reorganized Debtors Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

E.      *Sale Transaction*

The Debtors are in the process of conducting a marketing and Auction process for some or all of their assets in accordance with the Bidding Procedures. Pursuant to this process, the Debtors are seeking to effectuate a value-maximizing sale transaction. Binding Bids are due on May 16, 2019. If no Entity submits a Qualified Bid by the Bid Deadline that provides adequate consideration to pay Administrative Claims, the Debtors will toggle to a going-concern reorganization as contemplated by the Plan. If the Debtors are able to secure one or more qualified bids in accordance with the Bidding Procedures, there will be an Auction (if necessary) to determine the Winning Bidder and, after the DIP Claims are paid in full, the Secured Revolving Loan Claims and Secured Term Loan Claims will be paid the Secured Credit Agreement Distributable Cash as set forth in Article III of the Plan. The Sale Transaction will be consummated pursuant to the Plan in accordance with terms to be set forth in the Confirmation Order and Plan Supplement, as applicable.

F.      *Corporate Existence*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other similar formation and governance documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other similar formation and governance documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

G.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

H.      *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Secured Credit Agreement Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged. Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

I.    *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (1) selection of the directors and officers for the Reorganized Debtors; (2) the issuance of the Reorganized Debtors Interests; (3) implementation of the Restructuring Transactions; (4) consummation of the Sale Transaction, (5) execution of the Exit Credit Agreement and any and all other agreements, documents, securities, and instruments relating thereto; and (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan or corporate structure of the Debtors or Reorganized Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, manages, or officers of the Debtors or the Reorganized Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Credit Agreement and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under non-bankruptcy law.

J.    *New Organizational Documents*

On or immediately prior to the Effective Date, the New Organizational Documents shall be amended in a manner acceptable to the Debtors and Winning Bidder in their discretion, as may be necessary to effectuate the transactions contemplated by the Plan.  Each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation.  The New Organizational Documents will prohibit the issuance of non-voting equity securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

K.    *Directors, Managers, and Officers of the Reorganized Debtors.*

As of the Effective Date, the term of the current members of the board of managers of the Debtors shall expire, and the initial boards of directors, including the New Board, and the officers of each of the Reorganized Debtors shall be appointed by the Winning Bidder in accordance with the respective New Organizational Documents.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial board of directors or be an officer of any of the Reorganized Debtors.  To the extent any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

L.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors or managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.    *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to:  (1) the issuance,

distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for any or all of the Exit Credit Agreement Facility, as applicable; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*N.      Director and Officer Liability Insurance; Other Insurance*

On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement. Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

*O.      Employee and Retiree Benefits.*

Unless otherwise provided herein, all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

*P.      Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, the Reorganized Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the

doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

*Q.*      *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of the Reorganized Debtors Interests as contemplated by the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.  As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, the Reorganized Debtors Interests are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Reorganized Debtors (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.*      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease, not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) is the subject of a motion to assume such Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (3) is a contract, release, or other agreement or document entered into in connection with the Plan; or (4) is an insurance policy.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Bankruptcy Order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases assumed or rejected pursuant to the Plan.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or of any order of the Bankruptcy Court authorizing and providing for its assumption under applicable law; *provided* that no terms of any assumed Unexpired Lease shall be modified pursuant to the Plan without the consent of the applicable landlord. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases identified in this Article V of the Plan and in the Plan Supplement to add or remove any Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time through and including the Confirmation Date (or such later date as agreed to by the counterparty to the Executory Contract or Unexpired Lease).  The Debtors or the Reorganized Debtors shall provide notice of any amendments to the Schedule of Assumed Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby.

*B.     Indemnification Obligations.*

Unless otherwise determined by the Debtors, all indemnification provisions, consistent with applicable law, currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.

*C.     Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified in accordance with the Bankruptcy Code.

*D.     Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance"[4] (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. As part of any cure of an Unexpired Lease of nonresidential real property, all rights of the parties under any such assumed Unexpired Lease or applicable law for setoff, recoupment, or subrogation shall survive, notwithstanding any term or condition of the Plan to the contrary. At least fourteen days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least three days prior to the Confirmation Hearing. The Debtors (or Reorganized Debtors) may settle any cure amounts without any further notice to or action, order, or approval of the Bankruptcy Court. If an objection to a proposed assumption or related

---

4    Evidence of adequate assurance may include: (i) the specific name of the proposed assignee/tenant, if not the prospective purchaser, and the proposed name under which the assignee intends to operate the store if not a current trade-name of the Debtors; (ii) the potential assignee's intended use for the space if different from the present retail operation; (iii) audited financial statements and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the lease(s) subject to the assignment request, and any financial projections, calculations, and/or pro-formas prepared in contemplation of purchasing the lease(s); (v) all documents and other evidence of the potential assignee's retail experience and experience operating stores in a shopping center; and (vi) a contact person for the proposed assignee that landlords may directly contact in connection with the adequate assurance of future performance.

cure amount is not withdrawn or resolved, the undisputed cure amount, if applicable, shall be paid on the Effective Date, and the disputed cure amount shall be deposited in an escrow account established in connection with the objection to be paid promptly following (a) an agreement between the Debtors and the objecting counterparty to the Executory Contract or Unexpired Lease or (b) the entry of a Final Order resolving the dispute and approving the assumption pursuant to hearing not more than 30 days after the Confirmation Date. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy related defaults arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

Notwithstanding Article VIII of this Plan, with respect to any Unexpired Lease of nonresidential real property, nothing in the Plan or in the Confirmation Order shall modify the Debtors', Reorganized Debtors', or any assignee's obligation, as applicable, to pay: (1) amounts accruing or owed under the assumed Unexpired Lease of non-residential real property that are unbilled or not yet due as of the Confirmation Date, whether accruing prior to or after the effective date of assumption of such Unexpired Lease, such as for common area maintenance, insurance, taxes, and similar charges; and any regular or periodic ordinary course year-end adjustments and reconciliations of such charges provided for under the terms of the Unexpired Lease, whether accruing prior to or after the effective date of assumption of such Unexpired Lease, as such charges become due in the ordinary course in accordance with the terms of the Unexpired Lease; (2) any percentage rent that may come due under the assumed Unexpired Lease of non-residential real property; (3) any other obligations, including indemnification obligations (if any) that arise from third party claims asserted with respect to or arising from the Debtors' use and occupancy of the premises prior to the Effective Date for which the Debtors had a duty to indemnify such landlord pursuant to any Unexpired Lease, or the Debtors', Reorganized Debtors', or any assignee's obligation to pay any postpetition expenses under such Unexpired Leases as they come due under the Unexpired Leases; and (4) any unpaid cure amounts or post-assumption obligations under the assumed Unexpired Lease of non-residential real property. Further, notwithstanding the foregoing, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to an Unexpired Lease of non-residential real property to assert any right of setoff or recoupment that such counterparty may have under applicable bankruptcy or non-bankruptcy law, including, but not limited to, the ability, if any, of such counterparties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease with the Debtors or the Reorganized Debtors. For the avoidance of doubt, any agreement entered into by the Debtors and a landlord that may alter the obligations above remain binding and are not modified by the Plan.

E.      *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

F.      *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contract and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract is or was an Executory Contract at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract under the Plan.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

J.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

29

B.    *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions

Except as otherwise provided herein, the Reorganized Debtors shall make distributions to Holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided further*, *however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3.    Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claims against the Debtors or their property.  No fractional shares or units of the Reorganized Debtors Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares or units of the Reorganized Debtors Interests that is not a whole number, the actual distribution of shares of the Reorganized Debtors Interests shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares or units of the Reorganized Debtors Interests to be distributed to Holders of Allowed Claims and Allowed Interests (as applicable) shall be adjusted as necessary to account for the foregoing rounding.

4.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

E.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors or the Reorganized Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors and Reorganized Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

F.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.  For the avoidance of doubt, DIP Claims, Secured Revolving Loan Claims, and Secured Term Loan Claims will, in each case, accrue and be paid postpetition interest in accordance with the terms set forth in the agreements governing DIP Claims, Secured Revolving Loan Claims, and Secured Term Loan Claims, respectively.

H.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Effective Date.

I.      *Setoffs and Recoupment*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, *however*, that neither the failure to effectuate a setoff or recoupment nor the

allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder.  In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

*J.      Claims Paid or Payable by Third Parties*

      1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Reorganized Debtors.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Reorganized Debtors on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Debtor or the Reorganized Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

      2.      <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

      3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

*A.      Allowance of Claims*

After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.

*B.      Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority:  (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or

compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims*

Before or after the Effective Date, the Debtors or Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such claims.

F.      *Disallowance of Claims*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Reorganized Debtors.  All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Claims*

On or after the applicable bar date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors.  Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII.B, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.      **Release of Liens**

**Except as otherwise provided in the Exit Credit Agreement Documents, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 hereof,**

all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

C.     *Releases by the Debtors*

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released and discharged by each and all of the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Restructuring Transactions, the Sale Transaction, entry into the Exit Credit Agreement Facility, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Facility, the Sale Transaction, the Exit Credit Agreement Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; p*rovided* that any right to enforce the Plan and Confirmation Order is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.C is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Reorganized Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

D.     *Releases by Holders of Claims and Interests.*

As of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally,

irrevocably, and forever, released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Reorganized Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Restructuring Transactions, the Sale Transaction, entry into the Exit Credit Agreement Facility, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Facility, the Sale Transaction, the Exit Credit Agreement Facility, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that any right to enforce the Plan and Confirmation Order is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.D, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.D is:   (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Reorganized Debtors or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

### E.        Exculpation

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or Interest for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*F.*        *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, except to the extent such assertions are used as a defense to claims or Causes of Action by the Debtors arising prior to the Effective Date, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.**

*G.*        *Protections Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*H.*        *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

*I.*        *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

*J.*        *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

*A.*        *Conditions Precedent to the Confirmation of the Plan*

It shall be a condition precedent to the confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.    The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed; and

2.    The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan.

*B.*        *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

3.    the Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) in form and substance acceptable to the Debtors;

(a)    authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)    authorize the Debtors, as applicable or necessary, to: (i) implement the Restructuring Transactions, including the Exit Credit Agreement Facility, and Exit Secured Term Loan Facility and Exit Secured Revolving Loan Facility therewith, and the Sale Transaction; (ii) distribute the Reorganized Debtors Interests pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions and issuances as required under the Plan, including Cash and the Reorganized Debtors Interests; and (iv) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

(d)    authorize the implementation of the Plan in accordance with its terms; and

(e)    provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

4.   the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

5.   the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

6.   the Exit Credit Agreement Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Credit Agreement Facility shall have been waived or satisfied in accordance with the terms thereof, and the closing of the Exit Credit Agreement Facility shall be deemed to occur concurrently with the occurrence of the Effective Date;

7.   all conditions precedent to the consummation of the Sale Transaction shall have been satisfied in accordance with the terms thereof, and the closing of the Sale Transaction shall be deemed to occur concurrently with the occurrence of the Effective Date;

8.   all conditions precedent to the issuance of the New Common Stock, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

9.   the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors;

10.   all reasonable and documented fees and out-of-pocket professional fees and expenses of the Secured Credit Agreement Agent, the Secured Credit Agreement Lenders, the DIP Agent, the DIP Lender, the Exit Credit Agreement Agent, and the Exit Credit Agreement Lenders, as applicable, shall have been paid in full in cash by the Debtors; and

11.   the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors.

C.      *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article IX may be waived by the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify

the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, however, that the Debtors or the Reorganized Debtors, as the case may be, shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Accrued Professional Compensation Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.      enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16.      adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.      consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.      determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, whether they occur before, on or after the Effective Date;

21.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

23.    enforce all orders previously entered by the Bankruptcy Court; and

24.    hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Reorganized Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except for the filing of applications for compensation. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committees after the Effective Date.

E.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

F.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (including by facsimile transmission).  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

1.    If to the Debtors, to:

> Z Gallerie, LLC
> 1855 West 139th Street
> Gardena, California
> Attention:  Mark Weinsten
> E-mail address:  mweinsten@zgallerie.com
>
> with copies (which shall not constitute notice) to:
>
> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention:  Joshua A. Sussberg, P.C.
> E-mail address:  joshua.sussberg@kirkland.com
>
> - and -
>
> Kirkland & Ellis LLP
> 300 North LaSalle
> Chicago, Illinois 60654
> Attention:  Justin Bernbrock
> E-mail address:  justin.bernbrock@kirkland.com

2.    If to Secured Term Loan Lenders, to:

> KKR Credit Advisors (US) LLC
> 555 California Street, 50th Floor
> San Francisco, California 94104
> Attention: Scott Cullerton
> E-mail address: scott.cullerton@kkr.com
>
> with copies (which shall not constitute notice) to:
>
> Proskauer Rose LLP
> Eleven Times Square
> New York, New York 10036
> Attention:  Vincent Indelicato
>                  Chris Theodoridis
> E-mail address:  vindelicato@proskauer.com
>                        ctheodoridis@proskauer.com

3. <u>If to Secured Revolving Loan Lenders, to:</u>

Keybank National Association
127 Public Square
Cleveland, Ohio 44114
Attention: Joshua Mayers
        Jeffrey Kalinowski

with copies (which shall not constitute notice) to:

Buchanan Ingersoll & Rooney PC
919 N. Market St., Suite 990
Wilmington, DE 19801
Attention:  Mary F. Caloway
E-mail address:  mary.caloway@bipc.com

After the Effective Date, the Reorganized Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

*H.*     *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*I.*     *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Notice and Claims Agent at https://cases.stretto.com/zgallerie or the Bankruptcy Court's website at http://www.deb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

*J.*     *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

*K.*     *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any

previous plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

L.    *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

M.    *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

[*Remainder of page intentionally left blank*]

Z Gallerie, LLC and Z Gallerie Holding Company, LLC

By:     *Mark Weinsten*
Name:   Mark Weinsten
Title:    Interim President and CEO

COUNSEL:

Dated:  May 1, 2019
Wilmington, Delaware

*Domenic E. Pacitti*
Domenic E. Pacitti (DE Bar No. 3989)
Michael W. Yurkewicz (DE Bar No. 4165)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:      (302) 426-1189
Facsimile:       (302) 426-9193

-and-

Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

-and-

Justin R. Bernbrock (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:       (312) 862-2200

*Co-Counsel for the Debtors and Debtors in Possession*