## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Z GALLERIE, LLC, *et al.*,[1] | ) Case No. 19-10488 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No.  375** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING THE MODIFIED FIRST AMENDED JOINT PLAN
OF REORGANIZATION OF Z GALLERIE, LLC AND Z GALLERIE HOLDING
COMPANY, LLC PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

    a.    commenced, on March 11, 2019 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.    continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed, on March 11, 2019 the *Joint Plan of Reorganization of Z Gallerie, LLC and its Debtor Affiliate Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 16] (as amended, modified, supplemented from time to time, the "Plan");

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Z Gallerie, LLC (3816) and Z Gallerie Holding Company, LLC (5949).  The location of the Debtors' service address is:  1855 West 139th Street, Gardena, CA 90249.

[2]    All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, the "Confirmation Order") have the meanings given to them in the *Modified First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code*, attached hereto as **Exhibit A** (as modified, supplemented, and amended from time to time, the "Plan").  The rules of interpretation set forth in Article I of the Plan shall apply to the Confirmation Order.  The Confirmation Order remains subject to ongoing review and material revision by all parties in interest including, for the avoidance of doubt, the Debtors, the Committee, the U.S. Trustee, the DIP Agent, the Winning Bidder, and all parties that objected (formally or informally) to confirmation of the Plan.

d. filed, on March 22, 2019, the *Disclosure Statement for the Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 105] (the "<u>Disclosure Statement</u>"), and the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 106] (the "<u>Disclosure Statement Motion</u>");

e. appended to the Disclosure Statement filed on March 22, 2019, as <u>Exhibit A</u> the *Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC, Pursuant to Chapter 11 of the Bankruptcy Code*, which is appended as <u>Exhibit A</u> to the Disclosure Statement [Docket No. 105];

f. filed, on March 22, 2019, the *Notice of Disclosure Statement Hearing* [Docket No. 110]; and *Notice of Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 111];

g. obtained, on April 9, 2019, entry of the *Final Order (I) Approving Procedures for Store Closing Sales, (II) Authorizing Customary Bonuses to Employees of Closing Stores, and (III) Granting Related Relief* [Docket No. 192] (the "<u>Store Closing Order</u>");

h. obtained, on April 11, 2019 entry of the *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [Docket No. 206] (the "<u>Bidding Procedures Order</u>");

i. filed, on May 1, 2019, the *First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC, Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 255] and *Disclosure Statement relating to the First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 257];

j. obtained, on May 2, 2019, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 259] (the "<u>Disclosure Statement Order</u>"), which approved, among

other things, solicitation procedures and related notices (the "Solicitation and Notice Procedures"), forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages");

k. caused the Solicitation Packages and notice of the Confirmation Hearing to be distributed on May 6, 2019 and subsequently on May 9, 2019, May 16, 2019, May 17, 2019, May 22, 2019, May 24, 2019, May 28, 2019, May 30, 2019, May 31, 2019, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavits of Service* [Docket Nos. 259, 268, 292, 296, 299, 308, 313, 314, and 317] (collectively, the "Solicitation Affidavit") and the Voting Report;

l. caused notice of the Confirmation Hearing (the "Confirmation Hearing Notice") to be published on May 7, 2019, in the national edition of the *New York Times* and the *Los Angeles Times*, as evidenced by the *Affidavit of Publication of Alice Weber For The New York Times* [Docket No. 271] and the *Affidavit of Publication of Wendy Cooper For The Los Angeles Times* [Docket No. 272] (collectively, the "Publication Affidavits" and, together with the Solicitation Affidavit, the "Affidavits");

m. filed, on May 25, 2019, the *Notice of Successful Bidder with Respect to the Auction of the Debtors' Assets* [Docket No. 300] (the "Notice of Successful Bidder"), announcing a Plan Support Agreement and Sale Term Sheet (each as defined in the Notice of Winning Bidder) to implement the Sale Transaction;

n. filed and caused to be served, on May 28, 2019, the *Notice of Filing of Plan Supplement* [Docket No. 309] (as amended, modified, or supplemented from time to time, the "Plan Supplement"), as evidenced by the *Affidavit of Service* [Docket No. 316];

o. filed, on June 7, 2019, the *Certification of Stretto Regarding Tabulation of Votes in Connection with the First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC* [Docket No. 351] (as may be amended, modified, or supplemented, the "Voting Report");

p. filed, on June 9, 2019, the *Notice of Filing of Second Plan Supplement* [Docket No. 357], which included a certain form of asset purchase agreement;

q. filed, on June 10, 2019, the *Debtors' Memorandum of Law in Support of Confirmation of the Modified First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code and Omnibus Reply to Objections Thereto* [Docket No. 362] (the "Confirmation Brief");

r. filed, on June 10, 2019, the *Declaration of Jason Cohen in Support of Confirmation of the Amended Joint Plan of Reorganization of Z Gallerie, LLC*

*and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 363] (the "<u>Cohen Declaration</u>");

s.    filed, on June 10, 2019, the *Declaration of Mark Weinsten in Support of Confirmation of the First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 365] (the "<u>Weinsten Declaration</u>"); and

t.    filed, on June 10, 2019, the *Notice of Filing of Clean and Blackline Versions of The Modified First Amended Joint Plan of Reorganization  of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 366];

u.    filed, on June 12, 2019, the *Modified First Amended Joint Plan of Reorganization of Z Gallerie, LLC and Z Gallerie Holding Company, LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 375];

v.    filed, on June 13, 2019, the *Notice of Filing of Third Plan Supplement* [Docket No. 378];

This Court having:

a.    entered, on May 2, 2019, the Disclosure Statement Order;

b.    set June 4, 2019, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "<u>Plan Objection Deadline</u>");

c.    set June 4, 2019, at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan (the "<u>Voting Deadline</u>");

d.    set June 11, 2019, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, which date was adjourned pursuant to the Disclosure Statement Order to June 13, 2019, at 2:00 p.m., prevailing Eastern Time;

e.    reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Weinsten Declaration, the Cohen  Declaration, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights;

f.    held the Confirmation Hearing;

g.    heard the statements and arguments made by counsel in respect of Confirmation;

h.     considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding Confirmation and having admitted the same into evidence at the Confirmation Hearing;

i.     overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

j.     considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented at or with respect to the Confirmation Hearing.

NOW, THEREFORE, the Court hereby makes and issues the following findings of fact and conclusions of law and Orders:

## I. <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

A.     **<u>Findings of Fact and Conclusions of Law.</u>**

1.     The findings of fact and the conclusions of law set forth in the Confirmation Order and on the record of the Confirmation Hearing (which are incorporated into the Confirmation Order by this reference) constitute the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated in the Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated in the Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

B.     **<u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).</u>**

2.     The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and

should be confirmed.  Venue in the Court was proper as of the Petition Date and remains proper under  28 U.S.C. §§ 1408 and 1409.    Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  This Court has the requisite constitutional adjudicatory authority to enter a final order (a) determining that the Plan, including the Restructuring Transactions, and the transactions and mergers contemplated in connection therewith and set forth in greater detail therein, comply with the applicable provisions of the Bankruptcy Code and applicable law and (b) confirming the Plan.

**C.**     **Eligibility for Relief.**

3.    The Debtors were at all times during the Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.**     **Commencement and Joint Administration of these Chapter 11 Cases.**

4.    On the Petition Date, the Debtors commenced these Chapter 11 Cases.  On March 12, 2019, the Court entered an order [Docket No. 50] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).  Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.**     **Committee Appointment.**

5.    On March 20, 2019, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code, which Committee currently consists of (i) Bassett Mirror Co., Inc., (ii) Tuscany 3PL, (iii) Dallimore & Co., (iv) LSC Communications US LLC, and (v) Brookfield Property REIT, Inc.

**F.**    **Objections.**

6.    Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, except with respect to unresolved cure amounts, statements, informal objections, and reservations of rights, if any, related to the Plan or Confirmation are overruled on the merits, unless otherwise set forth in the Confirmation Order.

**G.**    **Plan Support Agreement.**

7.    On May 24, 2019, the Debtors entered into that certain Plan Support Agreement (the "Plan Support Agreement") attached as Exhibit A to the *Notice of Successful Bidder with Respect to the Auction of the Debtors' Assets* [Docket No. 300] with the Winning Bidder, the DIP Lender, and the Committee (collectively, the "Consenting Stakeholders").

**H.**    **Plan Supplement.**

8.    On May 28, 2019, June 9, 2019, and June 13, 2019, respectively, the Debtors filed the Plan Supplement and revised Plan Supplement with the Court.  The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in

the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of the Plan, the Confirmation Order, the Asset Purchase Agreement, the Bankruptcy Code, and the Bankruptcy Rules.

## I.      Disclosure Statement Order.

9.      On May 2, 2019, the Court entered the Disclosure Statement Order [Docket No. 259], which, among other things, (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) approved the Solicitation and Notice Procedures, (c) approved the Solicitation Packages, (d) set June 4, 2019, at 4:00 p.m., prevailing Eastern Time, as the Plan Objection Deadline and the Voting Deadline, respectively, and (e) set June 11, 2019, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing.[3] The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims or Interests in the Voting Classes to have made an informed decision to accept or reject the Plan.

## J.      Solicitation and Notice.

10.      The Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order. The solicitation of votes on the Plan

---

[3]   On June 6, 2019, the Debtors filed the *Notice of Rescheduled Confirmation/Omnibus Hearing* [Docket No. 347], rescheduling the time of the confirmation/omnibus hearing to June 13, 2019 at 2:00 p.m. (prevailing Eastern Time).

complied with the Solicitation and Notice Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with section 1125, section 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. As evidenced by the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

**K.     Voting Report.**

11.     Prior to the Confirmation Hearing, the Debtors filed the Voting Report. As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.     As set forth in the Plan, Holders of Claims or Interests in Classes 4, 5, and 7 (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Notice Procedures. Class 6 was entitled to vote on the Plan but the Class was vacant. In addition, Holders of Claims in Classes 1, 2, and 3 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims and Interests in Classes 8 and 9 are not entitled to vote to accept or reject the Plan. Holders of Claims in Class 10 and 11 are Impaired under the Plan, are entitled to no recovery under the Plan, and are, therefore, deemed to have rejected the Plan.

13.     As evidenced by the Voting Report, the Voting Classes voted to accept the Plan. Every claimant in Classes 4 and 5 voted to accept the plan, and over 80% of Class 7 Claims (in both dollar and amount) voted to accept the plan.

**L.      Bankruptcy Rule 3016.**

14.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.      Burden of Proof.**

15.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**N.      Plan Modifications.**

16.     Subsequent to filing the Plan on May 1, 2019, the Debtors made certain modifications to the Plan (the "Plan Modifications"), which are reflected in the version of the Plan attached hereto as **Exhibit A**.  The Plan Modifications were made to address objections and informal comments received from various parties-in-interest and to incorporate and implement the Sale Transaction.  The Plan Modifications neither materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan nor require resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019. The filing with the Court of the Plan as modified by the Plan Modifications, and the disclosure of the Plan Modifications on the record at the Confirmation Hearing, constitute due and sufficient notice thereof.    Accordingly,  pursuant  to  section  1127(a)  of  the  Bankruptcy  Code  and

Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code (especially in light of previously provided disclosures).  The Plan as modified and attached hereto, and as may be further modified consistent with the terms of the Confirmation Order, the Plan, and the Plan Support Agreement, shall constitute the Plan submitted for Confirmation by the Court.

**O.**      **Presumed Acceptance of Plan as Modified.**

17.      In    accordance    with    section    1127    of    the    Bankruptcy    Code    and Bankruptcy Rule 3019, all Holders of Claims and Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim or Interest who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.

**P.**      **Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127).**

18.      The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**Q.**      **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129).**

19.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**a) Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

20.      As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123.

**I.**      **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

21.    The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan designates Classes of Claims and Interests, other than Administrative Claims, Professional Fee Claims, DIP Facility Claims, Priority Tax Claims, and United States Trustee Statutory Fees, which, pursuant to section 1123(a)(1) of the Bankruptcy Code, need not be classified.    Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.    Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan.    The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims and Interests.

II.    **Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).**

22.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests in Classes 1, 2, 3, 8, and 9 are Unimpaired.    Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 4, 5, 6, 7, 10, and 11.    Holders of Claims and Interests in Classes 8 and 9 are deemed to accept or deemed to reject the Plan depending on whether such Claims or Interests are reinstated or canceled and released without any distribution on account of such Claims.

**No Discrimination (11 U.S.C. § 1123(a)(4)).**    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.    Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

III.        **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**

23.        The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code.  The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including:    (a) consummation of the Restructuring Transactions (including the Sale Transaction pursuant to the Asset Purchase Agreement); (b) funding distributions under the Plan through Cash on hand and Sale Transaction Proceeds; (c) the consummation of the Sale Transaction; (d) the winding-down of each Debtor; (e) establishing and funding the Post-Effective Date Debtors, including the Store Closing Segregated Account, Claims Escrow, and Post-Effective Date Debtor Account; (f) cancellation of securities and agreements; (g) the authorization and approval of corporate actions under the Plan; and (h) the preservation of Causes of Action to the extent not released, exculpated, or enjoined under the Plan, or sold pursuant to the Asset Purchase Agreement.

IV.        **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**

24.        The Plan does not provide for the issuance of equity or other securities by the Debtors or the Post-Effective Date Debtors.  Accordingly, the requirements of section 1123(a)(6) are inapplicable in these Chapter 11 Cases.

V.        **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).**

25.        The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  The Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action.  The Plan further provides for continuation of the Post-Effective Date Debtors and the appointment of the Plan Administrator.

**VI.        Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).**

26.        The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

**(i)        Executory Contracts and Unexpired Leases (11 U.S.C.   § 1123(b)(2)).**

27.        Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article V.A of the Plan provides for the assumption, assumption and assignment, or rejection of certain Executory Contracts and Unexpired Leases, as follows: (a) with respect to the Unexpired Leases identified on the Schedule of Assumed Executory Contracts and Unexpired Leases as of the entry of this Confirmation Order, the assumption and assignment of such Unexpired Leases shall be effective as of the Effective Date; (b) with respect to rejection of any Unexpired Lease, effective as of the Unexpired Lease Rejection Date or such other date as may be agreed among DBHI and the non-Debtor counterparty to such Unexpired Lease); and (c) with respect to Executory Contracts, through 90 days after the Effective Date.  The Plan also provides that certain Unexpired Leases may with consent of the applicable landlord be assumed and assigned at a future date by DBHI.  The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, holders of Claims or Interests and other parties in interest in these Chapter 11 Cases.

**(ii)       Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

28.        **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code,

14

the Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.C of the Plan (the "Debtor Release"). The Debtor Release is an essential component of the Plan. The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases. The Debtor Release is given and made after due notice and opportunity for hearing.

29.    The Debtor Release is the result of a good faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors. The record establishes that the parties to the Plan Support Agreement negotiated extensively to include the Debtor Release and that it is not likely that the Released Parties would have agreed to support the Plan and the Restructuring Transactions contemplated in the Plan without such releases.

30.    Moreover, the Debtor Release appropriately offers protection to parties that participated in the Debtors' restructuring process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from bankruptcy. Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated in the Plan. The record shows that the releases relating to the Debtors' current and former directors, officers, affiliates, and principals have an identity of interest in supporting the release because the Debtors will assume certain indemnification obligations under the Plan and the Post-Effective Date Debtors will honor such obligations in accordance with the terms of the Plan. The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Releases under the Plan.

31.     **Releases by Holders of Claims and Interests.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.D of the Plan (the "<u>Third-Party Release</u>").   The Third-Party Release is given and made after due notice and opportunity for hearing.

32.     Furthermore, the Third-Party Release is fully consensual as to all parties in interest, including all Releasing Parties.  The Ballots sent to all Holders of Claims and Interests entitled to vote as well as the notice of the Confirmation Hearing sent to all known parties-in-interest (including those not entitled to vote on the Plan) unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of the Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt out of the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt Out Form, returned in advance of the Voting Deadline would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties.  Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, and the Ballots.  Thus, the Third-Party Release is consensual as to those Releasing Parties that did not specifically and timely object.

33.     **Exculpation.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Court has jurisdiction and authority to approve the release and exculpation set forth in Article VIII.E

16

of the Plan (the "Exculpation").  The Exculpation is essential to the Plan.  The evidence before the Court demonstrates that the Plan's Exculpation was critical to the parties' willingness to support the Debtors' reorganization efforts and that these parties would not have been so inclined to participate in the plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

34.     **Injunction.**  Section 105(a) and section 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.F of the Plan (the "<u>Injunction</u>") and are within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d).  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, the Exculpation and discharge provisions in Article VIII of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.  Accordingly, the Injunction is approved.

35.     **Preservation of Causes of Action.**  Article IV.O of the Plan appropriately provides that to the extent the Post-Effective Date Debtors retain any Causes of Action following the closing of the Sale Transaction, the Post-Effective Date Debtors may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, except for Causes of Action that have been expressly waived, settled, or otherwise released as provided in Article IV.O of the Plan, or sold to the DBHI, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.   The provisions regarding retained Causes of Action in the Plan are

appropriate and in the best interests of the Debtors, their respective Estates, and all Holders of Claims and Interests.

    **I.    Cure of Defaults (11 U.S.C. § 1123(d)).**

    36.    Article V.D of the Plan provides for the satisfaction of cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.   Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash pursuant to the Plan, subject to the limitations described in Article V.D, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.   Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.D of the Plan, and applicable bankruptcy and non-bankruptcy law.   As such, the Plan provides that DBHI, on behalf of the Debtors,  will cure, or provide adequate assurance that DBHI will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.   All parties with unresolved cure disputes related to Unexpired Leases that have been assumed and assigned to DBHI shall work with DBHI and the Debtors to consensually resolve the dispute.  If such dispute is not resolved, the dispute will be heard at the next scheduled hearing before the Bankruptcy Court which will be scheduled within 30 days of the Effective Date (or such other date as the parties agree or as set by Bankruptcy Court order). Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

    **b)  The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

    37.    The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

38.     Votes to accept or reject the Plan were solicited by the Debtors and their agents after the Court approved the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code and entered the Disclosure Statement Order.

39.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article VIII.E of the Plan.

**c) Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

40.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and Plan Documents (including Plan documents and all other agreements, documents, and instruments necessary to effectuate the Plan) in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, the record of the Confirmation Hearing, and all the other proceedings held in these Chapter 11 Cases and before the Court.  Further, the Plan's classification, indemnification, exculpation, release, and injunctive provisions, including Article VIII.A–J of the Plan, have been

negotiated in good faith and at arm's length, consistent with sections 105, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code.

**d)  Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

41.    Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable.   The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**e)  Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

42.    The Debtors have disclosed the identity and compensation of the Plan Administrator, who, under the Plan, shall act for the Post-Effective Date Debtors in the same fiduciary capacity as applicable to a board of managers and officers subject to the provisions of the Plan.  Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**f)  No Rate Changes (11 U.S.C. § 1129(a)(6)).**

43.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g)  Best Interests Test (11 U.S.C. § 1129(a)(7)).**

44.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. Each Holder of an Impaired Claim or Impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  The Liquidation

Analysis (as defined in the Disclosure Statement and attached as <u>Exhibit B</u> thereto), and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are persuasive and credible.  The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation.  The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable.

**h)  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

45.    The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Classes 1, 2, and 3 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Classes 4, 5, and 7 are the Impaired Classes entitled to vote on the Plan, each of which voted to accept the Plan.  Classes 8 and 9 are Classes of Intercompany Claims and Intercompany Interests, respectively, which are Impaired and either: (a) cancelled and, thus, deemed to reject the Plan; or (b) reinstated and, thus, presumed to have accepted the Plan.  Class 10 and 11 are Impaired Classes that will not receive or retain any property under the Plan on account of their Claims; such Class is not entitled to vote on the Plan, and thus is deemed to reject the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that are deemed to reject the Plan.

**i)  Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

46.    The treatment of Administrative Claims, DIP Facility Claims, Priority Tax Claims, and United States Trustee Statutory Fees, as set forth in Article II of the Plan, is in accordance with the requirements of section 1129(a)(9) of the Bankruptcy Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

**j) Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

47.     As set forth in the Voting Report, all Voting Classes are Impaired and each Voting Class of Claims that is not vacant has voted to accept the Plan by the requisite number and amount of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code) at each Debtor.  The Plan, therefore, satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.  Further, as set forth in the Voting Report, the Rejecting Classes are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**k) Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

48.     The evidence proffered or adduced at or prior to the Confirmation Hearing and in the Weinsten Declaration and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b)  has not been controverted by other evidence; (c) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by a liquidation, or the need for further financial reorganization, of the Post-Effective Date Debtors; and (e) establishes that the Debtors or Post-Effective Date Debtors will have sufficient funds available to meet their obligations under the Plan.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**l) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

49.     Article XII.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).   The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**m) Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

50.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.   Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**n) Only One Plan (11 U.S.C. § 1129(c)).**

51.     Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.   The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**o) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

52.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.   The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**p) Not a Small Business Case (11 U.S.C. § 1129(e)).**

53.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**q) Satisfaction of Confirmation Requirements.**

54.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**R.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

55.     Each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**S.**     **Implementation.**

56.     The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Post-Effective Date Debtors, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements.

**T.**     **Good Faith Solicitation (11 U.S.C. § 1125(e)).**

57.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders. The Plan accomplishes this goal.   Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan, the Restructuring Transaction, and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by the Confirmation Order; and (b) take any actions authorized and directed or contemplated by the Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.E of the Plan.

**U.**     **Sale Transaction.**

58.     The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtors and DBHI without collusion, in good faith, and from arm's-length bargaining positions.

Neither the Debtors nor DBHI have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under Bankruptcy Code section 363(n).   DBHI is consummating the Sale Transaction in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.   DBHI has proceeded in good faith in all respects in connection with the Sale Transaction.   DBHI is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

59.     The Debtor's marketing process with respect to the Sale Transaction afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer.   The Asset Purchase Agreement constitutes the highest and best offer, and will provide a greater recovery for the Debtors' Estates than would be provided by any other available alternative.   The Debtors' determination that the Asset Purchase Agreement constitutes the highest and best offer constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the Asset Purchase Agreement and the consummation of the Sale Transaction is in the best interests of the Debtors' Estates, their creditors, and other parties in interest.

60.     The consideration provided by DBHI pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the purchased assets, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.   No other person or entity or group of entities has offered to purchase the assets for greater overall value to the Debtors' Estates than DBHI.

61.    DBHI is not a mere continuation of the Debtors or their Estates and there is no continuity of enterprise between DBHI and the Debtors.  DBHI is not holding itself out to the public as a continuation of the Debtors.  DBHI is not a successor to the Debtors or their Estates by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger, or de facto merger of DBHI and the Debtors.  DBHI is not an "insider" of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

62.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, subject to the obligations set forth in Article V.D. of the Plan, the Debtors may sell the purchased assets under the Asset Purchase Agreement free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than as expressly permitted under the Asset Purchase Agreement.  DBHI is consummating the Sale Transaction in reliance upon the Debtors' sale of the purchased assets under the Asset Purchase Agreement free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than as expressly permitted under the Asset Purchase Agreement.  DBHI would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale Transaction and the assumption of any Assumed Liabilities by the DBHI were not free and clear of all liens, claims interests and encumbrances, other than the Assumed Liabilities.    Unless otherwise expressly included in the definitions of "Assumed Liabilities" in the Asset Purchase Agreement, DBHI shall not be responsible for any liens claims, interests, or encumbrances, including in respect of the following: (a) any labor or employment agreements; (b) any mortgages, deeds of trust and security interests; (c) intercompany loans and receivables between the Debtors; (d) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including,

without limitation, any pension plan of any Debtor; (e) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (f) any bulk sales or similar law; (g) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (h) any theories of successor liability.

63.     The consummation of the Sale Transaction and the assumption and assignment of the Assumed Executory Contracts or Unexpired Leases are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction. Accordingly, the Debtors are authorized to undertake the transactions contemplated under the Asset Purchase Agreement pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

64.     Subject to the obligations set forth in Article V.D. of the Plan, the Debtors may sell such assets free and clear of all claims, liens, encumbrances, and other interests of any kind or nature whatsoever (other than as expressly permitted under the Asset Purchase Agreement) because, in each case, one or more of the standards set forth in sections 363(f)(l)–(5) and 1129(b)(2)(A)(ii) of the Bankruptcy Code has been satisfied.  Those holders of such claims, liens, encumbrances, or other interests against the Debtors, their Estates, or any of the assets subject to the Sale Transaction who did not object, or who withdrew their objections, to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of such claims, liens, encumbrances, or other interests are adequately protected by having their claims, liens, encumbrances, or other interests, if any, in each instance against the Debtors, their Estates, or any of the assets subject to the Sale Transaction, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the assets in which such creditor alleges a claim, lien, encumbrance, or other interest, in the same order of priority, with the same validity, force, and effect that such claim, lien, encumbrance, or other interest had prior to consummation of the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto, and with such claims, liens, encumbrances, or other interests being treated in accordance with the Plan.

V.     **Executory Contracts and Unexpired Leases**.

65.     The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assumption and assignment, and rejection of Executory Contracts and Unexpired Leases pursuant to the Plan.  The Debtors have exercised their reasonable business judgment prior to the Confirmation Hearing in determining whether to assume, assume and assign, or reject each of their  Unexpired Leases as set forth in Article V of the Plan, the Plan Supplement, the Confirmation Order, or otherwise.  Upon the Confirmation Date, the Debtors,

the Post-Effective Date Debtors, and the Plan Administrator, as applicable, shall have the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts identified in this Article V of the Plan and in the Plan Supplement (with the consent of DBHI) to remove any Executory Contract (but not Unexpired Lease, absent consent of the applicable landlord) from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time through and including 90 days after the Effective Date.  Subject to the satisfaction of any applicable cure Claims, each assumption, assumption and assignment, or rejection of an Executory Contract or Unexpired Lease pursuant to the Confirmation Order and in accordance with Article V of the Plan, or otherwise by order of this Court, shall be legal, valid, and binding upon the applicable Post-Effective Date Debtors and all non-Debtor persons or entities party to such Executory Contract or Unexpired Lease.

66.    The Debtors and DBHI have provided sufficient evidence of adequate assurance of future performance for each of the Executory Contracts and Unexpired Leases that are being assumed by the Debtors and assigned to DBHI, as applicable, on the Effective Date pursuant to the Plan.  The Debtors and DBHI have also provided sufficient evidence of adequate assurance of future performance for the Executory Contracts that will be assumed and assigned, or rejected through 90 days from the Effective Date pursuant to the Plan.  The Debtors have cured or provided adequate assurance that DBHI, consistent with the terms of the Asset Purchase Agreement and Plan, will promptly cure any defaults (including by paying any cure Claims) under or relating to each of the Executory Contracts and Unexpired Leases that are being assumed and assigned pursuant to the Plan.  With respect to any Unexpired Lease or Executory Contract, the Debtors, the Post-Effective Date Debtors, or DBHI, as applicable and to the extent consistent with the terms of the Asset Purchase Agreement and Plan, will comply with all

postpetition lease and contract obligations accruing and arising when due in accordance with each Unexpired Lease and Executory Contract, including, as applicable, by providing payment of such obligations due and/or accrued in the ordinary course under the terms of any such Unexpired Lease or Executory Contract, pending the actual (x) assumption and assignment (as such Unexpired Lease or Executory Contract may be modified by consensual agreement of the parties) or (y) rejection of such Unexpired Lease or Executory Contract, including the payment of additional amounts, if any, that become due during the period preceding such assumption and assignment or rejection.  For the avoidance of doubt, notwithstanding anything to the contrary in the Plan, the Asset Purchase Agreement or this Confirmation Order, the assumption and assignment of any Unexpired Lease is subject to the provisions, terms, and restrictions of such Unexpired Lease, including those provisions concerning use, radius, exclusivity, and tenant mix and balance, unless otherwise agreed between DBHI and the counterparty to such Unexpired Lease.  The Plan and such assumptions and assignments, therefore, satisfy the requirements of section 365 of the Bankruptcy Code.

67.    With respect to the Unexpired Leases to be rejected, the Debtors have determined, in their business judgement, that rejecting such Unexpired Leases is appropriate under the circumstances.  The Debtors will conduct Store Closings and reject such leases on the Unexpired Lease Rejection Date in accordance with the Store Closing Procedures, which Unexpired Lease Rejection Date shall occur on or before July 31, 2019.  The Debtors have determined, in their business judgment, that the Store Closing Agency Agreement is appropriate to implement the Sale Transaction.

**W.    Disclosure:  Agreements and Other Documents.**

68.    The Debtors have disclosed all material facts regarding:  (a) the Plan, including with respect to consummation of the Sale Transaction; (b) the sources and distribution of Cash

under the Plan; (c) the Plan Support Agreement; (d) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (e) the various releases set forth in Article VIII of the Plan; and (f) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Post-Effective Date Debtors.

## II. <u>ORDER</u>

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

A.    <u>Findings of Fact and Conclusions of Law</u>.

69.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in the Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

B.    <u>Confirmation</u>.

70.    The Plan is confirmed and the Debtors are authorized to enter into and execute the all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereafter by the Post-Effective Date Debtors, are hereby approved and authorized.  The Debtors and the Post-Effective Date Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including without limitation entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan.  The terms of

the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date. In the event of an inconsistency between the Plan (including the Plan Supplement) and the Disclosure Statement, the terms of the Plan (including the Plan Supplement) shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan (including the Plan Supplement) or the Disclosure Statement and the terms of the Confirmation Order, the terms of the Confirmation Order shall control in all respects.

**C.**     **Objections.**

71.     All objections and all reservations of rights pertaining to Confirmation that have not been withdrawn, waived, or settled are overruled on the merits.

**D.**     **The Discharge, Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

72.     The release, exculpation, discharge, injunction, and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved and authorized in their entirety and shall be immediately effective and binding upon the Effective Date without further action or notice by this Court, any of the Parties subject to such provisions, or any other party.

73.     Notwithstanding the foregoing, neither DBHI nor the Debtors or the Post-Effective Date Debtors, as applicable, shall be released from their obligations under the Plan, the Asset Purchase Agreement, or this Confirmation Order and, with respect to the Unexpired Leases to be assumed and assigned to DBHI or rejected pursuant to the Plan, no release shall be effective until such time as all payments arising and accruing under such Unexpired Leases, including any defaults or cure Claims, if applicable, have been paid in accordance with the provisions of the Plan and the Confirmation Order (including, to the extent

applicable, pursuant to an agreement between DBHI and the counterparty to the applicable Unexpired Lease).

a)      *Releases by the Debtors*

74.      As of the Effective Date, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtors, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Restructuring Transactions, the Sale Transaction, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Facility, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring

Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that any right to enforce the Plan, the Plan Supplement, and Confirmation Order is not so released.

75.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in Article VIII.C of the Plan by the Debtors, which includes by reference each of the related provisions and definitions contained in the Plan.

   b)     *Releases by Holders of Claims and Interests.*

76.     As of the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or

the Post-Effective Date Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Restructuring Transactions, the Sale Transaction, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Facility, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided that any right to enforce the Plan, the Plan Supplement, and Confirmation Order is not so released.

77.     Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in Article VIII.D of the Plan, which includes by reference each of the related provisions and definitions contained in the Plan.

*c)*     *Exculpation*

78.     Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or Interest for any (a) prepetition act or omission in connection with, relating to, or arising out of, formulating, negotiating, or preparing the Plan or

(b) postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan, as applicable, or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, or any other postpetition act or omission in connection with, relating to, arising out of, or in contemplation of the restructuring of the Debtors, except for actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.

    *d)*    *Injunction*

79.    Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any

such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (4) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released pursuant to the Plan.

80.     Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.

**E.      Preservation of Causes of Action.**

81.     In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, to the extent not sold to DBHI or released pursuant to the Plan, the Post-Effective Date Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Post-Effective Date Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII.

82.     To the extent not sold to DBHI or released pursuant to the Plan, the Post-Effective Date Debtors may pursue such Causes of Action, as appropriate, in accordance with the best

interests of the Post-Effective Date Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Post-Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors or the Post-Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Post-Effective Date Debtors expressly reserve all Causes of Action.

83.    In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Post-Effective Date Debtors, except as otherwise expressly provided in the Plan, including Article VIII of the Plan, or the Asset Purchase Agreement.  The applicable Post-Effective Date Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Post-Effective Date Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## F.    Classifications of Claims and Interests.

84.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do

not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**G.    Store Closing Agency Agreement[4]**

85.    The Store Closing Agency Agreement attached hereto as **Exhibit D,** (also referred to herein as the "Agency Agreement") is approved in its entirety and the Liquidation Agent (also referred to herein as the "Agent") may conduct the Store closings consistent with the Store Closing Procedures or as set forth herein.  In the event of a conflict between the Confirmation Order and the Store Closing Procedures, the Confirmation Order shall control.

86.    Notwithstanding any other provision of the Plan, this Confirmation Order or any other agreement, order or document to the contrary, the Merchandise and Store Owned FF&E (as defined in the Agency Agreement) shall remain property of the Post-Effective Date Debtors until such property is sold during the Store Closing Sales, transferred to Agent as Remaining Merchandise, or abandoned (and shall not constitute Acquired Assets being sold to DBHI pursuant to the Sale Transaction).

87.    This Order shall constitute the Approval Order (as defined in the Agency Agreement) and shall order, authorize, and approve the transactions contemplated by the Agency Agreement as follows:

---

[4]    Capitalized Terms used in this section and not otherwise defined herein or in the Plan have the meanings given to them in the Agency Agreement.

a.      The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for entering into the Agency Agreement and performing thereunder and making payments required by the Agency Agreement, and such actions constitute a reasonable exercise of the Debtors' sound business judgment  consistent with their fiduciary duties and are in the best interests of the Debtors, their estate, its  creditors, and other parties in interest.

b.      All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent in accordance with the terms of the Agency Agreement without the need for any application of the Agent therefor or further order of the Court.

c.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, DBHI, and the Agent are authorized and empowered to take any and all actions as may be necessary or desirable to implement the Agency Agreement and each of the transactions contemplated thereby.

d.      This Order shall be binding in all respects upon the Debtors, their estates, the Plan Administrator, the Wind-Down Trustee, all creditors and all holders of equity interests in any Debtor, all holders of any claim(s) (whether known or unknown) against any Debtor, any holders of Claims and Encumbrances against or on all or any portion of the Merchandise (including Remaining Merchandise) or Store Owned FF&E (as such terms are defined in the Agency Agreement, and collectively referred to herein as the "Merchandise"), the Agent and all successors and assigns of the Agent, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases.  In the event any such trustee is appointed in any of the Debtors' chapter 7 or 11 cases or upon a

conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases, (i) such trustee shall be authorized and directed to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of the Agency Agreement, and (ii) the Agent and any such trustee shall be authorized and directed to perform under the Agency Agreement upon the appointment of a trustee without the need for further order of the Court.  This Order and the Agency Agreement shall inure to the benefit of the Debtors, their estates, DBHI, and creditors and the Agent and each of their respective successors and, solely to the extent provided for in the Agency Agreement, their assigns.

e.      Subject to the Store Closing Procedures and any Side Letter, the Agent shall have the right to use the retail stores that are subject to Store Closings (each a "Store" and collectively, the "Stores") and all related Store services, furniture, fixtures, equipment and other assets of the Debtors[5] for the purpose of conducting Store Closings and related sales ("Store Closing Sales"), free of any interference from any entity or person, in accordance with the terms of the Agency Agreement.

f.      The automatic stay under section 362(a) of the Bankruptcy Code, and any other automatic stay of enforcement, is hereby waived and modified solely to the extent necessary for the Debtors and the Agent to implement the Agency Agreement and each of the transactions contemplated thereby.

g.      Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Merchandise shall be sold (whether sold to a third party or to the Agent) free and clear of any and all Claims and Encumbrances

---

[5]   As used herein, references to "Debtors" shall be interpreted to include, as applicable, the Debtors, the Post-Effective Date Debtors, or the Wind-Down Trust and Wind-Down Trustee (as successor to the Debtors with respect to Wind-Down Trust Assets).

(including, without limitation, any and all claims pursuant to any successor-in-interest liability theory), with such Claims and Encumbrances, if any, to attach only to any amounts payable to DBHI under the Agency Agreement with the same validity, force and effect as the same had with respect to the Merchandise at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.

h.    Except as expressly permitted or otherwise specifically provided in the Agency Agreement or this Confirmation Order, all persons or entities holding Claims and Encumbrances in or on all or any portion of the Merchandise arising under or out of, in connection with, or in any way relating to the Debtors, the operation of the Debtors' business or the transfer of the Merchandise to any buyer (including, but not limited to, the Agent), hereby are forever barred, estopped and permanently enjoined from asserting against the Agent or any third-party purchaser of the Merchandise, such persons' or entities' Claims and Encumbrances in and to the Merchandise. Upon the entry of this Confirmation Order, each creditor is authorized to execute such documents and take all other actions as may be necessary to release Claims and Encumbrances on the Merchandise, if any, as provided herein, as such Claims and Encumbrances may have been recorded or may otherwise exist. The transactions authorized herein shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

i.    If persons or entities that have filed financing statements, mortgages, construction, or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Merchandise shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfaction, or releases of the alleged Claims and Encumbrances which the person or entity has with respect to the Merchandise, such persons or entities are hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Confirmation Order which, upon filing, shall be conclusive evidence of the release and termination of such interest; and each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the sale and related transactions.

j.     Except as expressly provided for in the Agency Agreement, nothing in this Confirmation Order or the Agency Agreement and none of the Agent's actions taken in respect of the Sale Transaction, the sale of the Merchandise or the other transactions contemplated by the Agency Agreement shall be deemed to constitute an assumption by the Agent of any of the Debtors' obligations relating to any of the Debtors' employees, nor shall the Agent become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

k.     Notwithstanding any restrictions under contract, statute, law, or equity, the Agent is granted a limited license and right to use until the Sale Termination Date (as defined in the Agency Agreement) the Debtors' trade names, logos, and customer lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Store Closings Sales in accordance with the terms of the Agency Agreement.

l.       During the Sale Term applicable to any Store and for purposes of conducting the Store Closing and related sale at such Store, in each case in accordance with the terms of the Agency Agreement:  (A) the Agent shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, such Store and the assets currently located at such Store, in each case subject to the extent of the Debtors' rights and entitlement to use the same, and the services provided at such Store to the extent the Debtors are entitled to such services and (B) absent the consent of the Agent and DBHI, the Debtors shall not be permitted or authorized to assign, reject or otherwise terminate any lease relating to any such Store where such assignment, rejection, or termination would have an effective date on or prior to the applicable Sale Termination Date or "Vacate Date" (as defined in the Agency Agreement) for such Store.

m.      To the extent that the FF&E may contain personal and/or confidential information about the Debtors' employees and/or customers, the Agent shall remove such confidential information from such FF&E before such sale or abandonment.

n.       Upon payment by the Agent of the Initial Guaranty Payment, the Agent shall have, pursuant to 11 U.S.C. § 364(d), a valid and perfected first priority security interest and lien upon (i) Merchandise, (ii) the Proceeds, (iii) the FF&E and the proceeds realized therefrom, (iv) the Agent's commission regarding the sale or other disposition of Merchant's Consignment Goods, and (v) all "proceeds" (within the meaning of Section 9-102(a)(64) of the Uniform Commercial Code) of each of the foregoing (all of which are collectively the "Agent Collateral") to secure the full payment and performance of all obligations of the Debtors to the Agent under the Agency Agreement.  Upon entry of this Confirmation Order and the payment of the Initial Guaranty Payment, the security

interests and liens granted to the Agent hereunder shall be deemed properly perfected without the necessity of filing UCC-1 financing statements or any other documentation.

o.    The Agent is authorized to conduct Store Closing Sales and perform operations at the Stores in accordance with the Store Closing Order, the Store Closing Procedures, the Agency Agreement, and any Side Letter, and subject to the provisions and protections afforded by the Final Store Closing Order.

p.    Except as otherwise agreed between Agent and the Debtors or as agreed to in any applicable Side Letter, Agent, as agent for Debtors, is authorized to conduct, advertise, post signs, utilize signwalkers, and otherwise promote the Store Closings Sales without necessity of further order of this Court or consent of any person, as provided in the Agency Agreement, the Store Closing Procedures, or any Side Letter (including without limitation by means of use of media advertising, interior and exterior banners, A-frames and similar signage) at the Stores as a "store closing," "sale on every-thing," "everything must go," or similar themed sale without compliance with the Liquidation Sale Laws subject to compliance with the Store Closing Procedures and this Confirmation Order.

q.    All entities that are presently in possession of some or all of the Merchandise that may be subject to the Agency Agreement or this Confirmation Order are hereby directed to surrender possession of such Merchandise to the Agent upon the effectiveness of the Agency Agreement.

r.    Neither the Debtors nor the Agent nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in section 101(27) of the Bankruptcy

Code) or landlord, to conduct the Store Closings Sales pursuant to the Store Closing Procedures or to take the related actions authorized herein.

s.      Subject to the terms of the Agency Agreement or any applicable Side Letter, the Agent is authorized to include Additional Agent Merchandise (as defined in the Agency Agreement) in the Store Closing Sales.

t.      Nothing in this Confirmation Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Confirmation Order.  Nothing contained in this Confirmation Order or in the Store Closing Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation.  Moreover, the sale of the Merchandise shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Confirmation Order shall alter or affect the Debtors' and the Agent's obligations to comply with all applicable federal safety laws and regulations.  Nothing in this

Confirmation Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Confirmation Order, or otherwise.   Notwithstanding any other provision in this Confirmation Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Confirmation Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Confirmation Order shall be deemed to have made any rulings on any such issues.

u.      Except as expressly provided in the Agency Agreement, the sale of the Merchandise shall be conducted by the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closing Sales, abandonment of assets, or "going dark" provisions.   Except as otherwise provided in the Store Closing Procedures and this Confirmation Order, as may be modified by a Side Letter with a particular landlord, nothing in the Agency Agreement shall in any way alter or affect any rights of landlords of the Stores to enforce the provisions of their leases against the Debtors as the tenant, or diminish the obligations of the Debtors to comply with the terms of the leases contrary to the provisions of section 365(d)(3) of the Bankruptcy Code, including, but not limited to, any landlord's rights to enforce the Debtors' obligations under the leases and to seek indemnification in accordance with the terms of the leases.  The Agent and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves

modifying the Store Closing Procedures without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters will impede or prevent the Sale of the Merchandise or the consummation of the Store Closing Sales, nor, absent the express written consent of DBHI, shall any provision of any Side Letter materially affect the rights and obligations of DBHI under the Agency Agreement.  In the event of any conflict between the Store Closing Procedures, this Confirmation Order, and any Side Letter, the terms of such Side Letter shall control, except to the extent such Side Letter affects the rights and obligations of DBHI and DBHI has not consented thereto.  DBHI and the Agent are authorized to enter into one or more agreements between themselves modifying or clarifying the Agency Agreement without further order of the Court, and such agreements shall be binding as among the Agent and DBHI; *provided* that nothing in any such agreement will impede or prevent the Sale of the Merchandise or the consummation of the Store Closing Sales; *provided further*, solely to the extent implicated thereby, the terms of any Unexpired Lease shall control over such agreement absent consent of the applicable landlord.

v.      Except as expressly provided for in this Confirmation Order, the Store Closing Procedures, or any Side Letter and subject to the Asset Purchase Agreement and the Agency Agreement, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, or other interested party or any person acting for or on behalf of the foregoing, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closing Sales or the sale of the Merchandise, or the advertising and promotion (including the posting of

signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Store Closing Sales and/or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closings or sale of the Merchandise or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions m any lease, sublease, license, or contract based upon any relief authorized herein.

w.    All sales of the Merchandise shall be "as is" and final.  However, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  Further, the Agent shall accept return of any goods purchased during the Store Closing Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within seven (7) days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Signs stating that "Refunds may be made only for merchandise having a latent defect, when returned with a receipt within 7 days of purchase." will be posted at the cash register areas of the Stores.  Returns, if permitted, related to the purchase of the Merchandise shall

not be accepted at Stores that are not participating in Store Closings and related sales, except in the situation where a customer experiences a latent defect and returns the Merchandise within the seven (7) day time period and provides information that the point of purchase store has closed in the meantime.  Information on stores remaining open will be maintained on the Debtors' website through the end of the Store Closings.

x.      During the Sale Term (as defined in the Agency Agreement), sales taxes shall be collected and paid pursuant to the terms of the Agency Agreement.  Upon receipt from the Agent of those sums the Agent is required to collect under the Agency Agreement, the Debtors are directed to remit all taxes arising from the Store Closings Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agency Agreement.  This Order does not enjoin, suspend or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.  Subject to Section 8.3 of the Agency Agreement, (i) the Agent shall not be liable for sales taxes with respect to sales of the Merchandise (except for sales of Remaining Merchandise, as defined in the Agency Agreement), and (ii) the collection, reporting, and payment of any and all sales taxes with respect to the Merchandise (except for Remaining Merchandise,

as defined in the Agency Agreement) is, and shall remain, the responsibility of the Debtors.

y.      The Agent is authorized and empowered to transfer the Merchandise among the Stores, to sell the Store Owned FF&E and to abandon the same, in each case as provided for and in accordance with the terms of the Agency Agreement.  To the extent any Merchandise or FF&E remains at a Store on the effective date of rejection of the underlying lease, such Merchandise and FF&E shall be deemed abandoned at the time of any rejection of the lease with the right of the landlord to dispose of such property free and clear of all interests and without further notice or liability to any person or entity.

z.      To the extent that the sale of the Merchandise is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "GOB Law," and collectively, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions, or any fast pay laws that would otherwise apply solely to the sale of the Merchandise (collectively, the "Liquidation Laws"), the dispute resolution procedures in this section shall apply.  Provided that the Store Closing Sales and the sale of the Merchandise are conducted in accordance with the terms of this Confirmation Order, the Agency Agreement and the Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors and the Agent shall be presumed to be in compliance with any GOB Laws

and Liquidation Laws and the Agent is authorized to conduct the Store Closing Sales in accordance with the terms of this Confirmation Order and the Store Closing Procedures without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.  However, to the extent there is a dispute arising from or relating to the Store Closing Sales, this Confirmation Order, the Agency Agreement, or the Store Closing Procedures, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the following procedures shall apply:

> i.  Except as may be otherwise provided herein, the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute (a "Dispute Notice") on the following parties so as to ensure delivery thereof within one (1) business day thereafter: (i) Klehr Harrison Harvey Branzburg LLP, 919 N. Market Street, Suite 1000, Wilmington, Delaware 19801 (Attn: Domenic E. Pacitti); (ii) Great American Group, LLC, 21860 Burbank Blvd., Woodland Hills, CA 91367 (Attn: Scott Carpenter, Alan Forman) and Burr & Forman LLP, 1201 N. Market Street, Suite 1407, Wilmington, DE 19801 (Attn: Richard Robinson, Esq.); (iii) Cooley LLP, 55 Hudson Yards, New York, NY, 10001 (Attn: Seth Van Aalten and Sarah Carnes); (iv) Morgan, Lewis & Bockius LLP, 101 Park Avenue, New York, NY 10178 (Attn: Craig Wolfe and Rachel Jaffe Mauceri) and (v) any affected landlord, if applicable.

> ii.  If the Agent (or the Debtors) and the Governmental Unit are unable to resolve the Reserved Dispute within fourteen (14) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

> iii.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Confirmation Order or to limit or interfere with the Agent's ability to conduct or to continue to conduct the Store Closing Sales pursuant to this Confirmation Order and the Agency Agreement, absent further order of this Court.

aa.    Within three (3) business days of the entry of this Confirmation Order, the Debtors shall serve copies of this Confirmation Order, the Agency Agreement, and the

Store Closing Procedures via e-mail, facsimile or regular mail on: (i) the Attorney General's office for each state where the Stores are located, (ii) the county consumer protection agency or similar agency for each county where the Stores are located, (iii) the division of consumer protection for each state where the Stores are located, (iv) the chief legal counsel for the local jurisdiction, and (v) the Debtors' landlords of the Stores. Except as expressly set forth in the Agency Agreement or this Confirmation Order, the Agent shall not have any liability or other obligation of the Debtors arising under or related to any of the Merchandise.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Agency Agreement, the Agent shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Agent shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the "Sale Commencement Date" (as defined in the Agency Agreement), now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Sale Commencement Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Merchandise prior to the Sale Commencement Date.

bb.    The transactions contemplated by the Agency Agreement are undertaken by the Agent without collusion and in good faith, as those terms are used in sections 363(m) and 364(e) of the Bankruptcy Code, and accordingly, the reversal or modification

on appeal of the authorization provided herein to consummate the sales of Merchandise or other transactions contemplated under the Agency Agreement shall not affect the validity of the sales of Merchandise any other transactions contemplated under the Agency Agreement, unless such authorization and consummation of such sale are duly stayed pending such appeal.  The Agent has proceeded in good faith within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code and as such, is entitled to the full protections afforded by section 363(m) and 364(e) of the Bankruptcy Code.

cc.    The sales and other transactions contemplated in the Agency Agreement may not be avoided, and no damages may be assessed against the Agent under section 363(n) of the Bankruptcy Code.

dd.    Pursuant to Bankruptcy Rules 7062, 9014, and 6004(h), this Approval Order shall be effective immediately upon entry and the Debtors, DBHI and the Agent are authorized to complete the transactions contemplated under the Agency Agreement immediately upon entry of this Approval Order.

ee.    There are no brokers involved in consummating the Sale and no brokers' commissions are due.

ff.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Agency Agreement or the transactions under the Agency Agreement or this Confirmation Order.

gg.    The failure to specifically include any particular provision of the Agency Agreement in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agency Agreement be authorized and approved in its entirety.

hh.    The Agency Agreement and any related agreements, documents, or other instruments (other than this Confirmation Order) may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates, provided further that the Debtors or the Agent shall promptly provide notice of any such modification, amendment or supplement to counsel to the Committee.

ii.    The Debtors shall retain sufficient funds to enable the Debtors to fully satisfy and perform their obligations under the Agency Agreement and the Debtors shall be authorized and directed to use those funds to fully satisfy such obligations; *provided* that to the extent that the Store Closing Segregated Account established by the Debtors to fund certain obligations during the pendency of the Store Closing Sales to be conducted pursuant to the Store Closing Agency Agreement cannot fully satisfy the Debtors' obligations under the Agency Agreement, DBHI shall be responsible for unperformed obligations, payments and economic obligations of DBHI and the Debtors, and the Debtors shall have no further liability or economic obligations under the Agency Agreement beyond any funds in the Store Closing Segregated Account.

jj.    The Agent Store Closing Segregated Account Contribution (defined below) shall be used solely to pay Expenses (as defined in the Agency Agreement), absent the written agreement of Agent and DBHI.

kk.    To the extent the Agent overfunds any amounts in respect of the Guaranteed Amount (as defined in the Agency Agreement), or the Agent Store Closing Segregated Account Contribution exceeds the amount of Expenses (as defined in the

Agency Agreement) paid from the Store Closing Segregated Account, or the Debtors or DBHI has received any funds in respect of such overfunding or excess, the overfunded amounts or an amount equal to the amount of the Agent Store Closing Segregated Account Contribution in excess of the Expenses paid from the Store Closing Segregated Account, shall be paid to Agent by DBHI within two (2) business days of written demand thereof by Agent.

ll.     The Agent and DBHI are parties in interest, and shall have the ability to appear and be heard on all issues in these bankruptcy cases including, without limitation, those related to or otherwise connected to this Agency Agreement and the conduct of the Sale, through and including the "Final Reconciliation" (as defined in the Agency Agreement).

mm.    This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms of this Approval Order and the Agency Agreement and any disputes arising in connection with the Store Closings, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which had been assigned by the Debtors to the Agent, and to adjudicate, if necessary, any and all disputes relating in any way to the sales of Merchandise and other transactions contemplated by the Agency Agreement.

## H.    **Store Closings**

88.     With respect to any Unexpired Lease to be rejected pursuant to the Plan, including but not limited to the stores, as set forth in **Exhibit C** attached hereto, the Debtors are authorized to conduct the Store Closings pursuant to the Additional Store Closing Notice Procedures and Store Closing Procedures, as applicable, through the Unexpired Lease Rejection Date, which, for

the avoidance of doubt, shall be no later than July 31, 2019, absent consent of the applicable landlord.

89.     Absent a timely objection, any personal property of the Debtors remaining in the rejected property shall be deemed abandoned as of the Unexpired Lease Rejection Date.  After the Unexpired Lease Rejection Date, landlords may, in their sole discretion and without further notice or order of the Bankruptcy Court, utilize and/or dispose of such property without notice or liability to the Debtors, Post-Effective Date Debtors, or third parties.

90.     The Liquidation Agent may conduct the Store Closings consistent with the Store Closing Procedures and any Side Letter entered into with the applicable landlord.  To the extent necessary, the Liquidation Agent, DBHI, and the Debtors shall enter into any agreement or agreements to facilitate the store closing process including agreements to provide certain services and make certain payments (including paying lease obligations, paying employee wages, and maintaining applicable insurance) to facilitate Store Closings, as necessary.  On the Effective Date, DBHI shall fund the Store Closing Segregated Account in the amount of $3.2 million, $2.7 million of which shall be contributed by the Liquidation Agent (such $2.7 million being the "Agent Store Closing Segregated Account Contribution").  Notwithstanding anything herein or in any agreement to the contrary, the Agent Store Closing Segregated Account Contribution shall only be used to pay Expenses (as defined in the Agency Agreement) in accordance with the the Agency Agreement.  Any and all additional funding obligations related to the Store Closings that are not Expenses (as defined in the Agency Agreement), including but not limited to obligations that become due and owing to the landlords under the Unexpired Leases in accordance with the terms of the Unexpired Leases shall be paid from amounts contributed to the Store Closing Segregated Account by DBHI (and not the Agent Store Closing Segregated Account

Contribution) or otherwise paid by DBHI.  For the avoidance of doubt, the Store Closing Segregated Account shall, subject to the terms of this Confirmation Order and the Store Closing Agency Agreement, become property of the Wind-Down Trust on the Effective Date.  At the end of the Store Closings, excess amounts in the Store Closing Segregated Account shall be remitted to the Post-Effective Date Debtor Account, and, following the wind-down of the Chapter 11 Cases and the satisfaction of any outstanding obligations under the Store Closing Agency Agreement (including obligations to pay Expenses), any remaining amounts shall be remitted to DBHI, pursuant to the Plan.

91.    To the extent the Store Closing Segregated Account does not have sufficient funds to cover all store closing costs, DBHI shall be responsible for such obligations in accordance with this Confirmation Order, the Plan, and the Asset Purchase Agreement. Consistent with the Store Closing Procedures, the Debtors or Post-Effective Date Debtors, as applicable, and the landlord of any Closing Store are authorized to enter into Side Letters to govern the conduct of the Store Closings without further order of the Court.

92.    The Plan Administrator shall maintain reasonable oversite over the Store Closings pursuant to the Wind-Down Trust Agreement, Store Closing Agency Agreement, and the Plan. Subject to the Agent's rights under the Agency Agreement, if any, following the wind down of the Post-Effective Date Debtors and the satisfaction of any outstanding obligations under the Store Closing Agency Agreement, any remaining amounts in the Store Closing Segregated Account will be remitted to DBHI.

93.    To the extent (i) DBHI does not make required payments with respect to cure Claims, or (ii) the Store Closing Segregated Account has insufficient funds and DBHI has not satisfied its obligations to applicable landlords, the Debtors shall seek to enforce all rights under

the Asset Purchase Agreement, the Store Closing Agency Agreement, and the Confirmation Order against DBHI to procure such unpaid amounts due and owing; *provided*, that DBHI reserves all of its rights under the Asset Purchase Agreement, the Store Closing Agency Agreement, the Plan, and this Confirmation Order with respect thereto.

94.     All parties agree to be subject to jurisdiction of the Bankruptcy Court with respect to the Store Closings pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. 1334(b) for all disputes arising in connection with the Store Closings.

## I.     <u>Plan Supplement</u>.

95.     The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors and the Post-Effective Date Debtors are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Court, the Debtors, the Post-Effective Date Debtors, DBHI, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan (including the review and consent rights of certain parties as set forth in the Plan).  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in the Confirmation Order.

**J.**    **Restructuring Transactions.**

96.    The Debtors, the Post-Effective Date Debtors, and the Plan Administrator are authorized to implement and consummate the Restructuring Transactions pursuant to the Plan, the Plan Documents (as may be amended), and this Confirmation Order and are authorized to execute and deliver all necessary documents or agreements required to perform their obligations thereunder.  The Restructuring Transactions pursuant to the Plan are approved and authorized in all respects.  The Debtors, the Post-Effective Date Debtors, and the Plan Administrator are authorized and directed to take all actions, necessary, appropriate, or desirable to enter into, implement, and consummate the contracts, instruments, releases, agreements, or other documents created or executed in connection with the Plan.  In accordance with section 1142 of the Bankruptcy Code and applicable nonbankruptcy law, such actions may be taken without further action by stockholders, managers, or directors.

**K.**    **Wind-Down Trust**

97.    On the Effective Date, immediately after the consummation of the Sale Transaction the Wind-Down Trust will be formed pursuant to the New Organizational Documents to receive all of the assets of the Post-Effective Date Debtors.  The Wind-Down Trust will be established for the primary purpose of liquidating the Wind-Down Trust Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Wind-Down Trust.  Upon the transfer of the Wind-Down Trust Assets as more fully set forth in the Wind-Down Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Wind-Down Trust Assets.  For all federal income tax purposes, the beneficiaries of the Wind-Down Trust will be treated as grantors and owners thereof and it is intended that the Wind-Down Trust be classified as a liquidating trust

under Section 301.7701-4 of the Treasury Regulations.  For federal income tax purposes, it is intended that the beneficiaries of the Wind-Down Trust be treated as if they had received an interest in the Wind-Down Trust's assets and then contributed such interests to the Wind-Down Trust.  The Wind-Down Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Wind-Down Trusts assets, make timely distributions to the beneficiaries of the Wind-Down Trust pursuant to the Plan and the Confirmation Order, and not unduly prolong its duration.

98.    On the Effective Date, any Estate non-Cash assets remaining after consummation of the Sale Transaction shall vest in the Post-Effective Date Debtors for the purpose of facilitating the above tasks.  Such assets shall be held free and clear of all liens, claims, and interests of holders of Claims and Interests, except as otherwise provided in the Plan.  The Post-Effective Date Debtors shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

99.    The Post-Effective Date Debtors shall be represented by a Plan Administrator who was named prior to Confirmation in consultation with the Winning Bidder.  The Plan Administrator shall act as the Wind-Down Trustee.  The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Post-Effective Date Debtors, upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

**L.**   **Funding of Accounts**

100.   The Debtors or Post-Effective Date Debtors, as applicable are authorized to fund the Post-Effective Date Debtor Account, Claims Escrow, and the Professional Fee Escrow Account.  Following the wind-down of the Post Effective Date Debtors and satisfaction of all obligations set forth in the Wind-Down Trust Agreement and the New Organizational Documents, including payment of Administrative Claims, any Cash remaining in such Accounts shall be remitted to DBHI.

**M.**   **Sale Transaction.**

101.   Except as otherwise provided herein, the Debtors are authorized to consummate the Sale Transaction under and pursuant to the Asset Purchase Agreement.  The Debtors may sell the purchased assets under the Asset Purchase Agreement (the "Acquired Assets") free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than as expressly permitted under the Asset Purchase Agreement and the Plan.  For the avoidance of doubt, the Acquired Assets do not include the Merchandise, Store Owned FF&E, and any other assets to be sold pursuant to the Store Closing Agency Agreement.

102.   Those holders of such claims, liens, encumbrances, or other interests against the Debtors, their estates, or any of the assets subject to the Sale Transaction who did not object, or who withdrew their objections, to the Sale Transaction are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of such claims, liens, encumbrances, or other interests are adequately protected by having their claims, liens, encumbrances, or other interests, if any, in each instance against the Debtors, their Estates, or any of the assets subject to the Sale Transaction, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the assets in which such creditor alleges a claim, lien, encumbrance, or other interest, in the same order of priority, with the same validity, force, and effect that such claim,

lien, encumbrance, or other interest had prior to consummation of the Sale Transaction, subject to any claims and defenses the Debtors and their estates may possess with respect thereto, and with such claims, liens, encumbrances, or other interests being treated in accordance with the Plan.

103.    The Sale Transaction and transfer of assets pursuant to the Asset Purchase Agreement shall constitute a legal, valid, binding, and effective transfer of such assets and shall vest DBHI with title to the assets and, other than the Assumed Liabilities and subject to the obligations set forth in Article V.D of the Plan, shall be free and clear of all Liens, Claims, encumbrances and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Liens, Claims, encumbrances or other interests to attach to the net cash proceeds, if any, ultimately attributable to the property against or in which such Liens, Claims, encumbrances or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Liens, Claims, encumbrances or interests now have against such asssets, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Upon the Closing, DBHI shall take title to and possession of the purchased assets in accordance with the Asset Purchase Agreement and subject only to the Assumed Liabilities.

104.    Except for the Assumed Liabilities, or as otherwise expressly provided for in the Plan, the Confirmation Order, or the Asset Purchase Agreement, DBHI shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase Agreement, DBHI shall not be liable for any Claims against the

Debtors or any of its predecessors or affiliates, and DBHI shall not have successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to the following:  (a) liabilities on account of warranties, intercompany loans and receivables between the Debtors; (b) any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing; (c) any labor or employment agreements; (d) any mortgages, deeds of trust and security interests (to the extent the foregoing are released pursuant to the Plan, Confirmation Order, or Asset Purchase Agreement); (e)  any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of any Debtor; (f) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (g) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) state unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with any of the

Debtors or any of their respective predecessors; (h) any bulk sales or similar law; (i) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (j) any theories of successor liability.

105.    Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Confirmation Order or the Asset Purchase Agreement, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens (to the extent such Liens are released pursuant to the Plan, Confirmation Order, or Asset Purchase Agreement), Claims, encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Acquired Assets to DBHI in accordance with the Asset Purchase Agreement, hereby are forever barred, estopped and permanently enjoined from asserting against DBHI, its successors or assigns, their property or the Acquired Assets, such persons' or entities' Liens, Claims, encumbrances or interests in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against DBHI, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against DBHI, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien or other Claim against DBHI, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation

due DBHI or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Confirmation Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

106.    Solely with respect to those Liens satisfied, terminated, or otherwise released pursuant to, and consistent with, the Plan, Confirmation Order, and the Asset Purchase Agreement:  (a) if persons or entities that have filed financing statements, mortgages, construction, or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Acquired Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of the alleged Liens, Claims, interests or encumbrances which the person or entity has with respect to such Acquired Assets, such persons or entities are hereby directed to deliver all such statements, instruments and releases and the Debtors and DBHI are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the DBHI is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest; and (b) all entities that are presently in possession of some or all of the Acquired Assets that may be subject to the Asset Purchase Agreement or this Order are hereby directed to surrender possession of such Acquired Assets to DBHI upon the Effective Date.

107.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and

transfer the Acquired Assets to DBHI in accordance with the terms of the Asset Purchase Agreement and this Confirmation Order.

108.    DBHI is a good-faith purchaser within the meaning of, and is entitled to the protections afforded by, section 363(m) of the Bankruptcy Code.  Accordingly, the reversal or modification on appeal of this Order under section 363(b) or 363(c) of the Bankruptcy Code of the transactions contemplated under the Asset Purchase Agreement and the Plan does not affect the validity of the transactions authorized hereby, whether or not DBHI knew of the pendency of the appeal, unless this Confirmation Order and the transactions contemplated under the Asset Purchase Agreement and Plan were stayed pending appeal.

**N.**    **Section 1145 Exemption.**

109.    To the extent applicable, pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Interests pursuant to the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.  As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, Interests issued pursuant to the Plan are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Post-Effective Date Debtors (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

**O.**    **Cancellation of Securities and Agreements.**

110.    On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Secured Credit Agreement Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Post-Effective Date Debtors shall not have any continuing obligations thereunder.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

**P.**    **Administrative Claims Escrow.**

111.    On the Effective Date, the Debtors shall fund the Claims Escrow in the amount of $4.45 million, for payment of Administrative Claims.  After all Administrative Claims have been paid, any remaining funds will be remitted to the Wind-Down Trust.  For the avoidance of doubt, the Debtors (or Post-Effective Date Debtors, as applicable) shall be liable for the prompt payment on the Effective Date (or as soon as reasonably practicable thereafter) of any amounts due and owing to landlords under Unexpired Leases with respect to the period beginning on the Petition Date and ending on the Unexpired Lease Rejection Date (unless otherwise assumed by DBHI pursuant to the Asset Purchase Agreement or Plan, or unless otherwise agreed between DBHI and the landlord under any applicable Unexpired Lease).

Q.      **Sources of Consideration for Plan Distribution.**

112.    The Post-Effective Date Debtors will fund distributions and obligations under the Plan (and the agreements approved in connection therewith, including the Store Closing Agency Agreement) with the Sale Transaction Proceeds, contributions from DBHI or the Liquidation Agent, and Cash held in the Store Closing Segregated Account, the Claims Escrow, and the Post-Effective Date Debtor Account, as applicable, on the Effective Date or when otherwise due, consistent with the terms set forth in the Plan, the Agency Agreement, the Asset Purchase Agreement, and this Confirmation Order.

R.      **Exemption from Certain Transfer Taxes and Recording Fees.**

113.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any issuance, transfer (whether from a Debtor to a Post-Effective Date Debtor or to any other Person) or exchange of a security, or the making of or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.

S.      **Corporate Action.**

114.    Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including: (1) selection of the Plan Administrator; (2) implementation of the Restructuring Transactions; (3) implementation of the Wind-Down Trust Agreement; (4) consummation of the Sale Transaction; (5) funding all applicable escrows and accounts; and (6) all other actions contemplated under the Plan or Asset Purchase Agreement (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Post-Effective Date Debtors, and any corporate action required by the Debtors or the Post-Effective Date Debtors in connection with the Plan or corporate structure

of the Debtors or Post-Effective Date Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, manages, or officers of the Debtors or the Post-Effective Date Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtors.    The authorizations and approvals contemplated by Articles IV.K and IV.L of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**T.**    **Effectuating Documents; Further Transactions.**

115.    On and after the Effective Date, the Plan Administrator is authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions and the Sale Transaction, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**U.**    **Director and Officer Liability Insurance; Other Insurance.**

116.    On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement.    Reasonable

directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

**V.**       **Treatment of Executory Contracts and Unexpired Leases.**

117.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

118.     With the respect to Executory Contracts (and, subject to the consent of the applicable landlord, Unexpired Leases), on the earlier of 90 days after the Effective Date or the date that the Post-Effective Date Debtors (at the direction of DBHI), as applicable, notice such rejection through the filing of the Plan Supplement, except as otherwise provided herein, each Executory Contract (and, subject to the consent of the applicable landlord, each Unexpired Lease) not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract (or Unexpired Lease, as applicable): (1) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (2) is the subject of a motion to assume such Executory Contracts (or Unexpired Lease, as applicable) that is pending on the Confirmation Date; (3) is a contract, release, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; or (5) is an Executory Contract assumed and assigned pursuant to the Asset Purchase Agreement.

119.     Notwithstanding anything to the contrary in the Plan or an agreement in writing previously entered into with the applicable landlord, all Unexpired Leases of nonresidential real property that are not assumed and assigned on the Effective Date as set forth in the Plan Supplement shall be deemed rejected, effective as of the Unexpired Lease Rejection Date, which

for the avoidance of doubt shall be no later than July 31, 2019, absent consent of the applicable landlord.  Until such date, all postpetition rent, indemnification obligations, and other costs under the applicable Unexpired Leases of nonresidential real property arising after the Effective Date shall be paid in full from the Store Closing Segregated Account pursuant to the terms of the Store Closing Agency Agreement in accordance with the Confirmation Order and the terms of the applicable Unexpired Leases of nonresidential real property until the Unexpired Lease Rejection Date.  To the extent the Store Closing Segregated Account has insufficient funds or otherwise does not cover such obligations, DBHI shall be responsible for such obligations.

120.    Notwithstanding anything to the contrary in the Plan, the Debtors, the Post-Effective Date Debtors, and the Plan Administrator, as applicable, in each case with the consent of DBHI, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases identified in Article V of the Plan and in the Plan Supplement to remove any Executory Contract from the Schedule of Assumed Executory Contracts and Unexpired Leases at any time through and including 90 days after the Effective Date. For the avoidance of doubt, no Unexpired Lease shall be added or removed from the Schedule of Assumed Executory Contracts and Unexpired Leases after the Confirmation Date, absent the applicable landlord's written consent.  The Debtors or the Plan Administrator, as applicable, shall provide notice of any amendments to the Schedule of Assumed Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby and shall file a final Schedule of Assumed Executory Contracts and Unexpired Leases as soon as reasonably practicable after all determinations have been made.

121.    Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions and assignments or rejections of the Executory Contracts and

Unexpired Leases assumed and assigned or rejected pursuant to Article V of the Plan. Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of the Bankruptcy Court that has been assigned to DBHI shall be fully enforceable by DBHI as of the date such Executory Contract or Unexpired Lease is assumed and assigned to DBHI in accordance with its terms (as such terms may be modified by agreement of DBHI and the counterparty to each such Executory Contract or Unexpired Lease). For the avoidance of doubt, no terms of any assumed Unexpired Lease or Executory Contract shall be modified pursuant to the Plan or this Confirmation Order without the consent of DBHI and the applicable landlord or contract counterparty.

122.    In regards to any Executory Contract and in regards to any Unexpired Lease not assumed and assigned to DBHI on the Effective Date as identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, DBHI and/or the Post-Effective Date Debtors (as applicable) will comply with all obligations pending the rejection of such Executory Contract or Unexpired Lease. DBHI, the Debtors, or Post-Effective Date Debtors, as applicable, shall provide for payment of postpetition obligations due and/or accrued in the ordinary course under the terms of the Unexpired Leases; *provided* that any such obligations owing by the Debtors under any Unexpired Lease following the depletion of all designated funds in the Store Closing Segregated Account pursuant to the Store Closing Agency Agreement shall be paid by DBHI, subject to DBHI's right to dispute the validity of any such claimed amount in good faith.

123.    In regards to any Executory Contract and in regards to any Unexpired Lease assumed and assigned to DBHI on the Effective Date (or, with respect to Executory Contracts or any designated Unexpired Leases, within 90 days thereafter) as identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, DBHI and/or the Post-Effective Date

Debtors (as applicable) will comply with all obligations pending the actual assumption and assignment and, with respect to Unexpired Leases to be assumed and assigned, DBHI will cure any additional defaults that arise before the effective date of such assumption and assignment, provided that DBHI shall retain all rights to dispute such amounts in good faith and to exercise its rights under the Plan with respect to all disputed cure Claims.  For the avoidance of doubt, assumption and assignment of any Unexpired Lease is subject to the terms of the applicable Unexpired Lease (including with respect to provisions concerning use, radius, exclusivity, and tenant mix and balance), unless otherwise agreed between DBHI and the non-Debtor counterparty to such Unexpired Lease.  For the avoidance of doubt, none of the financing agreements entered into by DBHI shall grant liens on leases, or access rights to the leased premises except as permitted by landlord agreement, applicable non-bankruptcy law or further order of the Bankruptcy Court following notice to the affected landlord counterparty and opportunity for hearing consistent with the DIP facility protections.

124.    To the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control," "assignment," or similar provision), then such provision shall be deemed unenforceable such that the transactions contemplated by the Plan, including the Restructuring Transactions and the Sale Transaction, shall not entitle the Executory Contract or Unexpired Lease counterparty thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related or acceleration rights with respect thereto.

125.    Absent notice to and consent of the applicable landlord, in accordance with the Plan, all Unexpired Leases that are assumed shall be assigned to DBHI and not to any third-party.

126.    Unless a party to an Executory Contract or Unexpired Lease has objected to the cure amounts identified in the Plan Supplement and any amendments thereto, as applicable, DBHI shall pay such cure amounts in accordance with the terms of the Plan and the assumption and assignment of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.  Any disputed cure Claims shall be determined in accordance with the procedures set forth in Article V.C and V.D of the Plan, as well as this Confirmation Order, and applicable bankruptcy and nonbankruptcy law.  Subject to the payment of the cure Claims, any Proof of Claim Filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Court.

**W.    <u>Distributions Under the Plan</u>.**

127.    The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.

**X.**   **Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests.**

128.    The procedures for resolving disputed, contingent, and unliquidated claims or equity interests contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

**Y.**   **Conditions to Effective Date.**

129.    The Plan shall not become effective unless and until the conditions set forth in Article IX of the Plan have been satisfied or waived pursuant to Article IX.C of the Plan.

**Z.**   **Opt-Out Provision.**

130.    Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the following Entities shall be neither Released Parties nor Releasing Parties under the Plan:  all Holders of Claims or Interests that abstain from voting on the Plan and who affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; and all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan.

**AA.**   **Certain Texas Tax Claim Matters.**

131.    Notwithstanding any other provisions contained in the Plan or this Confirmation Order, with respect to the claims filed by the Local Texas Tax Authorities (Allen ISD, Bexar County, Dallas County, Fort Bend County, Harris County, Montgomery County and Tarrant County), the Local Texas Tax Authorities shall retain their valid and enforceable liens for these taxes (as ultimately allowed) with the same validity, extent and priority under Texas state law upon the proceeds from the sale of their collateral, regardless of whether such proceeds are held

by the Debtors or another party, until all the Local Texas Taxing Authorities' Allowed Other Secured Claims are paid in full. If the Local Texas Tax Authorities' Allowed Other Secured Claims are not paid in full on or before January 31, 2020, then they shall be entitled to be paid with interest at the rate of one percent per month from the Effective Date of the Plan.

**BB.    <u>Comenity Bank Matters</u>**

132.    Comenity Bank's ("<u>Comenity</u>") Objections and Reservations of Rights with Respect to (1) the Proposed Plan, Including the Sale Transaction and (2) the Proposed Contract Assumptions (D.I. 334) (the "<u>Comenity Objections</u>") are resolved as follows: notwithstanding any provision to the contrary in this Confirmation Order, the Asset Purchase Agreement, or the Plan, and except as agreed in writing by Comenity, the Debtors and/or DBHI:

(i)     the use of Comenity's private label credit cards terminated on June 1, 2019, and the Comenity Agreements (as defined in the Comenity Objections) as well as any other Comenity agreements identified for possible assumption are rejected as of the date hereof and Comenity shall have thirty (30) days to file a proof of claim for any rejection damages (without prejudice to file requests for payment of administrative expense claims);

(ii)    to the extent provided for by the Comenity Agreements and under applicable law, Comenity (and its designees) shall have a non-exclusive, non-cancellable, royalty-free right to continue to use the Debtor's Marks (as defined in the Comenity Objections) in connection with the administration (including servicing, billing, and related matters associated with the private label credit card program) and collection of the balances due Comenity on any open-end revolving line of credit accounts established for the Debtors' customers;

(iii)   DBHI is not purchasing the Program Documents (as defined in the Comenity Objections), and the Program Documents shall be destroyed by the Debtors, except to the extent retention is required by applicable law or corporate retention policies; provided, however, in the event that DBHI receives any Program Documents, DBHI shall maintain the Program Documents as confidential and shall not use them for any purpose or disclose them to any third party without Comenity's prior written consent;

(iv)    DBHI is not purchasing the Program Agreement, Cardholder Information, the Program Information (as those terms are defined in the Comenity Objections), or any other information or property owned by Comenity, whether in electronic or hard-copy form (collectively, the "Comenity Property"); provided, however,

nothing will prevent DBHI from purchasing customer lists or any other information owned by the Debtors.  The Debtors and DBHI (to the extent DBHI receives any Comenity Property) shall maintain the Comenity Property as confidential and shall not use it for any purpose or disclose it to any third party without Comenity's prior written consent.  The Comenity Property shall be returned to Comenity or destroyed by the Debtors at the Debtors' discretion, except to the extent required by applicable law or corporate retention policies;

(v)     all of Comenity's rights and defenses under the Program Agreement, the prior orders of this Court, and applicable law (including without limitation setoff, recoupment, and Chargebacks (as defined in the Comenity Objections) are reserved and preserved;

(vi)    any disputes involving Comenity with respect to the interpretation of this Confirmation Order, the Asset Purchase Agreement, or the Plan shall be determined by this Court; and

(vii)   the Debtors shall not abandon any records that refer or related to the Program Agreement (as defined in the Comenity Objections) (including, without limitation, records regarding the operations of the private label credit card program and any Cardholder Information) that may be located on the Debtors' leased premises that are subject to a rejected contract.

(viii)  Except as provided in this paragraph and notwithstanding any Ballot submitted to vote on the Plan, Comenity does not opt out of and will provide the Third-Party Release.

## CC.   **Retention of Jurisdiction**.

133.    This Court may, and upon the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan.

## DD.   **Immediate Binding Effect**.

134.    Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan),

all Entities that are parties to or are subject to the releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.   The Confirmation Order is effective immediately and not subject to any stay of enforcement otherwise applicable, including without limitation any stay pursuant to Bankruptcy Rule 3020(e), 6004(h), 6006(d) and 7062.

**EE.**     **Additional Documents**

135.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.   The Debtors or Post-Effective Date Debtors, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**FF.**     **Payment of Statutory Fees.**

136.    All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid on or before the Effective Date.   From and after the Effective Date, the Post-Effective Date Debtors shall be jointly and severally liable for and shall pay the fees assessed under section 1930(a) of the Judicial Code on a quarterly basis (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.   The Post-Effective Date Debtors shall provide the U.S. Trustee with post-confirmation quarterly reports which shall include all respective disbursements for the preceding quarter until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**GG.**   **Reservation of Rights.**

137.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

**HH.**   **Notices**

138.    To the extent not consensually resolved, any notices, requests and demands to or upon the Debtors shall be made by filing a motion with the Bankruptcy Court.   After the Effective Date, the Post-Effective Date Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**II.**   **Non severability of Plan Provisions Upon Confirmation.**

139.    The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered by this Confirmation Order, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth in the Plan; and (3) nonseverable and mutually dependent.

**JJ.**    **Dissolution of Creditors' Committee.**

140.    On the Effective Date, the Creditors' Committee shall dissolve, and the members of the Creditors' Committee and their respective officers, employees, counsel, advisors, and agents shall be released and discharged from further authority, duties, responsibilities, and obligations related to and arising from and in connection with these Chapter 11 Cases; *provided, however*, that following the Effective Date the Creditors' Committee shall continue in existence and have standing and a right to be heard solely to pursue Professional Fee Claims in accordance with Article II.B of the Plan.  Following the completion of the remaining duties of the Creditors' Committee set forth above, the retention or employment of the Creditors' Committee's respective attorneys, accountants and other agents shall terminate.  The Post-Effective Date Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee after the Effective Date, other than the reasonable and documented fees and out-of-pocket expenses of the Creditors' Committee incurred in connection with preparing and prosecuting requests for payment of Professional Fee Claims.

**KK.**    **Governmental Approvals Not Required.**

141.    Except as otherwise specifically provided in the Confirmation Order, the Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

**LL.**    **Recording.**

142.    The Debtors and the Post-Effective Date Debtors hereby are authorized to deliver a notice or short form of the Confirmation Order, with the Plan and Asset Purchase Agreement

attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer.

**MM.** **Documents, Mortgages, and Instruments.**

143.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and the Confirmation Order.

**NN.** **Authorization to Consummate.**

144.    The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX.B. of the Plan.

**OO.** **Debtors' Actions Post-Confirmation Through the Effective Date.**

145.    During the period from entry of the Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Order and any order of the Court that is in full force and effect.   During such period, the Debtors and all other parties in interest under the Plan are authorized to finalize the Definitive Documentation and execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions without any further order of the Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions, in each case subject to the terms and conditions of the Plan (including the review and consent rights of certain parties as set forth in the Plan).

**PP.** **Notices of Confirmation and Effective Date.**

146.    The Post-Effective Date Debtors shall serve notice of entry of the Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list within ten Business Days after the Effective Date.    As soon as reasonably practicable after the Effective Date, the Post-Effective Date Debtors shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.    The notice of the Effective Date may be included in the Confirmation Order Notice.    Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.    In addition, no later than five Business Days after the Effective Date, the Post-Effective Date Debtors shall cause the Confirmation Order Notice, modified for publication, to be published on one occasion in the *New York Times* (National Edition) and *Los Angeles Times* (National Edition).    The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases and no other or further notice is necessary.

**QQ.** **Headings.**

147.    Headings utilized in the Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or the Confirmation Order for any other purpose.

**RR.** **Final Order and Waiver of Stay.**

148.    For good cause shown, the stay of the Confirmation Order provided by any Bankruptcy Rule is waived, and the Confirmation Order shall be effective and enforceable

immediately upon its entry by the Court.  The Confirmation Order is a Final Order and shall take effect immediately be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

_____

Dated: June 20th, 2019
Wilmington, Delaware

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**